MINNESOTA
BOARD OF ARCHITECTURE ▪ ENGINEERING
LAND SURVEYING ▪ LANDSCAPE ARCHITECTURE
GEOSCIENCE ▪ INTERIOR DESIGN
85 East 7th Place, Suite 160, St. Paul, MN 55101-2113
Phone: 651-296-2388 • Fax: 651-297-5310 • mn.gov/aelslagid

# LICENSE / CERTIFICATE RENEWAL 7/1/2020–6/30/2022
## INSTRUCTIONS

**ALL licenses and certificates expire on 6/30/2020 unless renewed.**

You are responsible for completing ALL sections of the application form (sections **1-4**). If any information is missing or the form is not signed, the application will be considered incomplete and will be returned. You are responsible for any late fees incurred after 6/30/2020 if your application is returned.

**Professional Development Hours (PDH) Requirements** (see also mn.gov/aelslagid/continuinged.html)**:**

- You need 24 PDH earned on or after July 1, 2018, including 2 hours of ethics.
- If you have carryover hours, that information will appear on a list on the Board website: mn.gov/aelslagid/continuinged.html. Consult this list. If your name is not on the list, you did not report on your prior renewal hours in excess of the minimum required that could be carried over to this renewal.
- The 2 hours of ethics PDH you are required to report must be earned on or after July 1, 2018. (Any ethics hours in excess of the required 2 are treated as 'general' PDH hours.)
- Exemption requests (excluding automatic initial license/certificate exemption) must be **preapproved**. DO NOT SUBMIT AN EXEMPTION REQUEST WITH THIS RENEWAL; first apply for exemption. If you are granted an exemption, you will be sent a **Board Approval Document** that you **must** then submit along with your completed renewal form.
- PDH earned during an exempt period cannot be carried over.

**▶ Sign and date the form and enclose your renewal fee of $120.**

- If paying after 6/30/2020, include the appropriate late fee (see application form).
- Make checks (US funds only) payable to: **MN Board of AELSLAGID**.
- Mail to the address above.

If you have questions regarding your application, please call the Board office at 651-296-2388.

**NOTICE OF COLLECTION OF PRIVATE DATA**

In accordance with the Minnesota Government Data Practices Act (MN Statute §13.04, Subd. 2), the Board is required to inform you of your rights as they pertain to private data collected from you on this application for licensure renewal. The data you furnish on the application will be used by the Board to assess your qualifications for renewal. You are not legally required to provide this data; however, if you fail to do so, the Board may be unable to approve your application or issue your license. Additionally, pursuant to Minnesota Statutes §270C.72, subdivision 4 (2018) the Board must provide the Commissioner of the Minnesota Department of Revenue a list of all applicants, including name, address and social security number or Individual Tax Identification Number (ITIN), each calendar year for the purpose of identifying individuals owing delinquent taxes. Pursuant to Minnesota Statutes §13.41, subdivision 2 (2018), all application data, except social security number, become public record when licensure is granted. The Board will not share your private data with other persons or agencies unless you authorize its release or it is required by law.



Complaint Exhibit 1

MINNESOTA
BOARD OF ARCHITECTURE ▪ ENGINEERING
LAND SURVEYING ▪ LANDSCAPE ARCHITECTURE
GEOSCIENCE ▪ INTERIOR DESIGN
85 East 7th Place, Suite 160, St. Paul, MN 55101-2113
Phone: 651-296-2388 • Fax: 651-297-5310 • mn.gov/aelslagid

7/1/2020–6/30/2022

# LICENSE/CERTIFICATE RENEWAL APPLICATION

## 1. Personal Information

The address below is my (check one): ☐ Home ☐ Business

**Military Only ▶** If you are active duty or within 6 months of discharge from active duty, check box: ☐

Legal Name ______ (First) (Middle) (Last) (Suffix)

License/ Certif # ______

Business Name ______
(If checked above)

Profession ______

Street Address ______
(No PO boxes)

Phone # ______

City ______ State/ Province ______ Post/ Zip Code ______ Country ______

## 2. Renewal Fee

(Check ONE box based on when your **completed** application will be **postmarked**.)

☐ ~~$120 on or before 6/30/2020~~ ☐ ~~$150 7/1/2020 to 9/30/2020~~ ☐ **$180** on or after 10/1/2020

## 3. PDH/Continuing Education

(Choose the applicable option.)

☐ I am **exempt** from reporting continuing education for this renewal (select reason):

- ☐ My initial MN license/certificate was issued on or after July 1, 2018 (automatic exemption).
- ☐ I requested and was granted an exemption by the Board. I have enclosed the **Approval Document.**

☐ I am **not exempt**. Here are my continuing education hours:

| # of HRS | PROFESSIONAL DEVELOPMENT HOURS REPORT |
|---|---|
| | PDH earned between 7/1/2018–6/30/2020. |
| REQUIRED! ▶ ☐ | By checking the box, I affirm 2 of the hours **above** are ethics PDH. |
| | Carryover from previous renewal (if applicable) |
| | **Total PDH submitted** |

## 4. Certification Statements to Be Affirmed by the Applicant

**Read** the statements, **select the appropriate true/false response**, then **sign** and **date** below.

If you answer "False" to any statement, **you must enclose a statement of explanation** for each checked statement. Your application is not considered complete until you provide the required explanation(s). MN Rule 1800.0400 Subp. 5

| | | | |
|---|---|---|---|
| 1. | I have read and will comply with the provisions of Minnesota Statutes §§ 326.02 – 326.15 (2018) and the Rules and Regulations adopted thereunder; | ☐ True | ☐ False |
| 2. | I am not under any disciplinary proceeding or action, pending or otherwise, in any other jurisdiction; | ☐ True | ☐ False |
| 3. | I have never been convicted of a felony; | ☐ True | ☐ False |
| 4. | I have not represented myself as an architect, professional engineer, land surveyor, landscape architect, professional geologist, professional soil scientist, or certified interior designer, without proper licensure or certification, either verbally or on any printed matter, in the State of Minnesota, nor will I do so until such time as my license or certificate has been issued by the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design; and | ☐ True | ☐ False |
| 5. | I have not performed or offered to perform architectural, professional engineering, land surveying, landscape architectural, professional geological, professional soil scientific, or certified interior designer services, without proper licensure or certification in the State of Minnesota, nor will I do so until such time as my license or certificate has been issued by the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design. | ☐ True | ☐ False |

I declare that everything I have stated in this document is true and correct. If signing electronically, I agree that my electronic signature shall constitute the execution of this document in exactly the same manner as if I had signed by hand.

▶ ______ Signature ______ Date



Complaint Exhibit 1

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

July 24, 2020

Charles L Marohn
616 N 4th St
Brainerd, MN 56401

**RE:** **Charles L Marohn, PE # 40142**
**Board File # 2020-0043**

Dear Mr. Marohn:

Please be informed that the Board's Complaint Committee is investigating circumstances regarding your conduct as a Professional Engineer (PE) licensed by the Board.

It has come to the attention of the Board that you may have acted in violation of Minnesota Statutes § 326.02, subdivisions 1 and 3 (2018), § 326.03, subdivision 1 (2018), and Minnesota Statutes § 326.111, subdivision 4(a) (1) (2018).

Specifically, it is alleged that you were holding yourself out as a licensed PE when your Minnesota PE license expired on June 30, 2018. Additionally, you may have practiced professional engineering without a license after the expiration date until your renewal date of June 17, 2020. A copy of the complaint has been enclosed.

The purpose of this investigation is to determine whether or not the facts alleged are true and, if so, whether enforcement action should be initiated pursuant to Minnesota law. This investigation is authorized by Minnesota Statute § 214.10 (2018) and Minnesota Statute § 326.111 (2018).

Minnesota Statutes § 326.02, subdivisions 1 and 3 (2018) state:

**326.02 LICENSURE OR CERTIFICATION.**
**Subdivision 1. Licensure or certification mandatory.**
In order to safeguard life, health, and property, and to promote the public welfare, any person in either public or private capacity practicing, or offering to practice, architecture, professional engineering, land surveying, landscape architecture, or professional geoscience, or using the title certified interior designer in this state, either as an individual, a copartner, or as agent of another, shall be licensed or certified as hereinafter provided. It shall be unlawful for any person to practice, or to offer to

practice, in this state, architecture, professional engineering, land surveying, landscape architecture, or professional geoscience, or to use the title certified interior designer, or to solicit or to contract to furnish work within the terms of sections 326.02 to 326.15, or to use in connection with the person's name, or to otherwise assume, use or advertise any title or description tending to convey the impression that the person is an architect, professional engineer (hereinafter called engineer), land surveyor, landscape architect, professional geoscientist (hereinafter called geoscientist), or certified interior designer, unless such person is qualified by licensure or certification under sections 326.02 to 326.15. This subdivision does not preclude an individual who retired from one of the professions listed in this subdivision from using the designation architect, professional engineer, land surveyor, landscape architect, professional geoscientist, or certified interior designer as long as the designation is preceded by the word "retired" and the individual was licensed or certified in the designated profession in the state of Minnesota on the date the individual retired from the designated profession and the individual's license or certification was not subsequently revoked by the Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design.

**Subd. 3. Practice of professional engineering.** (a) Any person shall be deemed to be practicing professional engineering within the meaning of sections 326.02 to 326.15 who holds out as being able to perform or who does perform any technical professional service, such as planning, design or observation of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private structures, buildings, utilities, machines, equipment, processes, works, or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of mathematics and the physical and applied engineering sciences, acquired by education or training, and by experience.

(b) No person other than one licensed under sections 326.02 to 326.15 as a professional engineer may:

(1) use the term "professional engineer";

(2) use any other abbreviation or term, including the initials "P.E." or "PE" by signature, verbal claim, sign, advertisement, letterhead, card, or similar means that would lead the public to believe that the person was a professional engineer; or

(3) use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer.

(c) A professional engineering license satisfies any requirements by the state or its political subdivisions to perform any actions authorized under the professional

engineering license. A person licensed as a professional engineer under sections 326.02 to 326.15 shall only be required to obtain a license, certification, or other form of approval for a skill or service in addition to a professional engineering license if the state or political subdivision has made an affirmative written determination in statute, rule, or ordinance that such additional license or certification is necessary to safeguard life, health, or property, or promote the public welfare. This section does not preclude the state or a political subdivision from including additional requirements when soliciting public contracts for engineering services. This paragraph does not apply to practice areas where licenses or certifications are required prior to August 1, 2015.

Minnesota Statutes § 326.03, subdivision1 (2018) states:

**326.03 LICENSE OR CERTIFICATE REQUIRED.**
**Subdivision 1. Plans; documents.**
No person, except an architect, engineer, land surveyor, landscape architect, geoscientist, or certified interior designer, licensed or certified as provided for in sections 326.02 to 326.15 shall practice architecture, professional engineering, land surveying, landscape architecture, or professional geoscience, or use the title certified interior designer, respectively, in the preparation of plans, specifications, reports, plats or other architectural, engineering, land surveying, landscape architectural, geoscientific, or interior design documents, or in the observation of architectural, engineering, land surveying, landscape architectural, geoscientific, or interior design projects. In preparation of such documents, reasonable care shall be given to compliance with applicable laws, ordinances, and building codes relating to design.

Minnesota Statutes § 326.111, subdivision 4(a) (1) (2018) states:

**326.111 UNAUTHORIZED PRACTICE; DISCIPLINARY ACTION.**
**Subdivision 4. Actions against applicants and licensees.**
(a) The board may, by order, deny, refuse to renew, suspend, temporarily suspend, or revoke the application, license, or certification of a person; censure or reprimand that person; condition or limit the person's practice; refuse to permit a person to sit for examination; or refuse to release the person's examination grades if the board finds that the order is in the public interest and the applicant, licensee, or certificate holder:
(1) has violated a statute, rule, or order that the board has issued or is empowered to enforce.

At the present time, the Board formally requests that you provide a written response to the allegations, which should include a narrative explanation of the matter. Please provide a detailed written response to the allegations no later than **August 5, 2020.** Include the file number 2020-0043 on all correspondence. In your response, the Board specifically requests the following information:

1. Copies of the position description(s) you held in Minnesota from July 1, 2018 to June 17, 2020.
2. A listing of all Minnesota projects and the number of hours spent on each project that you worked on from July 1, 2018 to June 17, 2020.
3. Copies of any and all plans, drawings, reports, etc. that you signed and/or certified as a Minnesota P.E. during the lapse from July 1, 2018 to June 17, 2020.
4. Please state what corrective steps you took to rectify the matter once you were aware that your Minnesota P.E. license was expired.

Information provided to the Board or to the Office of the Attorney General as part of an active investigation is confidential pursuant to the Minnesota Government Data Practices Act, Minnesota Statutes § 13.41 (2018). Such information is for the use of the Board and the Attorney General in evaluating the complaint. In accordance with statutes, rules, and professional standards governing legal action, information provided to the Board and the Attorney General may, in some circumstances, be disclosed to certain persons or entities, including but not limited to the Office of Administrative Hearings and appellate courts. Thus, this information may thereby become public data. **Please read the enclosed Tennessen Warning.**

If you have any questions or need additional time to respond, you may contact me at 651-757-1517.

Sincerely,

Doreen Johnson
Executive Director

Enclosures: Tennessen Warning
Copy of the Complaint
Filing a Complaint Brochure

Complaint Exhibit 2

Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design

## TENNESSEN WARNING

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design (the "Board") is seeking information from you that may be considered private or confidential under the Minnesota Government Data Practices Act. Minnesota Statutes section 13.04 (2) requires the Board to notify you of the following matters before you are asked to supply any private or confidential information about yourself.

1. This information is being collected as part of an investigation into your conduct, and the information you supply to the Board may be used to determine whether you have violated any statutes or rules enforced or administered by the Board.

2. If you hold a valid license or certificate issued by the Board, or are an applicant for a license or certificate, you are required to respond to Board communications, appear before the Board and to cooperate with the investigations of the Board according to Minnesota Rules 1800.0100 and 1800.0110. However, if you choose to not voluntarily cooperate, the Board may subpoena you to obtain the information it is seeking. You are advised that you are not required to incriminate yourself in any possible criminal investigation and you may exercise your constitutional right to refuse to supply any information on grounds that you might incriminate yourself.

3. If you supply the information requested and it shows a violation of any of the statutes or rules enforced by the Board, then you may be subject to legal action by the Board.

4. If you choose to not supply the Board with any requested information, whether or not that choice is based on your constitutional right to refuse to supply the Board with the requested information, then the Board has the right to base its decision whether to pursue action against you based on the other information which is available to the Board.

5. You are advised that the information that you supply will be accessible to staff of the Board and the Office of the Attorney General. It may be released to other persons and/or governmental entities who have statutory authority to review the information, investigate specific conduct and/or take appropriate legal action, including but not limited to law enforcement agencies, courts and other regulatory agencies. If the Board institutes a formal disciplinary action against you, then your name and the information you supply could become public.

MINNESOTA

BOARD OF ARCHITECTURE ▪ ENGINEERING
LAND SURVEYING ▪ LANDSCAPE ARCHITECTURE
GEOSCIENCE ▪ INTERIOR DESIGN

85 East 7th Place, Suite 160, St. Paul, MN 55101-2113
Phone: 651-296-2388 • Fax: 651-297-5310 • mn.gov/aelslagid

RECEIVED
MAR 05 2020

# COMPLAINT REGISTRATION FORM

COPY

## GENERAL INFORMATION

You ("the Complainant") may use this form to file a complaint against an architect, professional engineer, land surveyor, landscape architect, professional geoscientist or certified interior designer ("the Respondent"). You may also use this form to file a complaint against an individual engaged in the unauthorized practice of a profession regulated by the Board.

Your complaint may be disclosed to members, employees and consultants of the Board and to employees of the Minnesota Attorney General's Office. Under certain circumstances your complaint, or a summary of your complaint, may be disclosed to the person you are complaining against or to other persons who might have information about the matter. It also may be necessary to disclose your complaint and related investigative data to an administrative law judge.

You are not legally required to complete or return this form. However, if you do not provide the information requested in this form, the Board may not be able to evaluate your complaint.

**Provide your name and contact information.**

(Only **one** person per complaint form. Any additional complainants should complete their own separate form.)

Name: David (First) D (Middle) Dixon (Last) ____ (Suffix)

Address: 514 Americas Way #1885

City: Box Elder Home Phone: ____

State: SD Zip: 57719 Work Phone: 307-735-3478

**Provide the name and contact information of the individual your complaint is against.**

(Only **one** individual per complaint form. If against more than one respondent, complete a separate form.)

Name: Charles (First) ____ (Middle) Marohn (Last) Jr. (Suffix)

Address: 1511 Northern Pacific Rd Room 206

City: Brainerd

State: MN Zip: 56401 Work Phone: 218-325-3311

 Complaint Exhibit 2 

**Statement of Complaint.** (Use additional sheets, if needed.)

See attached statement.

**This statement is true and correct to the best of my knowledge.**

▶ ______________________ 2/17/2020

Signature Date



Complaint Exhibit 2

MINNESOTA

BOARD OF ARCHITECTURE ▪ ENGINEERING
LAND SURVEYING ▪ LANDSCAPE ARCHITECTURE
GEOSCIENCE ▪ INTERIOR DESIGN

85 East 7th Place, Suite 160, St. Paul, MN 55101-2113
Phone: 651-296-2388 • Fax: 651-297-5310 • mn.gov/aelslagid

# AUTHORIZATION TO RELEASE COMPLAINT

**Select and sign ONE of the two options below:**

**I hereby authorize** the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design to provide a copy of my Statement of Complaint (including my name), a summary of its contents, and any documentation I provide in support of my Statement of Complaint, at the Board's discretion, to Charles Marohn, Jr. ("Respondent"), who is the subject of my complaint. I also hereby authorize the Board to release this information to a third party in the course of the Board's investigation of my complaint. I understand that I am not legally required to sign this form. The purpose of this authorization is to facilitate the investigation of my complaint. I am willing to appear as a witness at a hearing if the Board determines there is cause to warrant disciplinary action against the Respondent. This authorization expires one year after this date.

[signature] 2/17/2020

Signature authorizing release — Date

David D. Dixon

Printed Name

# OR

**I hereby decline to authorize** the release of my Statement of Complaint, a summary of its contents, my name, and any documentation I provide in support of my Statement of Complaint to the Respondent. I understand that if I do not want my Statement of Complaint, a summary of its contents, my name, and any documentation I provide in support of my Statement of Complaint released to the person against whom my complaint is filed, or if I do not want to be called as a witness at a disciplinary hearing against Respondent, ***then the Board may dismiss the complaint.***

Signature declining release — Date

Printed Name



Complaint Exhibit 2

On February 14, 2020, I read an article written by Mr. Charles Marohn on the website strongtowns.org, where he advertises that he is both founder and CEO. In the article, "Four Ways Traffic Engineers Thwart Public Will," Mr. Marohn mentioned that he's had his "license challenged for speaking out." At that time, I was curious how the case was investigated and/or resolved. The author bio on at the end of the article mentioned that Mr. Marohn "is a Professional Engineer (PE) licensed in the State of Minnesota", so I searched for the Minnesota board that regulates engineering licenses. Strong Towns is a 501(c)(3) based in Brainerd, Minnesota.

A quick search of Mr. Marohn's name on the AELSLAGID site returned a result showing his license number, 40142, with "EXPIRED" in the last column. At about the same time, I located a post on Strong Towns that included a copy of a letter from AELSLAGID Executive Director Doreen Frost, dated January 26, 2015. It contained the same PE registration number, and referenced Board File No. 2015-0024.

At the time, I was unfamiliar with the specifics of Minnesota's law regarding engineering practice, but presumed that holding oneself out as a Professional Engineer and/or using the initials PE, when not registered, violates state law as it would in most (if not all) other states. I quickly learned that PE licenses in Minnesota expire June 30 in even-numbered years, which would suggest that Mr. Marohn's license had not been expired for just a small time, but instead at least 19 months.

Based on that, I sought to determine whether this reference on StrongTowns was an isolated reference, perhaps an oversight, or part of a deliberate effort to mislead the public about Mr. Marohn's credentials. Correspondence with AELSLAGID confirmed that Mr. Marohn's license was last renewed April 25, 2016, and expired June 30, 2018, so I conducted a couple of quick searches to determine where, how often, and how recently Mr. Marohn has been advertised or introduced as having a current license to practice engineering in Minnesota.

That search quickly turned up a number of results, with language similar to that posted on StrongTowns. It includes the following (though there are likely others):

- A Feburary 11, 2020 article on StrongTowns, including an author bio at the bottom, listing Mr. Marohn as a "Professional Engineer (PE) licensed in the State of Minnesota". https://www.strongtowns.org/journal/2020/2/11/the-hyperloop-is-always-greener-from-the-other-side-of-the-stroad
- The StrongTowns staff page contains language similar to the text used in Mr. Marohn's author bios on the site.
- A page introducing Mr. Marohn as the keynote speaker at the Cumberland Region Tomorrow's 2019 Power of Ten event, held on October 3. It leads with the following: "Charles Marohn - known as 'Chuck' to friends and colleagues - is a Professional Engineer (PE) licensed in the State of Minnesota and a member of the American Institute of Certified Planners (AICP)." https://www.cumberlandregiontomorrow.org/p10speakers

Unfortunately, the About the Author chapter of the book was much more explicit in its claims. The second sentence reads as follows: "He is a professional engineer licensed in the State of Minnesota and a land use planner with two decades of experience."

The frequency of recent, deliberate uses of the term Professional Engineer, including in his presence in the Annapolis introduction which was not corrected when he began speaking, make clear that he is well aware of the use of the term in introducing him, and strongly suggestive (especially in the context of StrongTowns, which he controls) that he continues to use the term himself.

NSPE's Board of Ethical Review has previously addressed references to expired licenses, particularly in Case 05-8. It held that merely assenting to the references to an engineer's expired PE license was unethical. Each instance holding himself out as a PE or using the term Professional Engineer would be a clear violation of 326.02 Subdivisons 1 and 3.

Mr. Marohn talks about being a policy expert, the type that reads law and ordinance. It is not reasonable to assume that Mr. Marohn was not aware that use of the term Professional Engineer, PE, or other similar representations while not licensed, is a violation of law. It is also clear that both Mr. Marohn and Strong Towns, through speaking tours and fundraising activities, benefit from using the claimed licensure. I urge the board to investigate as it sees fit, and to send a clear message that frauds of this sort are not tolerated.

STRONG TOWNS

LATEST ABOUT EVENTS PODCASTS
COMMUNITY BOOK JOIN THE MOVEMENT

# THE HYPERLOOP IS ALWAYS GREENER FROM THE OTHER SIDE OF THE STROAD

FEBRUARY 11, 2020

BY CHARLES MAROHN

I like Cleveland. Much like the other overlooked cities along the Great Lakes, it has amazing potential. Cleveland has inflicted a lot of self-harm over the past 70 years chasing after growth—just look at all those parking lots—in a model that only made it poorer and more fragile. This is not a revelation. The smart people there largely get this now.

If there is a prototype city for the Strong Towns approach, it is Cleveland. For the next three or more decades, the city needs to focus on making better use of existing investments. To rebuild their wealth, they need to shift from expansion of infrastructure systems to aggressively maintaining what they have.

Growth investments should be of the venture capital variety, using small, neighborhood-focused tactical projects inspired by the urgent struggles of their residents. Thickening up their neighborhoods by improving

way to shift demand, why wait for hyperloop? Oh yeah, because they are never going to do that.

Finally, the Greater Cleveland Regional Transit Authority has an annual budget of $300 million. Over the next five years, they are hoping for an additional $600 million for capital investments, things like maintaining facilities and equipment. RTA provides over 50 million rides per year, which is 10x what the hyperloop is optimistically projected to provide. They do this with an annual budget that is 1% of the hyperloop construction.

Don't be distracted, Cleveland. Do the real work—serve your people—and true prosperity will follow.

*Top image from Cleveland.com, reposted from public document.*

---

You May Also Like



## The Fight For #NoNewRoads Is Alive and Well in Washington State

Veteran advocates for a sane and financially sustainable transportation policy in Washington State see a chance to turn crisis into opportunity. And they're hoping to get state leaders to see it too.

Feb 3, 2020 · Strong Towns



## How Much Does a Mile of Road Actually Cost?

The Federal Highway Administration has a chart full of answers to that question you might find useful.

Jan 27, 2020 · Strong Towns



## The State of U.S. Transit in 5 Observations

Where did we spend our money building transit in the U.S. in the last 10 years? And what did we get for it?

Jan 16, 2020 · Daniel Herriges

---



## Charles Marohn

Charles Marohn - known as "Chuck" to friends and colleagues - is the **Founder and President** of Strong Towns and the author of *Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity*. He is a Professional Engineer (PE) licensed in the State of Minnesota and a land use planner with two decades of experience. He holds a bachelor's degree in Civil Engineering and a Master of Urban and Regional Planning, both from the University of Minnesota.

Marohn is also the lead author of *Thoughts on Building Strong Towns — Volume 1, Volume 2* and *Volume 3* — as well as the author of *A World Class Transportation System*. He hosts the Strong Towns Podcast and is a primary writer for Strong Towns' web content. He has presented Strong Towns concepts in hundreds of cities and towns across North America. He is featured in the documentary film *Owned: A Tale of Two Americans*, and was named one of the 10 Most Influential Urbanists of all



Complaint Exhibit 2






## Charles Marohn

Charles Marohn - known as "Chuck" to friends and colleagues - is the **Founder and President** of Strong Towns and the author of *Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity*. He is a Professional Engineer (PE) licensed in the State of Minnesota and a land use planner with two decades of experience. He holds a bachelor's degree in Civil Engineering and a Master of Urban and Regional Planning, both from the University of Minnesota.

Marohn is also the lead author of *Thoughts on Building Strong Towns* — *Volume 1*, *Volume 2* and *Volume 3* — as well as the author of *A World Class Transportation System*. He hosts the Strong Towns Podcast and is a primary writer for Strong Towns' web content. He has presented Strong Towns concepts in hundreds of cities and towns across North America. He is featured in the documentary film *Owned: A Tale of Two Americans*, and was named one of the 10 Most Influential Urbanists of all time by Planetizen.

Read More →

Complaint Exhibit 2

Cumberland Region Tomorrow

ABOUT US OUR WORK POWER OF TEN BLOG

POWER OF 10

AGENDA CEU SPONSORSHIP



KEYNOTE

## CHARLES MAROHN

President & Co-Founder, **Strong Towns**

Charles Marohn - known as "Chuck" to friends and colleagues - is a Professional Engineer (PE) licensed in the State of Minnesota and a member of the American Institute of Certified Planners (AICP). He is the Founder and President of Strong Towns. Marohn has a bachelor's degree in Civil Engineering from the University of Minnesota's Institute of Technology and a Master of Urban and Regional Planning degree from the University of Minnesota's Humphrey Institute.

Marohn is the lead author of *Thoughts on Building Strong Towns* — *Volume 1*, *Volume 2* and *Volume 3* — as well as the author of *A World Class Transportation System*. He hosts the Strong Towns Podcast and is a primary writer for Strong Towns' web content. He has presented Strong Towns concepts in hundreds of cities and towns across North America and in 2017 was named one of the 10 Most Influential Urbanists of all time by Planetizen.

Marohn is a long time commentator on KAXE Northern Community Radio. He currently co-hosts KAXE's Dig Deep program, a monthly examination of public policy issues affecting Minnesotans.

Chuck grew up on a small farm in Central Minnesota. The oldest of three sons of two elementary school teachers, he joined the Minnesota National Guard on his 17th birthday during his junior year of high school and served for nine years. In addition to being passionate about building a stronger America, he loves playing music, is an obsessive reader and religiously follows his favorite team, the Minnesota Twins. Chuck and his wife live with their two daughters in their hometown of Brainerd, Minnesota.

## PANEL AND BREAKOUT SESSION SPEAKERS

- **Burkley Allen**, Council Member, Metro Nashville
- **Sigrid Biermann**, Human Resources Business Partner, UBS
- **Melissa Bryant**, Regional Field Director, Tennessee Farm Bureau
- **Suzanne Carlson**, Director, Division of Multi-modal Transportation Resources, TDOT
- **Miranda Clements**, Program Manager, Nashville Connector
- **Kat Coffen**, Director, SBA Strategies
- **Alfred Degrafinreid**, Associate Vice Chancellor for Community Relations, Vanderbilt University
- **Doug Demosi**, Planning Director, Rutherford County
- **Jimmy Granbery**, Chairman & CEO, H.G. Hill Realty Company
- **Erin Hafkenschiel**, Executive Director of Mobility, Vanderbilt University
- **Anthony Holt**, County Mayor, Sumner County
- **John Houghton**, Senior Transportation Planner, Gresham Smith
- **Emily Hunter**, Director, Planning and Sustainability, Franklin
- **Michael Kenner**, MiKeN Development LLC
- **Lucy Kempf**, Executive Director, Metro Planning
- **Nora Kern**, Executive Director, Walk Bike Nashville
- **Mike Matteson**, Director, Planning & Zoning, Williamson County
- **Leslie Meehan**, Director of Primary Prevention, Tennessee Department of Health
- **Dirk Melton**, Development Director, MarketStreet Enterprises
- **Jim Moore**, G.S. Moore & Son
- **Freddie O'Connell**, Council Member, Metro Nashville
- **Mary Esther Reed**, Mayor, Smyrna
- **Stewart Schwartz**, Executive Director, Coalition for Smarter Growth
- **Jeff Tyndall**, Director, Clarksville/Montgomery County Regional Planning Commission
- **Greg Wathen**, Special Assistant to the Director, Wildlife Resources Agency

cumberlandregiontomorrow.org

Cumberland Region Tomorrow

ABOUT US OUR WORK POWER OF TEN BLOG GIVE NOW

POWER OF 10

# The 2019 Power of Ten was held on October 3.

Thanks to all our sponsors, speakers, and attendees.

PRESENTATIONS

# Wayne Hyatt Lecture Series Keynote Speaker:



## Charles "Chuck" Marohn

Thursday, January 16, 2020
12:30 p.m. – 1:30 p.m.
*Sponsored by Burg Simpson Eldredge Hersh Jardine, P.C.*

Charles Marohn, known as "Chuck" to friends and colleagues, is the Founder and President of Strong Towns and the author of the forthcoming Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity. He is a Professional Engineer (PE) licensed in Minnesota and a land use planner with two decades of experience. He holds a bachelor's degree in Civil Engineering and a Master of Urban and Regional Planning, both from the University of Minnesota.

Marohn is also the lead author of Thoughts on Building Strong Towns — Volume 1, Volume 2 and Volume 3 — as well as the author of A World Class Transportation System. He hosts the Strong Towns Podcast and is a primary writer for Strong Towns' web content. He has presented Strong Towns concepts in hundreds of cities and towns across North America. He was named one of the 10 Most Influential Urbanists of all time by Planetizen.

Marohn is a long time commentator on KAXE Northern Community Radio. He currently co-hosts KAXE's Dig Deep program, a monthly examination of public policy issues affecting Minnesotans.

Chuck grew up on a small farm in Central Minnesota. The oldest of three sons of two elementary school teachers, he joined the Minnesota National Guard on his 17th birthday during his junior year of high school and served for nine years. In addition to being passionate about building a stronger America, he loves playing music, is an obsessive reader and religiously follows his favorite team, the Minnesota Twins.

Chuck and his wife live with their two daughters in their hometown of Brainerd, Minnesota.

# OPTIONAL HALF-DAY PROGRAMMING

__Wednesday, January 15, 2020__

**1 – 5 p.m. | Optional Half-Day Track – Managing Partner Track: Internal Challenges of a Community Association Law Practice**

Meet your challenges head-on and learn how you can better lead your association practice in this interactive two-part presentation by managing partners and other community association law firm executive leaders from around the country. Part I features managing and executive level partners discussing common challenges and best practices, including: starting a new firm; wha t happens when a partner leaves the firm; practicing community association la w within a multi-practice large firm; challenges of medium and small firm association practices; marketing; retirement planning; and human resource and business management is sues. Part II provides attendees the opportunity to network and share ideas and individual experiences.

*Matt D. Ober, Esq.*, Richardson|Ober|DeNichilo, LLP, Pasadena, CA*
*J. David Ramsey, Esq.*, Becker, Morristown, NJ*
*Ellen A. Shapiro, Esq.*, Goodman, Shapiro & Lombardi, LLC, Dedham, MA*
*Robin L. Strohm, Esq., Williams & Strohm, LLC, Columbus, OH*
*P. Thomas Murray, Esq.*, Eads, Murray & Pugh, P.C., Indianapolis, IN*

Complaint Exhibit 2

in Charles Marohn, PE - Pro...

LinkedIn | People | Charles | Marohn, PE



## Charles Marohn, PE

Planner. Engineer. Author of Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity

Brainerd, Minnesota · 500+ connections

Join to Connect

Strong Towns

University of Minnesota

Websites

## About

Charles Marohn - known as "Chuck" to friends and colleagues - is the Founder and President of Strong Towns and the author of the forthcoming Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity. He is a Professional Engineer (PE) licensed in the State of Minnesota and a land use planner with two decades of experience. He holds a bachelor's degree in Civil Engineering and a Master of Urban and Regional Planning, both from the University of Minnesota.

Marohn is also the lead author of Thoughts on Building Strong Towns — Volume 1, Volume 2 and Volume 3 — as well as the author of A World Class Transportation System. He hosts the Strong Towns Podcast and is a primary writer for Strong Towns' web content. He has presented Strong Towns concepts in hundreds of cities and towns across North America. He is featured in the documentary film Owned: A Tale of Two Americans, and was named one of the 10 Most Influential Urbanists of all time by Planetizen.

Marohn is a long time commentator on KAXE Northern Community Radio. He currently co-hosts KAXE's Dig Deep program, a monthly examination of public policy issues affecting Minnesotans.

Chuck grew up on a small farm in Central Minnesota. The oldest of three sons of two elementary school teachers, he joined the Minnesota National Guard on his 17th birthday during his junior year of high school and served for nine years. In addition to being passionate about building a stronger America, he loves playing music, is an obsessive reader and religiously follows his favorite team, the Minnesota Twins.

Chuck and his wife live with their two daughters in their hometown of Brainerd, Minnesota.

## Activity



**A refreshingly thoughtful short read about street over-design. "For a traffic engineer, to be conservative in your design is to spend extra money...**

Liked by Charles Marohn, PE



**This Charles Marohn, PE article never gets old...If you haven't read it, please do! https://lnkd.in/eKiWqYj**

Liked by Charles Marohn, PE



**A massive thank you is in order to Community Associations Institute's 2020 Law Seminar attendees for donating 286 books and backpacks to elementary...**

Complaint Exhibit 2

YouTube Search




Charles L Marohn Strong Towns talk Annapolis Oct 10 2019

98 views • Oct 25, 2019

1 0 SHARE SAVE

High Water Media
13 subscribers

SUBSCRIBE

Category Travel & Events

YouTube

Search




The Strong America Tour: Iowa City

82 views • Nov 1, 2019

LIKE DISLIKE SHARE SAVE ...

City Channel 4 - Iowa City
795 subscribers

SUBSCRIBE

Watch Charles "Chuck" Marohn, Jr., founder of Strong Towns, during his stop in Iowa City as part of his coast-to-coast Strong America Tour. Marohn's tour kicks off the release of his new book, Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity. He is traveling to dozens of

SHOW MORE

Complaint Exhibit 2

YouTube

Search




PS21: Pennywise Portsmouth - Balancing Cost & Community - Chuck Marohn of Strong Towns

22 views • May 28, 2019

2 0 SHARE SAVE ...

Portsmouth Smart Growth
7 subscribers

SUBSCRIBE

What does it mean to be a Strong Town? Chuck Marohn, the Founder and President of Strong Towns, provided some insights on Wednesday, April 3 at 6:30 PM at the Portsmouth Public Library.

SHOW MORE

Complaint Exhibit 2

MINNESOTA

BOARD OF ARCHITECTURE ▪ ENGINEERING
LAND SURVEYING ▪ LANDSCAPE ARCHITECTURE
GEOSCIENCE ▪ INTERIOR DESIGN

85 East 7th Place, Suite 160, St. Paul, MN 55101-2113
Phone: 651-296-2388 • Fax: 651-297-5310 • mn.gov/aelslagid

# COMPLAINT PROCESS

## MISSION OF THE BOARD

The mission of the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design (the "Board") is to regulate the professions and enforce the statutes and rules in order to protect the public.

We ensure that individuals meet the education, examination and experience standards for licensure or certification, and maintain their records in good standing.

We take disciplinary action against those who violate the statutes, rules and standards governing the practice of the professions.

Information regarding possible violations comes to the attention of the Board through written complaints. Complaints may be filed by anyone. Complaints are not public information and may not be discussed with anyone except the Respondent (subject of the investigation) and the Complainant. The Board is mandated to investigate all jurisdictional complaints against regulated individuals.

The principle laws that define and limit the Board's powers and responsibilities are:

- Minnesota Statutes Chapter 214
- Minnesota Statutes Section 326.02-326.15
- Minnesota Rules Chapter 1800 and Chapter 1805

## THE BOARD'S COMPLAINT COMMITTEE

The Complaint Committees consists of five members of the Board, with no more than one from each of the professions licensed or certified by the board, and no more than two public members. The Committee meets approximately ten times a year. The Complaint Committee is supported by:

1. The Investigator
2. The Board's Executive Director
3. The Minnesota Assistant Attorney General assigned to the Board

When a new Board Member(s) is assigned to the Complaint Committee, the staff investigator provides training on:

- The Complaint Registration Form.
- The complaint process.
- The Tennessen Warning.
- Explains the file may be closed with no disciplinary action taken or with a recommendation to take disciplinary action.
- Reviews Minnesota Statutes 14.045 (2018) for the limits on penalties and fines and the factors that go into account in determining the amount of the fine.

The Assistant Attorney General provides orientation as well. The training consists of (not all inclusive):

- The Board's jurisdiction
- Verified written complaint
- Investigations
- Conferences
- Committee action and remedies
- Settlement Agreement and Cease and Desist Order
- Stipulation and Consent Order
- Contested Case Hearing
- Unilateral Cease and Desist Order
- Minnesota Government Data Practices Act, Minnesota Chapter 13
- Open Meeting Law Chapter 13D
- Conflicts of interest

Complaint Exhibit 2

## 2. DISCIPLINARY ORDER.

Purpose: An order may be issued to a licensee or certificate holder or to an unlicensed person so as to protect the public. Any proposed order is drafted with the assistance of the Assistant Attorney General assigned to the Board.

### STIPULATION AND CONSENT ORDER:

1. When the Complaint Committee finds the licensee or certificate holder in violation of Minnesota Statutes 326.02-326.15 or Minnesota Rules 1800 or 1805, it will ask the Respondent (subject of the investigation) to voluntarily enter into a Stipulation and Order which includes the enforcement actions the Committee is proposing. The types of enforcement actions may include: reprimand, civil penalty, revocation, suspension, to place conditions and/or limitations on their license, ethics course, etc.
2. The Stipulation is an agreement between the Respondant and the Complaint Committee in which the Respondant agrees to the enforcement action as a result of the committee having identified the specific statutes and/or rules they violated.
3. Any Order is issued by the full board.
4. Should the Respondant refuse to agree to the Proposed Order itself and/or to the enforcement actions proposed by the Complaint Committee, or if the full Board rejects the proposed Stipulation and Order, the matter may proceed to a contested case hearing initiated under the Administrative Procedures Act. The hearing is held before an Administrative Law Judge (ALJ) and involves the presentation of testimony and submission of exhibits in a manner similar to a civil trial.
5. The ALJ makes a Findings of Fact and a recommendation which will be limited to discipline or no discipline. After reviewing the ALJ report, the Board may issue a Findings of Fact, Conclusion of Law and Order, which describes the disciplinary action taken against the licensee.

### SETTLEMENT AGREEMENT AND CEASE AND DESIST ORDER:

1. When the Complaint Committee finds an unlicensed or non-certificate holder in violation of Minnesota Statutes 326.02-326.15, it will ask the Respondent (subject of the investigation) to voluntarily enter into a Settlement Agreement and Cease and Desist Order including the enforcement actions the Committee is proposing. The types of enforcement actions may include: to cease and desist from holding themselves out as a licensee or certificate holder and/or from practicing as a professional governed by the Board and may include a civil penalty.
2. The Settlement Agreement and Cease and Desist Order is an agreement between the unlicensed person or non-certificate holder and the Complaint Committee in which they agree to the cease and desist and enforcement action as a result of the committee having identified the specific statute(s) they violated.
3. The Settlement Agreement and Cease and Desist Order is issued by the full board when it has reviewed and ratified the Settlement Agreement and Cease and Desist Order between the Complaint Committee and the unlicensed or non-certificate holder. The Settlement Agreement and Cease and Desist Order implements the terms of the agreement.
4. Should the unlicensed or non-certificate holder refuse to agree to the Settlement Agreement and Cease and Desist Order itself and/or to the enforcement actions proposed by the Complaint Committee, or if the full Board rejects the proposed Settlement Agreement and Cease and Desist Order, the matter may proceed to a contested case hearing initiated under the Administrative Procedures Act. The hearing is held before an Administrative Law Judge (ALJ) and involves the presentation of testimony and submission of exhibits in a manner similar to a civil trial.
5. If the Complaint Committee is successful at the contested case hearing, the ALJ will indicate that the Boards position is correct and make a recommendation which will be limited to discipline or no discipline. After reviewing the ALJ report, the Board may issue a Findings of Fact, Conclusion of Law and Order, which describes the disciplinary action taken against the unlicensed person or non-certificate holder.

### TYPES OF ENFORCEMENT ACTIONS THAT MAY BE PART OF A DISCIPLINARY ORDER:

- Refuse to renew.
- Suspension. This requires the individual to cease all practice until the suspension is lifted.
- Revocation. This action results in the individual's license or certificate being annulled altogether.
- Censure and reprimand.
- Condition or limit the person's license or certificate to practice. This permits the individual to continue to practice, but must meet certain conditions within a specified time period.
- Civil penalty.

July 28, 2020

Doreen Johnson
Executive Director, Board of AELSLAGID
85 East 7th Place, Suite 160
St. Paul, MN 55101-2113

Re: Charles L Marohn, PE # 40142
Board File # 2020-0043

Dear Ms. Johnson:

I received your letter dated July 24 detailing the complaint made against me. I respect the Board, the Complaint Committee, and this process. The following is my response.

I acknowledge that I failed to renew my license when it expired on June 30, 2018. My family and I moved in July of 2016 and I did not update the Board regarding my new address. I did not receive the reminder that is generally sent regarding expiration. That is no excuse as maintaining my license is my responsibility, but I want to make clear that it was never my intent to allow my license to expire.

I became aware on June 9 of this year that my license was expired when I was alerted by my colleague, Michelle Erfurt. I have included our message thread on Slack with the date stamp included.

On that date, I filled out a reinstatement form and mailed it to the Board. I included the late penalty in my payment. I also filled out a renewal through June of 2022. I have included a photo of those submissions.

My reinstatement check (#7903) cleared my bank account on June 19. My regular renewal check (#7902) cleared my bank account on June 29. I have not received any other written acknowledgement from the Board on my license, but the Board's website lists me as licensed through June 30, 2022.

In summary, I did not intend to let my professional license expire. When I discovered my error, I took immediate steps to address the situation, including paying a penalty. By all appearances, this has been acceptable to the Board as my license is now listed as current.

In response to your specific questions.

1. Copies of the position description(s) you held in Minnesota from July 1, 2018 to June 17, 2020.
2. A listing of all Minnesota projects and the number of hours spent on each project that you worked on from July 1, 2018 to June 17, 2020.
3. Copies of any and all plans, drawings, reports, etc. that you signed and/or certified as a Minnesota P.E. during the lapse between July 1, 2018 and June 17, 2020.
4. Please state the corrective steps you took to rectify the matter once you were aware that your Minnesota P.E. license was expired.

In my biography, I describe myself today, and during the period in question, as a "professional engineer licensed in the state of Minnesota." Being a licensed engineer is not a condition of my employment.

I do not have any projects, plans, documents, reports, or other such work to report. I did not perform any such work during the period in question. I did not sign any documents that required an engineering license.

I have listed, in the above, the steps I took to immediately rectify the matter once I became aware my license was expired. I will reiterate that it was not my intention to allow my license to expire. When I represented myself as being licensed in the state of Minnesota, I believed I was.

I apologize that the Board and the Complaint Committee has been burdened with this. I believe in the Board's mission and the vital role the Board serves in ensuring that our critical infrastructure is designed, built, and managed by qualified individuals. Even so, I have concerns over abuse of this process.

This is the second time my license has been under review by the Board. In both instances, the motivation was clearly not concern over any work I have performed (none is cited) but merely disagreement with the advocacy I do as part of the non-profit organization Strong Towns, which was cited extensively in both cases. This is unbecoming.

If a professional colleague were genuinely concerned that my license had lapsed, they could easily have contacted me and let me know. That would be a professional and respectful thing to do, but that was not how this was handled. As a result, we have all now been forced to spend time, and witness a process we mutually respect be denigrated, solely as a means to intimidate a colleague and silence critical opinions. This is not what professional licensing should ever be about.

I realize the Board is in a difficult position and must follow established protocols, but I urge you to give consideration to clarifying how you interpret Minnesota Rules 1805.0200, Subpart 1(A), which states:

> *A licensee or certificate holder shall avoid any act that may diminish public confidence in the profession and shall, at all times, conduct himself or herself, in all relations with clients and the public, so as to maintain its reputation for professional integrity.*

The case law nationwide where disputes over such rules have been litigated clearly favor 1st amendment protections for free speech and an open exchange of ideas. A licensed engineer must be able to speak openly regarding their professional opinion without fearing being discredited through the complaint process or even losing their professional license and ability to legally practice. We owe our colleagues, the profession, and the public at large a greater degree of clarity on this point.

I value my colleagues in the engineering profession and the work of the Board. Please let me know if there is any means I can be of service to you.

Thank you for your consideration.

[signature]

Charles L. Marohn, Jr. PE
License # 40142

Yep, I should have mentioned that -- I got it

**Tuesday, June 9th**

**merfurt** 9:18 AM
It's outside of usual office hours (well, maybe not for you), didn't want you to forget

**merfurt** 10:42 AM
Did Hamilton ON send you a link for tonight's webinar? It might have come from Stephanie.Hilson@hamilton.ca

**merfurt** 2:13 PM
your links for tonight's webinar should have come from ward1@hamilton.ca

**chuck** 2:14 PM
Just got it

**merfurt** 2:25 PM
ok, thanks, you are all set for tonight, then!

**merfurt** 3:18 PM
Urban 3 is asking for your PE registration number for an application they're filling out (if they get it, you're going to be presenting in fate, Tx again). But when I look you up on the MN engineer website it says your license has expired.

https://mn.gov/aelslagid/roster.html

**chuck** 3:23 PM
No way, but I just looked and I don't have one beyond 2018. I swear I paid for it.

Tell them 40142 - I'm going to submit the renewal form now. I'm still eligible.

**merfurt** 3:28 PM
Got it.

That's your only professional designation, right? You're not w APA, correct?

**chuck** 3:29 PM
yep

**Wednesday, June 10th**

**merfurt** 9:16 AM
I need to have a check-in call with you today.

**chuck** 9:16 AM
How about right now?

**merfurt** 9:17 AM
ok

7/28/2020

IMG_20200611_105406.jpg






Complaint Exhibit 3

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

November 3, 2020
CONFIDENTIAL

Charles L. Marohn, Jr. PE
616 W 4th Street
Brainerd MN 56401

**RE: Charles L. Marohn, Professional Engineer No. 40142**
**File No. 2020-0043**

Dear Mr. Marohn:

As you know, the Board's Complaint Committee (the "Committee") conducted an investigation of the above-referenced matter. The Committee determined that, under the facts and applicable law, this matter warrants disciplinary action by the Board.

As an alternative to contested-case proceedings, you may agree to disciplinary action by signing the enclosed proposed Stipulation and Order. Enclosed for your review, please find the Committee's proposed Stipulation and Order, which the Committee believes represents a reasonable resolution of this matter.

Please review the Stipulation and Order and this letter and contact me with your response to the proposed Stipulation and Order. If the proposed Stipulation and Order is acceptable, please return the entire original document bearing your signature, to the Board office on or before **November 18, 2020**.

The Committee will recommend that the Board accept and issue the Stipulation and Order at its first available Board meeting. When this matter comes before the Board, it does have the option of rejecting the Stipulation and Order; however, doing so would be rather unusual. If the Board accepts the Stipulation and Order, the Board Chair will sign the document and we will send you a copy of the fully executed document for your files.

Should you choose not to sign the enclosed proposed Stipulation and Order, please let me know on or before November 18, 2020.

If you wish to propose changes to the Stipulation and Order or have an alternative remedy to propose to resolve this matter, you should submit the same in writing to the Board office by the above-mentioned date.



Complaint Exhibit 4

If you have any questions, please contact me at (651) 757-1517.

Sincerely,

D. Johnson

Doreen Johnson
Executive Director

Enclosures: Tennessen Warning
Proposed Stipulation and Order

**STATE OF MINNESOTA**
**BOARD OF ARCHITECTURE, ENGINEERING,**
**LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE**
**AND INTERIOR DESIGN**

**In the matter of**
**Charles L. Marohn, Jr.**
**Professional Engineer Number 40142**

**STIPULATION AND ORDER**
**Board File No. 2020-0043**

TO: Charles L. Marohn, Jr.
616 W 4th Street
Brainerd MN 56401

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design ("Board") is authorized pursuant to Minnesota Stat. §§ 214.10 and 326.111 (2018) to review complaints against architects, professional engineers, land surveyors, landscape architects, geoscientists, and certified interior designers, and to take disciplinary action whenever appropriate.

The Board received information concerning Charles L. Marohn, Jr. ("Respondent"). The Board's Complaint Committee ("Committee") reviewed the information. The parties have agreed that these matters may now be resolved by this Stipulation and Order.

**STIPULATION**

It is hereby stipulated and agreed by Respondent and the Committee that without trial or adjudication of any issue of fact or law and without any evidence or admission by any party with respect to any such issue:

1. Jurisdiction. Respondent was first issued a Professional Engineer license by the Board on February 8, 2000. Respondent is subject to the jurisdiction of the Board with respect to the matters referred to in this Stipulation.

2. Facts. This Stipulation is based upon the following facts:

a. On June 30, 2018, Respondent's Minnesota Professional Engineer license in the State of Minnesota expired.

b. On March 5, 2020, the Board received notice that the Respondent had been using the term Professional Engineer and the initials "P.E." or "PE" on his website, in publications, and in biographies for speaking engagements, during the June 30, 2018 to March 5, 2020 timeframe.

c. On June 17, 2020, Respondent renewed his license.

d. On his renewal forms, Respondent stated that he had not represented himself as a professional engineer without proper licensure, either verbally or on any printed matter in the State of Minnesota.

3. Violations. Respondent admits that the facts specified above constitute violations of Minnesota Statutes section 326.02, subds. 1 and 3 (2018), and Minnesota Rules 1805.0200 subps. 1(B), 2, and subp. 4(C) (2019), and are sufficient grounds for the action specified below. Specifically, it is alleged that the Respondent held himself out as a Professional Engineer in Minnesota without a license and practiced as a Professional Engineer in Minnesota without a license within the meaning of Minnesota Statutes section 326.02, subds. 1 and 3 (2018), during the lapse of his Minnesota Professional Engineer license, between July 1, 2018 to June 17, 2020, by using the title Professional Engineer on his website, in publications, and in biographies for speaking engagements. It is also alleged that the Respondent violated Minnesota Rule 1805.0200 subps. 1(B), 2, and 4(C), by making a false statement or failed to disclose a material fact on his renewal forms by answering that he had not represented himself as a professional engineer

without proper licensure, either verbally or on any printed matter in the State of Minnesota.

4. Enforcement Action. Respondent and the Committee agree that the Board should issue an Order in accordance with the following terms:

a. Censure and Reprimand. Respondent is censure and reprimanded.

b. Civil Penalty. Respondent shall pay to the Board a civil penalty of One Thousand Five Hundred Dollars ($1,500). Respondent shall submit a civil penalty of $1,500 by check to the Board within sixty (60) days of the Board's approval of this Stipulation and Order.

c. Respondent shall complete two (2) ethics hours in addition to the regularly required ethics requirement under Minn. Stat. § 326.107 subd. 1 (c). These hours shall not count towards the hours required for Respondent's license renewal.

5. Waiver of Respondent's Rights. For the purpose of this Stipulation, Respondent waives all procedures and proceedings before the Board to which Respondent may be entitled under the Minnesota and United States constitutions, statutes, or the rules of the Board, including the right to dispute the allegations against Respondent, to dispute the appropriateness of discipline in a contested-case proceeding pursuant to Minn. Stat. ch. 14 (2018), and to dispute the civil penalty imposed by this Agreement. Respondent agrees that upon the application of the Committee without notice to or an appearance by Respondent, the Board may issue an Order containing the enforcement action specified in paragraph 4 herein. Respondent waives the right to any judicial review of the Order by appeal, writ of certiorari, or otherwise.

6. Collection. Pursuant to Minn. Stat. § 16D.17 (2016), ninety days after the Board's

approval of this Stipulation and Order, the Board may file and enforce any unpaid portion of the civil penalty imposed by this Order as a judgment against the Respondent in district court without further notice or additional proceedings. Pursuant to Minn. Stat. § 16D.13 (2018), ninety days after the Board's approval of this Stipulation and Order, interest will begin to accrue on the penalty in accordance with that section.

7. Board Rejection of Stipulation and Order. In the event the Board in its discretion does not approve this Stipulation and Order or a lesser remedy than specified herein, this Stipulation and Order shall be null and void and shall not be used for any purpose by either party hereto. If this Stipulation is not approved and a contested-case proceeding is initiated pursuant to Minn. Stat. ch. 14 (2018), Respondent agrees not to object to the Board's initiation of the proceedings and hearing the case on the basis that the Board has become disqualified due to its review and consideration of this Stipulation and the record.

8. Unrelated Violations. This settlement shall not in any way or manner limit or affect the authority of the Board to proceed against Respondent by initiating a contested-case hearing or by other appropriate means on the basis of any act, conduct, or admission of Respondent justifying disciplinary action which occurred before or after the date of this Stipulation and Order and which is not directly related to the specific facts and circumstances set forth herein.

9. Record. The Stipulation, related investigative reports and other documents shall constitute the entire record of the proceedings herein upon which the Order is based. The investigative reports, other documents, or summaries thereof may be filed with the Board with this Stipulation.

10. Data Classification. Under the Minnesota Government Data Practices Act, this

Stipulation and Order is classified as public data upon its issuance by the Board, Minn. Stat. §13.41, subd. 5 (2016). All documents in the record shall maintain the data classification to which they are entitled under the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2018). They shall not, to the extent they are not already public documents, become public merely because they are referenced herein. A summary of this Order will appear in the Board's newsletter. A summary will also be sent to the national discipline data bank pertaining to the practice of professional engineering.

11. Entire Agreement. Respondent has read, understood, and agreed to this Stipulation and is freely and voluntarily signing it. The Stipulation contains the entire agreement between the parties hereto relating to the allegations referenced herein. Respondent is not relying on any other agreement or representations of any kind, verbal or otherwise.

12. Counsel. Respondent is aware that Respondent may choose to be represented by legal counsel in this matter. Respondent has either had the opportunity to consult with counsel or hereby knowingly waives legal representation.

13. Service. If approved by the Board, a copy of this Stipulation and Order shall be served personally or by first class mail on Respondent. The Order shall be effective and deemed issued when it is signed by the Chair of the Board.

**RESPONDENT**

________________________________
Charles L. Marohn, Jr. PE

Dated: _______________, 20______

SUBSCRIBED and sworn to before me on
this the _____ day of ________________, 20______.

________________________________
(Notary Public)

My Commission Expires:

________________________________

**COMPLAINT COMMITTEE**

________________________________
Wayne Hilbert, AIA
Committee Chair

Dated: ____________________, 20________

**ORDER**

Upon consideration of the foregoing Stipulation and Order and based upon all the files, records, and proceedings herein, all terms of the Stipulation and Order are approved and adopted and the enforcement action therein is issued as an Order of this Board this the ______ day of ________________, 20_______.

MINNESOTA BOARD OF
ARCHITECTURE, ENGINEERING,
LAND SURVEYING, LANDSCAPE ARCHITECTURE,
GEOSCIENCE AND INTERIOR DESIGN

By: ______________________________
Margaret S. Parsons, FAIA
Board Chair

November 17, 2020

Minnesota Board of AELSLAGID
Doreen Johnson, Executive Director
85 East 7th Place, Suite 160
St. Paul, MN 55101-2113

Re: File No. 2020-0043

Dear Ms. Johnson:

I received your letter dated November 3, 2020 along with the proposed *Stipulation and Order*. I am bewildered by the Committee's actions, specifically the serious allegations of fraud and dishonesty and the demand that I submit to a censure to avoid a contested case hearing. Let me be clear: I do not agree to the Committee's findings nor to the proposed course of action.

I am deeply offended by the suggestion that I violated Minnesota Rules 1805.0200. Specifically, subpart 4C, which suggests that I:

> "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;"

All these distasteful adjectives suggest a willful act on my part to deceive the Board and the public. It is not possible for you to make that conclusion, especially since I established a clear timeline indicating that, at the moment I became aware that my license had expired, I took immediate actions to rectify the situation. This was weeks before you sent the complaint to me. My actions have been the opposite of dishonesty, fraud, deceit, or misrepresentation. I have conducted myself with the type of forthright action that demonstrates a respect for the Board and the engineering profession.

Further, as I have indicated to you, I do not practice engineering. I do not work for an organization that conducts engineering. I do not have clients or projects. I do not sign plans or prepare specifications or oversee anyone who does. I am a writer, a commentator, and a public speaker. While I respect the Board's need to police the use of the term "professional engineer," it is clear from my reading of the statutes that the intent of these provisions is to protect the public from people who are misrepresenting themselves in the *practice* of engineering. My inadvertent oversight in allowing my license to temporarily expire seems to be a borderline case, one that a collegial board should find good reason to dismiss out of hand, especially since I took immediate action and the matter has now been rectified.

To the contrary, you have proposed censure, a formal expression of strong disapproval, along with a stiff $1,500 fine. If I had intentionally misled the Board, or intentionally misled the public, or taken some action that had resulted in the harm of others, this might make some sense. None of that is supported by any of the facts nor was it even alleged in the complaint.

I have reviewed many years of history of *Stipulations and Orders* available on your website and note that censure is reserved for the most egregious cases of non-response and lack of cooperation. Given that my behavior has been responsive and cooperative, I ask you to explain how my actions prompt you to seek to censure me. The punishment you are demanding I submit to is arbitrary and capricious.

Earlier this year, Judge Kimberly Middendorf ruled in the matter of Eirik Magnuson in a contested case hearing. The Board had found that Magnuson referred to himself as a “project architect” despite not having ever been licensed as an architect. Further, Magnuson was found to be actively working in an architecture-related position. This is a far more egregious case than a mere temporary lapse in licensure by someone not currently practicing.

Even so, Judge Middendorf ruled that:

> “….in arriving at a penalty amount, the Board must consider the factors listed in Minn. Stat. § 14.045, subd. 3. Consistent with those factors, the Board should consider Respondent's cooperation in the investigation, Respondent's lack of disciplinary history, the lack of evidence of harm to the public, and Respondent's prompt correction of the violation.”

The referenced statute reads as follows:

> Subd. 3.Factors. (a) If a statute or rule gives an agency discretion over the amount of a fine, the agency must take the following factors into account in determining the amount of the fine:
>
> (1) the willfulness of the violation;
>
> (2) the gravity of the violation, including damage to humans, animals, and the natural resources of the state;
>
> (3) the history of past violations;
>
> (4) the number of violations;
>
> (5) the economic benefit gained by the person by allowing or committing the violation; and
>
> (6) other factors that justice may require.

I have demonstrated that there was no will on my behalf to commit any violation. My lapse in licensure was inadvertent and understandable and, when discovered, immediately corrected.

No damage resulted from my temporary lapse in licensure, nor could it have since I am not actively practicing engineering. I have no history of past violations. My current employer does not require me to hold a license nor compensate me for licensure, so I have experienced no economic benefit from representing myself as an engineer during the period in question.

Given these factors, justice requires that there be no censure, no fine, and no sanction of any type beyond the late fee I already paid.

Finally, I will also note that, in the absence of a complaint, one seemingly filed with prejudice over my personal views and opinions, we would not be having this interaction. The Board was satisfied to accept my renewal last June, along with the added late fee, and reissued my license, despite having already received the complaint against me (but not yet forwarded it to me). The complaint process is an inappropriate venue to litigate what is really a 1st amendment issue. I also believe it is a misuse of the Board's standing.

For the sake of my professional colleagues who may someday find themselves subject to such an inquiry merely for expressing their views and opinions, I cannot submit to the *Stipulation and Order* you have forwarded to me.

At the discretion of the Board, I ask that this complaint be resolved with a finding of no further action warranted. If not, I formally request a hearing with the Complaint Committee or the full Board to review the complaint against me.

I am prepared to work with the Board to resolve this matter in an amicable way. I look forward to your response.

Sincerely,

Charles L. Marohn, Jr. PE
License #40142

**Proposed Findings of Fact**

File No. 2020-0043

1. Respondent was first issued a license on February 8, 2000. Respondent has renewed this license and remained in good standing, through June 30, 2018.

2. Respondent's license expired on June 30, 2018. Respondent indicated that he believed he did renew his license, but there is no record of that having happened. Respondent indicated that he changed addresses and has not been receiving mail from the Board. There is no indication that there was a willful violation.

3. On June 9, 2020, Respondent was made aware that the Board's website indicated his license had expired. Respondent has provided documentation indicating that this was the first time he was aware that his license had expired. On that day, Respondent immediately submitted the proper paperwork to renew the license, including a late fee.

4. On June 17, 2020 the Board approved the renewal application, including payment of a late fee, from the Respondent and issued a license. Respondent is now licensed through June 30, 2022.

5. Between July 1, 2018 and June 17, 2020, Respondent did not work as a Professional Engineer, did not oversee anyone working as a Professional Engineer, did not sign any documents or have any involvement with any project requiring licensure, and did not solicit any work or represent himself as a Professional Engineer in order to gain employment or practice engineering.

6. On July 24, 2020, the Board notified Respondent of a complaint alleging that the Respondent misrepresented himself as a Professional Engineer. Respondent replied immediately and has subsequently remained responsive to the concerns of the Board.

7. There is no evidence, testimony, or allegation that the Respondent's gap in licensure resulted in any damage to humans, animals, or the natural resources of the state.

8. The Respondent has no history of past violations and has been responsive and cooperative in promptly resolving this matter.

9. The Respondent's current employment does not require licensure and the Respondent is not compensated for having licensure. Respondent did not accrue any economic benefit from licensure during the gap in licensing.

Given these facts, and in the interest of justice, the Board finds that this matter warrants no additional action.

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

December 17, 2020
CONFIDENTIAL

Charles Marohn, Jr., PE
616 N 4th Street
Brainerd, MN 56401

**RE: Charles L. Marohn Jr., Professional Engineer No. 40142**
**File No. 2020-0043**

Dear Mr. Marohn:

The Committee has proposed a new Stipulation and Order, which the Committee believes represents a reasonable resolution of this matter. Enclosed for your review, please find the Committee's proposed Stipulation and Order.

Please review the Stipulation and Order and this letter and contact me with your response to the proposed Stipulation and Order. If the proposed Stipulation and Order is acceptable, please return the entire original document bearing your signature, to the Board office on or before **January 5, 2021**.

Should you choose not to sign the enclosed proposed Stipulation and Order, please let me know. If this is the case, you have requested a meeting with the Committee and the Committee is prepared to meet with you to further discuss this matter. This meeting will be held on Thursday, January 14, 2021 at 10:00 am, at 81 East 7th Street, Suite 100, Saint Paul, MN 55101. The Committee will also meet in February, on a date to be determined, if January 14, 2021, does not work for your schedule.

Please note, the Committee may make an electronic record of the meeting and anything you say may be used as evidence against you by the Committee should the matter proceed to a contested-case proceeding. The Committee's attorney may also be present at the meeting.

Please be reminded that under the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2018), information given to the Committee as part of an active investigation is classified as confidential. This information will be used by the Committee in evaluating the allegations made against you.

In accordance with the statutes, rules, and professional standards governing legal actions, information received at the conference may, in some circumstances, be disclosed to other persons or entities, including Board members and staff, the staff of the Attorney General, and

persons whom they may contact. Should this matter proceed to a contested-case proceeding, information may be disclosed to the Office of Administrative Hearings, to any reviewing court, and could become public. Accordingly, please ensure you review the enclosed Tennessen Warning.

Due to COVID-19, protocol has changed for both employees and visitors to the Board. A copy of the health assessment and health assessment Tennessen notice has been enclosed.

You may send any documents that you believe will explain your position to Dillon Lang prior to the meeting. Please confirm your availability for the 14th of January.

If you have any questions you may contact Dillon Lang, Investigator, at 651-757-1510, or the undersigned at 651-757-1517.

Sincerely,

D. Johnson
Doreen Johnson
Executive Director

Enclosures: Proposed Stipulation and Order
Tennessen Warning
COVID-19 Tennessen Notice
COVID-19 Health Assessment
Directions to 81 East 7th Street, Suite 100

**STATE OF MINNESOTA**
**BOARD OF ARCHITECTURE, ENGINEERING,**
**LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE**
**AND INTERIOR DESIGN**

**In the matter of**
**Charles L. Marohn, Jr.**
**Professional Engineer Number 40142**

**STIPULATION AND ORDER**
**Board File No. 2020-0043**

TO: Charles L. Marohn, Jr.
616 W 4th Street
Brainerd, MN 56401

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design ("Board") is authorized pursuant to Minnesota Stat. §§ 214.10 and 326.111 (2018) to review complaints against architects, professional engineers, land surveyors, landscape architects, geoscientists, and certified interior designers, and to take disciplinary action whenever appropriate.

The Board received information concerning Charles L. Marohn ("Respondent"). The Board's Complaint Committee ("Committee") reviewed the information. The parties have agreed that these matters may now be resolved by this Stipulation and Order.

**STIPULATION**

It is hereby stipulated and agreed by Respondent and the Committee that without trial or adjudication of any issue of fact or law and without any evidence or admission by any party with respect to any such issue:

1. Jurisdiction. Respondent was first issued a Professional Engineer license by the Board on February 8, 2000. Respondent is subject to the jurisdiction of the Board with respect to the matters referred to in this Stipulation.

2. Facts. This Stipulation is based upon the following facts:

a. On June 30, 2018, Respondent's Minnesota Professional Engineer license in the State of Minnesota expired.

b. On March 5, 2020, the Board received notice that the Respondent had been using the term Professional Engineer and the initials "P.E." or "PE" on his website, in publications, and in biographies for speaking engagements, during the June 30, 2018 to March 5, 2020 timeframe.

c. On June 17, 2020, Respondent renewed his license.

d. On his renewal forms, Respondent stated that he had not represented himself as a professional engineer without proper licensure, either verbally or on any printed matter in the State of Minnesota.

3. Violations. Respondent admits that the facts specified above constitutes practicing professional engineering by holding himself out as a professional engineer without a valid license in violation of Minn. Stat. § 326.02, subds. 1, 3 (2018), constitutes making an untruthful statement on his license-renewal application in violation of Minn. R. 1805.0200, subps. 1(B) and 2 (2019), and constitutes engaging in conduct involving dishonesty or misrepresentation by claiming to be a licensed professional engineer while his license was expired and making a false statement on his license-renewal application, in violation of Minn. R. 1805.0200, subp. 4 (2019). Respondent agrees these are sufficient grounds for the action specified below.

4. Enforcement Action. Respondent and the Committee agree that the Board should issue an Order in accordance with the following terms:

a. Censure and Reprimand. Respondent is censured and reprimanded.

b. Civil Penalty. Respondent shall pay to the Board a civil penalty of One Thousand Five Hundred Dollars ($1,500). Respondent shall submit a civil penalty of $1,500 by check to the Board within sixty (60) days of the Board's approval of this Stipulation and Order.

c. Respondent shall complete two (2) ethics hours in addition to the regularly required ethics requirement under Minn. Stat. § 326.107 subd. 1 (c). These hours shall not count towards the hours required for Respondent's license renewal.

5. Waiver of Respondent's Rights. For the purpose of this Stipulation, Respondent waives all procedures and proceedings before the Board to which Respondent may be entitled under the Minnesota and United States constitutions, statutes, or the rules of the Board, including the right to dispute the allegations against Respondent, to dispute the appropriateness of discipline in a contested-case proceeding pursuant to Minn. Stat. ch. 14 (2018), and to dispute the civil penalty imposed by this Agreement. Respondent agrees that upon the application of the Committee without notice to or an appearance by Respondent, the Board may issue an Order containing the enforcement action specified in paragraph 4 herein. Respondent waives the right to any judicial review of the Order by appeal, writ of certiorari, or otherwise.

6. Collection. Pursuant to Minn. Stat. § 16D.17 (2016), ninety days after the Board's approval of this Stipulation and Order, the Board may file and enforce any unpaid portion of the civil penalty imposed by this Order as a judgment against the Respondent in district court without further notice or additional proceedings. Pursuant to Minn. Stat. § 16D.13 (2018), ninety days after the Board's approval of this Stipulation and Order, interest will begin to accrue on the

penalty in accordance with that section.

7. Board Rejection of Stipulation and Order. In the event the Board in its discretion does not approve this Stipulation and Order or a lesser remedy than specified herein, this Stipulation and Order shall be null and void and shall not be used for any purpose by either party hereto. If this Stipulation is not approved and a contested-case proceeding is initiated pursuant to Minn. Stat. ch. 14 (2018), Respondent agrees not to object to the Board's initiation of the proceedings and hearing the case on the basis that the Board has become disqualified due to its review and consideration of this Stipulation and the record.

8. Unrelated Violations. This settlement shall not in any way or manner limit or affect the authority of the Board to proceed against Respondent by initiating a contested-case hearing or by other appropriate means on the basis of any act, conduct, or admission of Respondent justifying disciplinary action which occurred before or after the date of this Stipulation and Order and which is not directly related to the specific facts and circumstances set forth herein.

9. Record. The Stipulation, related investigative reports and other documents shall constitute the entire record of the proceedings herein upon which the Order is based. The investigative reports, other documents, or summaries thereof may be filed with the Board with this Stipulation.

10. Data Classification. Upon issuance by the Board, this Stipulation and Order is classified as public data. Minn. Stat. §13.41, subd. 5 (2016). All other documents in the record shall maintain the data classification to which they are entitled under Minn. Stat. ch. 13 (2018). Documents shall not, become public merely because they are referenced herein. The Board will post a copy of this order on its website. The Board will also send a summary to the national

discipline data bank pertaining to the practice of professional engineering.

11. Entire Agreement. Respondent has read, understood, and agreed to this Stipulation and is freely and voluntarily signing it. The Stipulation contains the entire agreement between the parties hereto relating to the allegations referenced herein. Respondent is not relying on any other agreement or representations of any kind, verbal or otherwise.

12. Counsel. Respondent is aware that Respondent may choose to be represented by legal counsel in this matter. Respondent has either had the opportunity to consult with counsel or hereby knowingly waives legal representation.

13. Service. If approved by the Board, a copy of this Stipulation and Order shall be served personally or by first class mail on Respondent. The Order shall be effective and deemed issued when it is signed by the Chair of the Board.

**RESPONDENT**

______________________________
Charles L. Marohn, Jr., PE

Dated: ______________, 20______

SUBSCRIBED and sworn to before me on
this the _____ day of _______________, 20______.

______________________________ My Commission Expires:
(Notary Public)

______________________________



Complaint Exhibit 6

**COMPLAINT COMMITTEE**

______________________________ Dated: __________________, 20________

Wayne Hilbert, AIA
Committee Chair

**ORDER**

Upon consideration of the foregoing Stipulation and Order and based upon all the files, records, and proceedings herein, all terms of the Stipulation and Order are approved and adopted and the enforcement action therein is issued as an Order of this Board this the ______ day of _______________, 20_______.

MINNESOTA BOARD OF
ARCHITECTURE, ENGINEERING,
LAND SURVEYING, LANDSCAPE ARCHITECTURE,
GEOSCIENCE AND INTERIOR DESIGN

By: ______________________________
Margaret S. Parsons, FAIA
Board Chair

KUBES
KUBES LAW OFFICE, PLLC

SERVING DESIGN AND CONSTRUCTION PROFESSIONALS

January 19, 2021

**VIA EMAIL: doreen.johnson@state.mn.us**
Doreen Johnson
MN Board of AELSLAGID
85 East 7th Place
Suite 160
St. Paul, Minnesota 55101

Re: Charles Marohn; Board File No. 2020-0043

Dear Ms. Johnson:

This office represents Mr. Marohn on the above Board file. Mr. Marohn works in the realm of urban planning policy development and advocacy nationally. He has had a career beyond reproach and is a national leader in a dialogue on public policy about building strong communities. He has broad local and national support for his work. Importantly, although he holds a license, Mr. Marohn is not a practicing professional engineer. As such, his case is unique, and requires a fresh and unique analysis from the Board. I write to request, respectfully, that the Board re-think its position here.

As the Board is aware, it reinstated Mr. Marohn's license in June 2020 without objection. Only later did the Board commence this disciplinary action, based on a complaint it had received several months prior to issuing the reinstatement. That complaint was filed by someone who does not agree with Mr. Marohn's philosophies on urban planning. As the Board has heard directly from Mr. Marohn already, his lapsed license was not intentional; it was a mistake, an oversight. Significantly, since 2012 - so *before, during, and after the lapse and the reinstatement* - Mr. Marohn has not been practicing as a professional engineer. He does not use his credentials to practice engineering, gain employment as a practicing engineer, or hold himself out as a practicing engineer. He does not perform engineering work (calculations, plans, etc.) that would impact the health, safety, and welfare of the public. He included his P.E. credential on his website and biographical data as a matter of fact, not to pursue or practice engineering in any way.



Complaint Exhibit 7

Therefore, from his perspective, when he completed the renewal form for reinstatement of his license, he was being 100% truthful when he said he had not held himself out or practiced as an engineer during the time his license had been expired. He was being 100% truthful. He did not appreciate that merely using the credentials would be a violation of the rules when he was not, himself, practicing engineering in any form. That was his mistake. My point here is just that: At worst, Mr. Marohn made an innocent mistake.

**ALLEGATIONS**

Based on these facts, the Board alleges Mr. Marohn may be in violation of Minn. Stat. §§ 326.02, subd. 1 and 3; 326.03, subd. 1; and 326.111, subd. 4(a)(1); Minn. R. 1805.0200, subpts. 1(B), 2, and 4. Those statutes and rules provide as follows:

§ 326.02 LICENSURE OR CERTIFICATION.
Subdivision 1. Licensure or certification mandatory.

In order to safeguard life, health, and property, and to promote the public welfare, any person in either public or private capacity practicing, or offering to practice, *** professional engineering, *** either as an individual, a copartner, or as agent of another, shall be licensed or certified as hereinafter provided. It shall be unlawful for any person to practice, or to offer to practice, in this state, *** professional engineering, *** or to solicit or to contract to furnish work within the terms of sections 326.02 to 326.15, or to use in connection with the person's name, or to otherwise assume, use or advertise any title or description tending to convey the impression that the person is a *** professional engineer (hereinafter called engineer), *** unless such person is qualified by licensure or certification under sections 326.02 to 326.15. This subdivision does not preclude an individual who retired from one of the professions listed in this subdivision from using the designation *** professional engineer *** as long as the designation is preceded by the word "retired" and the individual was licensed or certified in the designated profession in the state of Minnesota on the date the individual retired from the designated profession and the individual's license or certification was not subsequently revoked by the Board ***.

***

Subd. 3. Practice of professional engineering.

(a) Any person shall be deemed to be practicing professional engineering within the meaning of sections 326.02 to 326.15 who holds out as being able to perform or who does perform any technical professional service, such as planning, design or observation of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private structures, buildings, utilities, machines, equipment, processes, works, or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of mathematics and the physical and applied engineering sciences, acquired by education or training, and by experience.

(b) No person other than one licensed under sections 326.02 to 326.15 as a professional engineer may:

(1) use the term "professional engineer";

(2) use any other abbreviation or term, including the initials "P.E." or "PE" by signature, verbal claim, sign, advertisement, letterhead, card, or similar means that would lead the public to believe that the person was a professional engineer; or

(3) use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer.

(c) A professional engineering license satisfies any requirements by the state or its political subdivisions to perform any actions authorized under the professional engineering license. A person licensed as a professional engineer under sections 326.02 to 326.15 shall only be required to obtain a license, certification, or other form of approval for a skill or service in addition to a professional engineering license if the state or political subdivision has made an affirmative written determination in statute, rule, or ordinance that such additional license or certification is necessary to safeguard life, health, or property, or promote the public welfare. This section does not preclude the state or a political subdivision from including additional requirements when soliciting public contracts for engineering services. This paragraph does not apply to practice areas where licenses or certifications are required prior to August 1, 2015.

§ 326.03 LICENSE OR CERTIFICATE REQUIRED.
Subdivision 1.Plans; documents.
No person, except an *** engineer *** licensed *** as provided for in sections 326.02 to 326.15 shall practice *** professional engineering *** in the preparation of plans, specifications, reports, plats or other *** engineering *** documents, or in the observation of *** engineering *** projects. In preparation of such documents, reasonable care shall be given to compliance with applicable laws, ordinances, and building codes relating to design.

§ 326.111 UNAUTHORIZED PRACTICE; DISCIPLINARY ACTION.
Subd. 4. Actions against applicants and licensees. (a) The board may, by order, deny, refuse to renew, suspend, temporarily suspend, or revoke the application, license, or certification of a person; censure or reprimand that person; condition or limit the person's practice; refuse to permit a person to sit for examination; or refuse to release the person's examination grades if the board finds that the order is in the public interest and the applicant, licensee, or certificate holder:

(1) has violated a statute, rule, or order that the board has issued or is empowered to enforce.

Minn. R. 1805.0200 OBLIGATION TO PROVIDE FULL DISCLOSURE.
Subpart 1. Public statements.
***

B. A licensee or certificate holder shall be objective and truthful in all professional documents, including but not limited to plans, reports, statements, or testimony. The licensee or certificate holder shall consider relevant and pertinent information in such documents or testimony and express professional opinions publicly only when they are founded upon an adequate knowledge of the facts and a competent evaluation of the subject matter.
***
Subp. 2. False statements and nondisclosure. A licensee or certificate holder shall not make a false statement or fail to disclose a material fact requested in connection with an application for certification, licensure, or renewal in this state or any other state.
***
Subp. 4. General prohibitions. A licensee or certificate holder shall not:

A. circumvent a rule of professional conduct through actions of another;

B. engage in illegal conduct involving moral turpitude;

C. engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

D. engage in conduct that adversely reflects on the licensee's fitness to practice the profession; or

E. permit the licensee's or certificate holder's name or seal to be affixed to plans, specifications, or other documents that were not prepared by or under the direct supervision of the licensee or certificate holder.

**ANALYSIS**

This case presents a situation where a licensee who has not practiced engineering since 2012 inadvertently failed to renew in 2018. In June 2020, a colleague alerted him of his expired license. That same day, Mr. Marohn completed and submitted his paperwork to reinstate his license. He had already completed all the necessary CE courses and was ready to be reinstated.

In preparing his application, he did not consider the use of his credentials in his biographical materials related to his speaking engagements or written articles to be "holding out" as a licensee or practicing engineering – again because he associated that phrase with working as a professional engineer, which he has not done since 2012. That interpretation may have been a mistake on his part, given that licensees have imputed knowledge of the rules, but it was an innocent mistake.

The Board reinstated Mr. Marohn's license without objection.

And yet, in its December 17, 2020, proposed Order, the Board asks Mr. Marohn to admit that he made an "untruthful statement" on his license renewal because he stated that he had not held himself out as a professional engineer without proper licensure and that conduct constituted "engaging in conduct involving dishonesty and misrepresentation." Further, the Board seeks to censure and reprimand Mr. Marohn and impose a $1500 penalty upon him.

Under Minnesota law, any misrepresentation, whether negligent or fraudulent, constitutes fraud under Minnesota law. *Juster Steel v. Carlson Cos.*, 366 N.W.2d 616, 618 (Minn. Ct. App. 1985). Scienter (intent) is a required element of fraud. *Florenzano v. Olson*, 387 N.W.2d 168, 177 (Minn. 1986). The elements of common law fraud are: a false misrepresentation of a material fact; knowledge by the person making the misrepresentation of its falsity; an intention that another rely on the statement; reliance in fact; and damages. Negligent misrepresentation requires the same elements as fraudulent misrepresentation, minus the scienter element. *Florenzano*, 387 N.W.2d at 173.

The Board's use of the words "dishonesty" and "misrepresentation" implicate a scienter requirement here on Mr. Marohn's part. No such intention was present. Mr. Marohn mistakenly missed his renewal in 2018. He has not been a practicing engineer since 2012. He does not sign documents, practice engineering, oversee anyone who practices engineering, work on any engineering projects, apply for any work as an engineer, or represent himself as an engineer (except for the errant use of his PE in his bio while lapsed). He does not use his credentials to seek work as a professional engineer. Given that background, he honestly did not consider himself to be practicing engineering or in any way holding out as a licensee during his period of lapsed license.

In other cases, the Board has been able to appreciate a licensee's mistake and respond accordingly. In Kriens (2019-0104), a certified interior designer ("CID") came to realize that she had intentionally used the term CID after she passed her NCIDQ exam, but before she obtained her certificate from the MN State Board. In addition to improperly using the "CID" credentials, she had signed plans for three MN projects. Despite her intentional conduct, the Board understood that her conduct was based on a mistaken understanding of the rules, not on her bad or fraudulent intention. The Board's order makes no reference to Kriens' dishonesty, misrepresentation, fraud, or dishonorable conduct.

Even more impactful is the Board's order in Sveum (2020-0017). There, a PE inadvertently allowed his license to lapse, but admittedly continued working as an engineer and signed plans on 15 projects without a license. The Board was able to understand Sveum's mistake in failing to renew. The Board's order makes no reference to his dishonesty, misrepresentation, fraud, or dishonorable conduct.

Both cases involved critical mistakes by persons governed by the Board who were actively practicing in their particular areas, signing documents, and holding themselves out in their respective disciplines without appropriate credentials. Yet the Board made no mention of dishonesty, misrepresentation, fraud, or dishonorable conduct. Because it understood the conduct was based on an innocent and human mistake or misunderstanding.

By further way of contrast on the opposite end of intent, I call your attention to *In re Alvah Breitweiser*, OAH Dec. 2, 2007 (2007 WL 4522667). There, the Board found that a licensee had

engaged in acts that were fraudulent, deceptive or dishonest and that adversely affected his ability or fitness to engage in the practice of architecture. His actions included a conviction for bank fraud in Florida, a felony "an element of which is dishonesty or fraud." The Florida Board of Architecture then disciplined him. But when he applied for renewal of his MN license, he answered "no" to the question of whether there were any disciplinary actions taken against him in other jurisdictions (failing to disclose the Florida discipline). Thus, Breitweiser engaged in fraud or deception in the process of renewing his license. Breitweiser's conduct was radically worse and much different than the conduct of Mr. Marohn, and is indicative of what the legislature might have meant by "fraudulent, deceptive or dishonest acts." That conduct is not present here in the least.

These cases demonstrate the span of licensee conduct. These cases also demonstrate how the Board can treat a licensee who has made an innocent mistake. Mr. Marohn's inadvertent lapse of license and mistaken use of his credentials in the interim pale in comparison to the conduct of Kriens and Sveum, who were both active practitioners whose unlicensed conduct threatened the health, safety, and welfare of the public on the many projects they improperly signed. Yet, the Board did not require them to admit to fraud, misrepresentation or any other dishonorable terms as it seeks to impose on Mr. Marohn.

In addition, the Board's imposition of a penalty does not meet the requirements of Minn. Stat. §14.045. That statute requires the Board to consider these factors prior to imposing a penalty:

> (1) the willfulness of the violation;
> (2) the gravity of the violation, including damage to humans, animals, and the natural resources of the state;
> (3) the history of past violations;
> (4) the number of violations;
> (5) the economic benefit gained by the person by allowing or committing the violation; and
> (6) other factors that justice may require.

Minn. Stat. 14.045, subd. 3.

Here, there is no evidence of "willfulness" by Mr. Marohn, but rather an innocent mistake that any licensee could make under these unique circumstances where one is not practicing in his or her discipline. There is no gravity to this situation when viewed in context and reality, as it must be. This licensee is not a practicing engineer – and has not been since 2012. As such, he has not created any threat to the health, safety, and welfare of the public, nor was he seeking work as a professional engineer. He has no prior violations. He received no economic benefit from the alleged violation.

These cases and statute suggest that the Board's current handling of Mr. Marohn's case is arbitrary, capricious, and an abuse of process susceptible to legal challenge. Mr. Marohn will not accept or consent to an Order that accuses him of fraud, misrepresentation, and/or any form of dishonorable conduct, or imposes censures or sanctions upon him. He does not want to have to pursue further legal remedies, but he will if we are not able to resolve this matter amicably.

Ms. Johnson, you know from my many years of service on the Board that I respect the Board and its authority. I am also a strong believer in – and protector of – proper process. I again caution the Board not to allow its complaint process to be co-opted by complainants who have ulterior motives. Here, the complainant has made clear to Mr. Marohn personally that he does not agree with his philosophies about urban planning and is seeking to discredit him through this process. The Board's current position will assassinate Mr. Marohn's character for no reason and irreparably damage his reputation and career, essentially carrying out the work that the complainant could not do without facing personal liability for defamation and damages claims. Additionally, the Board's current position will chill other licensees' exercise of free speech in the public arena, where the unfettered and respectful exchange of ideas is crucial for problem-solving, which is what design professionals are so great at doing.

I plead with the Board to reconsider its evaluation and proposed order. In other cases involving honest mistakes, the Board has acknowledged that fact and reflected that in the outcome of the case. Mr. Marohn deserves at least that consideration here, if not more, given the fact that he is not a practicing engineer.

Mr. Marohn has certainly learned a lesson about tracking his renewal dates more closely. He has also learned a very hard lesson about the importance of the proper use of his credentials and the impact of the MN rules. Please allow those lessons to be sufficient and close this matter with no action taken.

I look forward to hearing from you to discuss this matter further. I thank you sincerely for your consideration.

Very truly yours,

Kristine A. Kubes

cc: Charles Marohn (email only)

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

Kristine A. Kubes
Kubes Law Office, PLLC
275 Market Street, Suite 566
Minneapolis, MN 55405

February 17, 2021
**CONFIDENTIAL**

RECEIVED
FEB 22 2021
BY:

RE: Charles Marohn, Jr., Professional Engineer No. 40142
File No. 2020-0043

Dear Ms. Kubes:

This letter is to notify your client, Charles Marohn, Jr., that the Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design's Complaint Committee will hold a conference to discuss the above entitled matter at 11:00 a.m. on March 10, 2021, conducted via Webex (with video). Enclosed please find a copy of a Notice of Conference, which will fully explain the information that will be discussed.

Mr. Marohn's appearance before the Committee is designed to provide him with an opportunity to clarify possible misunderstandings. The conference is also intended to allow Mr. Marohn and the Committee to seek resolution and remedy of the alleged problem without the necessity of instituting a contested-case proceeding. Please note, the Committee may make an electronic record of the conference and anything Mr. Marohn says at the conference may be used as evidence against him by the Committee should the matter proceed to a contested-case proceeding. The Committee's attorney may also be present at the conference.

Please be reminded that under the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2020), information given to the Committee as part of an active investigation is classified as confidential. This information will be used by the Committee in evaluating the allegations made against Mr. Marohn. In accordance with the statutes, rules, and professional standards governing legal actions, information received at the conference may, in some circumstances, be disclosed to other persons or entities, including Board members and staff, the staff of the Attorney General, and persons whom they may contact. Should this matter proceed to a contested-case proceeding, information may be disclosed to the Office of Administrative Hearings, to any reviewing court, and could become public. **Accordingly, please ensure Mr. Marohn is advised of-the enclosed Tennessen Warning.**



Complaint Exhibit 8

You may send any documents that you believe will explain your client's position to the investigator Dillon Lang prior to the conference. Should you or your client require additional time to prepare for the conference, or desire to meet in person, please advise me immediately. The Complaint Committee is scheduled to meet on April 15, 2021, tentatively scheduled to be in-person. If Mr. Marohn chooses not to participate in the conference, and the parties are unable to resolve this matter, the Committee may initiate a contested-case hearing before an administrative law judge.

Please confirm your client's attendance at the conference scheduled for **March 10, 2021,** by calling Dillon Lang or myself at (651) 757-1517 no later than Wednesday, March 3, 2021. Upon confirmation, Dillon Lang will email the Webex link.

We appreciate your cooperation in this matter. If you have any questions, you may contact Dillon Lang at 651-757-1510, or the undersigned.

Sincerely,

Doreen Johnson
Executive Director

Enclosures: Tennessen Warning
Notice of Conference

Minnesota Board of Architecture, Engineering, Land Surveying,
Landscape Architecture, Geoscience, and Interior Design

## TENNESSEN WARNING

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design (the "Board") is seeking information from you that may be considered private or confidential under the Minnesota Government Data Practices Act. Minnesota Statutes section 13.04 (2) requires the Board to notify you of the following matters before you are asked to supply any private or confidential information about yourself.

1. This information is being collected as part of an investigation into your conduct, and the information you supply to the Board may be used to determine whether you have violated any statutes or rules enforced or administered by the Board.

2. If you hold a valid license or certificate issued by the Board, or are an applicant for a license or certificate, you are required to respond to Board communications, appear before the Board and to cooperate with the investigations of the Board according to Minnesota Rules 1800.0100 and 1800.0110. However, if you choose to not voluntarily cooperate, the Board may subpoena you to obtain the information it is seeking. You are advised that you are not required to incriminate yourself in any possible criminal investigation and you may exercise your constitutional right to refuse to supply any information on grounds that you might incriminate yourself.

3. If you supply the information requested and it shows a violation of any of the statutes or rules enforced by the Board, then you may be subject to legal action by the Board.

4. If you choose to not supply the Board with any requested information, whether or not that choice is based on your constitutional right to refuse to supply the Board with the requested information, then the Board has the right to base its decision whether to pursue action against you based on the other information which is available to the Board.

5. You are advised that the information that you supply will be accessible to staff of the Board and the Office of the Attorney General. It may be released to other persons and/or governmental entities who have statutory authority to review the information, investigate specific conduct and/or take appropriate legal action, including but not limited to law enforcement agencies, courts and other regulatory agencies. If the Board institutes a formal disciplinary action against you, then your name and the information you supply could become public.

# STATE OF MINNESOTA

## BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE, AND INTERIOR DESIGN

In the Matter of Charles Marohn, Jr.,
Professional Engineer No. 40142

**NOTICE OF CONFERENCE**
Board File 2020-0043

Respondent Charles Marohn, Jr. is hereby notified that pursuant to Minn. Stat. §§ 214.10, subd. 2, and 326.111 (2020), and Minn. R. 1800.0110 (2019), the Complaint Committee of the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design will hold a conference with him to discuss the above-entitled matter at 11:00 a.m. on March 10, 2021, conducted via Webex.

## ALLEGATIONS

1. On June 30, 2018, Respondent's Minnesota Professional Engineer license in the State of Minnesota expired.

2. On March 5, 2020, the Board received notice that the Respondent had been using the term Professional Engineer and the initials "P.E." or "PE" on his website, in publications, and in biographies for speaking engagements, during the June 30, 2018, to March 5, 2020, timeframe.

3. On June 17, 2020, Respondent renewed his license.

4. On his renewal forms, Respondent stated he had not represented himself as a Professional Engineer without proper licensure, either verbally or on any printed matter in the State of Minnesota.

## JURISDICTION

The Committee is authorized to review complaints against architects, professional engineers, land surveyors, landscape architects, geoscientists, and certified interior designers, and to take disciplinary action whenever appropriate. Minn. Stat. §§ 214.10 and 326.111 (2020).

Marohn holds Professional Engineer, license number 40142, and is therefore subject to the Committee's jurisdiction.

**ISSUES**

I. Whether Marohn violated Minn. Stat. § 326.02, subd. 1 and 3 (2020), by holding himself out as a Professional Engineer without a valid license.

II. Whether Marohn violated Minn. R. 1805.0200, subp. 1, 2, and 4 (2019), by reporting that he had not represented himself as a Professional Engineer without proper licensure, either verbally or on any printed matter in the State of Minnesota, on his license renewal.

**DATA PRACTICES NOTICE**

Under the Minnesota Government Data Practices Act, Minnesota Stat. ch. 13 (2020), information given to the Committee as part of an active investigation about an individual licensee is classified as confidential. This information will be used by the Committee in evaluating any complaints made against you. Information received at the conference covered by this notice and in your written response may, in some circumstances, be disclosed to other persons or entities, including Board members and staff, staff of the Attorney General's office, and persons whom they contact. Should this matter proceed to a contested-case hearing, information received at the conference may be introduced at the contested-case hearing, and the entire record concerning the disciplinary proceeding will become public data when there is a public hearing concerning the disciplinary action.

**RESULTS OF CONFERNCE**

The Committee has made no decision regarding the truth of the allegations. Any one or a combination of the following actions could be taken as a result of the conference:

1. The Committee could dismiss the matter if it determines that the allegations are not true or, if true, the allegations do not warrant or constitute grounds for discipline.

2. You and the Committee could enter into a stipulation permitting the full Board to issue a mutually agreed-upon order or remedy.

3. The Committee could determine that this matter will be satisfactorily resolved only by proceeding to a contested-case proceeding conducted pursuant to the Administrative Procedures Act, Minnesota Statutes Chapter 14 (2020), with the full Board issuing an order following the hearing.

**ADDITIONAL NOTICE**

You are further notified that you may choose to be, though need not be, represented by an attorney at this conference; that the Committee may record the conference; and that anything you say at the conference may be used by the Committee as evidence against you should the matter proceed to a contested-case proceeding. The Committee's counsel may be present at the conference. The conference is designed to permit the Committee to seek and clarify information, to provide you an opportunity to clarify possible misunderstandings, and to allow you and the Committee to resolve the matter without a contested-case proceeding.

**RESPONSE REQUIRED**

Please confirm your attendance at the conference by contacting Dillon Lang at 651-757-1510 or dillon.lang@state.mn.us within ten days after the day the Committee mailed this notice to you.

You must submit any request for rescheduling the conference to the Board office within ten days of the day the Committee mailed this notice. You must state the specific reason why

Respondent will be unable to attend the conference. The Committee will determine whether a request for rescheduling shall be granted or denied.

If you do not appear at the conference the Committee may initiate a contested-case hearing before an administrative law judge for purposes of taking disciplinary action against you. Disciplinary action may include, but is not limited to, revocation of your license.

If a reasonable accommodation for a disability is needed in order to participate in the conference, such an accommodation can be made available upon request. Examples of reasonable accommodations include wheelchair accessibility, an interpreter, or Braille or large-print materials. To arrange an accommodation, contact the Board at, 85 East Seventh Place, Suite 160, Saint Paul, Minnesota 55101, Voice at 651-296-2388 or TDD at 651-297-5353.

Dated: 2-17-21

MINNESOTA BOARD OF ARCHITECTURE,
ENGINEERING, LAND SURVEYING,
LANDSCAPE ARCHITECTURE,
GEOSCIENCE, AND INTERIOR DESIGN
COMPLAINT COMMITTEE

Doreen Johnson
Doreen Johnson
Executive Director

85 East Seventh Place, Suite 160
St. Paul, Minnesota 55101
651- 757-1517

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

Kristine A. Kubes
Kubes Law Office, PLLC
275 Market Street, Suite 566
Minneapolis, MN 55405

March 17, 2021
CONFIDENTIAL

**RE:** **Charles L. Marohn Jr., Professional Engineer No. 40142**
**File No. 2020-0043**

Dear Ms. Kubes:

Thank you and Mr. Marohn for meeting with the Complaint Committee. The Committee carefully reviewed the comments made by you and your client. The Committee has agreed to remove any reference to the term "dishonesty" and use a more specific citation to 1805.0200, subp. 4(C) (misrepresentation) in paragraph 3, remove any reference to censure in paragraph 4(a), and a reduction in the civil penalty from $1,500 to $500.

Enclosed you will find the proposed Stipulation and Order in this matter. Please advise your client that his enclosure is the final settlement offer of the Complaint Committee.

If the proposed Stipulation and Order is acceptable to your client, please return the entire original document bearing his signature, to the Board on or before **April 7, 2021**. The Committee will recommend that the Board accept and issue the Stipulation and Order at its first available Board meeting. When this matter comes before the Board, it does have the option of rejecting the Stipulation and Order; however, doing so would be rather unusual. If the Board accepts the Stipulation and Order, the Board Chair will sign the document and we will send you a copy of the fully executed Stipulation and Order for your client's files.

Thank you for your client's anticipated cooperation in this matter. If you have any questions, please contact me at 651-757-1517.

Sincerely,

Doreen Johnson
Executive Director

Enclosures: Tennessen Warning
Proposed Stipulation and Order

RECEIVED
MAR 19 2021
BY:



Complaint Exhibit 9

Minnesota Board of Architecture, Engineering, Land Surveying,
Landscape Architecture, Geoscience, and Interior Design

## TENNESSEN WARNING

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design (the "Board") is seeking information from you that may be considered private or confidential under the Minnesota Government Data Practices Act. Minnesota Statutes section 13.04 (2) requires the Board to notify you of the following matters before you are asked to supply any private or confidential information about yourself.

1. This information is being collected as part of an investigation into your conduct, and the information you supply to the Board may be used to determine whether you have violated any statutes or rules enforced or administered by the Board.

2. If you hold a valid license or certificate issued by the Board, or are an applicant for a license or certificate, you are required to respond to Board communications, appear before the Board and to cooperate with the investigations of the Board according to Minnesota Rules 1800.0100 and 1800.0110. However, if you choose to not voluntarily cooperate, the Board may subpoena you to obtain the information it is seeking. You are advised that you are not required to incriminate yourself in any possible criminal investigation and you may exercise your constitutional right to refuse to supply any information on grounds that you might incriminate yourself.

3. If you supply the information requested and it shows a violation of any of the statutes or rules enforced by the Board, then you may be subject to legal action by the Board.

4. If you choose to not supply the Board with any requested information, whether or not that choice is based on your constitutional right to refuse to supply the Board with the requested information, then the Board has the right to base its decision whether to pursue action against you based on the other information which is available to the Board.

5. You are advised that the information that you supply will be accessible to staff of the Board and the Office of the Attorney General. It may be released to other persons and/or governmental entities who have statutory authority to review the information, investigate specific conduct and/or take appropriate legal action, including but not limited to law enforcement agencies, courts and other regulatory agencies. If the Board institutes a formal disciplinary action against you, then your name and the information you supply could become public.

# STATE OF MINNESOTA
## BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE AND INTERIOR DESIGN

**In the matter of**
**Charles L. Marohn, Jr.**
**Professional Engineer Number 40142**

**STIPULATION AND ORDER**
**Board File No. 2020-0043**

TO: Charles L. Marohn, Jr.
616 W 4th Street
Brainerd, MN 56401

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design ("Board") is authorized pursuant to Minnesota Stat. §§ 214.10 and 326.111 (2020) to review complaints against architects, professional engineers, land surveyors, landscape architects, geoscientists, and certified interior designers, and to take disciplinary action whenever appropriate.

The Board received information concerning Charles L. Marohn ("Respondent"). The Board's Complaint Committee ("Committee") reviewed the information. The parties have agreed that these matters may now be resolved by this Stipulation and Order.

**STIPULATION**

It is hereby stipulated and agreed by Respondent and the Committee that without trial or adjudication of any issue of fact or law and without any evidence or admission by any party with respect to any such issue:

1. Jurisdiction. Respondent was first issued a Professional Engineer license by the Board on February 8, 2000. Respondent is subject to the jurisdiction of the Board with respect to the matters referred to in this Stipulation.

2. Facts. This Stipulation is based upon the following facts:

a. On June 30, 2018, Respondent's Minnesota Professional Engineer license in the State of Minnesota expired.

b. On March 5, 2020, the Board received notice that the Respondent had been using the term Professional Engineer and the initials "P.E." or "PE" on his website, in publications, and in biographies for speaking engagements, during the June 30, 2018 to March 5, 2020 timeframe.

c. On June 17, 2020, Respondent renewed his license.

d. On his renewal forms, Respondent stated that he had not represented himself as a professional engineer without proper licensure, either verbally or on any printed matter in the State of Minnesota.

3. Violations. Respondent admits that the facts specified above constitute practicing professional engineering by holding himself out as a professional engineer without a valid license in violation of Minn. Stat. § 326.02, subds. 1, 3 (2020), constitutes making an untruthful statement on his license-renewal application in violation of Minn. R. 1805.0200, subps. 1(B) and 2 (2019), and constitutes engaging in conduct involving misrepresentation by claiming to be a licensed professional engineer while his license was expired and making a false statement on his license-renewal application, in violation of Minn. R. 1805.0200, subp. 4(C) (misrepresentation) (2019). Respondent agrees these violations are sufficient grounds for the action specified below.

4. Enforcement Action. Respondent and the Committee agree that the Board should issue an Order in accordance with the following terms:

a. Reprimand. Respondent is reprimanded.

b. Civil Penalty. Respondent shall pay to the Board a civil penalty of Five Hundred Dollars ($500). Respondent shall submit a civil penalty of $500 by check to the Board within sixty (60) days of the Board's approval of this Stipulation and Order.

c. Respondent shall complete two (2) ethics hours in addition to the regularly required ethics requirement under Minn. Stat. § 326.107 subd. 1 (c). These hours shall not count towards the hours required for Respondent's license renewal.

5. Waiver of Respondent's Rights. For the purpose of this Stipulation, Respondent waives all procedures and proceedings before the Board to which Respondent may be entitled under the Minnesota and United States constitutions, statutes, or the rules of the Board, including the right to dispute the allegations against Respondent, to dispute the appropriateness of discipline in a contested-case proceeding pursuant to Minn. Stat. ch. 14 (2020), and to dispute the civil penalty imposed by this Agreement. Respondent agrees that upon the application of the Committee without notice to or an appearance by Respondent, the Board may issue an Order containing the enforcement action specified in paragraph 4 herein. Respondent waives the right to any judicial review of the Order by appeal, writ of certiorari, or otherwise.

6. Collection. Pursuant to Minn. Stat. § 16D.17 (2020), ninety days after the Board's approval of this Stipulation and Order, the Board may file and enforce any unpaid portion of the civil penalty imposed by this Order as a judgment against the Respondent in district court without further notice or additional proceedings. Pursuant to Minn. Stat. § 16D.13 (2020), ninety days after the Board's approval of this Stipulation and Order, interest will begin to accrue on the

penalty in accordance with that section.

7. Board Rejection of Stipulation and Order. In the event the Board in its discretion does not approve this Stipulation and Order or a lesser remedy than specified herein, this Stipulation and Order shall be null and void and shall not be used for any purpose by either party hereto. If this Stipulation is not approved and a contested-case proceeding is initiated pursuant to Minn. Stat. ch. 14 (2020), Respondent agrees not to object to the Board's initiation of the proceedings and hearing the case on the basis that the Board has become disqualified due to its review and consideration of this Stipulation and the record.

8. Unrelated Violations. This settlement shall not in any way or manner limit or affect the authority of the Board to proceed against Respondent by initiating a contested-case hearing or by other appropriate means on the basis of any act, conduct, or admission of Respondent justifying disciplinary action which occurred before or after the date of this Stipulation and Order and which is not directly related to the specific facts and circumstances set forth herein.

9. Record. The Stipulation, related investigative reports and other documents shall constitute the entire record of the proceedings herein upon which the Order is based. The investigative reports, other documents, or summaries thereof may be filed with the Board with this Stipulation.

10. Data Classification. Upon issuance by the Board, this Stipulation and Order is classified as public data. Minn. Stat. §13.41, subd. 5 (2016). All other documents in the record shall maintain the data classification to which they are entitled under Minn. Stat. ch. 13 (2018). Documents shall not, become public merely because they are referenced herein. The Board will post a copy of this order on its website. The Board will also send a summary to the national

discipline data bank pertaining to the practice of professional engineering.

11. Entire Agreement. Respondent has read, understood, and agreed to this Stipulation and is freely and voluntarily signing it. The Stipulation contains the entire agreement between the parties hereto relating to the allegations referenced herein. Respondent is not relying on any other agreement or representations of any kind, verbal or otherwise.

12. Counsel. Respondent is aware that Respondent may choose to be represented by legal counsel in this matter. Respondent has either had the opportunity to consult with counsel or hereby knowingly waives legal representation.

13. Service. If approved by the Board, a copy of this Stipulation and Order shall be served personally or by first class mail on Respondent. The Order shall be effective and deemed issued when it is signed by the Chair of the Board.

**RESPONDENT**

_______________________________
Charles L. Marohn, Jr., PE

Dated: _______________, 2021

SUBSCRIBED and sworn to before me on
this the _____ day of ________________, 2021.

_______________________________
(Notary Public)

My Commission Expires:

_______________________________

**COMPLAINT COMMITTEE**

_______________________________ Dated: __________________, 2021

Keith Rapp, PG
Committee Chair

**ORDER**

Upon consideration of the foregoing Stipulation and Order and based upon all the files, records, and proceedings herein, all terms of the Stipulation and Order are approved and adopted and the enforcement action therein is issued as an Order of this Board this the ______ day of _______________, 2021.

MINNESOTA BOARD OF
ARCHITECTURE, ENGINEERING,
LAND SURVEYING, LANDSCAPE ARCHITECTURE,
GEOSCIENCE AND INTERIOR DESIGN

By: ____________________________
Margaret S. Parsons, FAIA
Board Chair

KUBES
KUBES LAW OFFICE, PLLC

SERVING DESIGN AND CONSTRUCTION PROFESSIONALS

March 23, 2021

**VIA EMAIL: doreen.johnson@state.mn.us**
Doreen Johnson
MN Board of AELSLAGID
85 East 7th Place
Suite 160
St. Paul, Minnesota 55101

Re: Charles Marohn; Board File No. 2020-0043

Dear Ms. Johnson:

This office represents Mr. Marohn on the above Board file. Thank you for inviting our participation in the Complaint Committee Conference on March 10, 2021. Please send us a link to the recording of that conference about this matter. Thank you.

We have reviewed the revised stipulation and order that the Complaint Committee issued after that conference. We are disappointed to see the Board pursuing this matter in light of the unique facts here. This matter could be closed with no action taken and the matter would not be part of the public record and have no precedential value.

If the matter must proceed to stipulation and order, then we find that the stipulation in its current form does not tell the whole story, and therefore is inaccurate and unduly harmful to Mr. Marohn. We appreciate the changes the Board has made to date, but the Board continues to find that Mr. Marohn engaged in misrepresentation and made false and untruthful statements, all of which required his *intent to deceive,* which is completely missing here.

Mr. Marohn has not been a practicing engineer since 2012. He does not sign documents, practice engineering, oversee anyone who practices engineering, work on any engineering projects, or create any threat to the health, safety, and welfare of the public. He does not apply for any work as an engineer, use his credentials to seek work as a professional engineer, or represent himself as an engineer (except for the errant use of his PE in his bio while lapsed).



Complaint Exhibit 10

Given that background, he honestly did not consider himself to be "practicing engineering" or in any way "holding out" as a licensee during his period of lapsed license. Mr. Marohn's mindset is critical to the Board's analysis, as he would have had to have known he was telling a lie when he completed his renewal application in order to have made the knowingly false statements that the Board is accusing him of committing. That did not happen here. For the same reasons, his conduct lacks the willfulness required for the Board to have the authority to issue discipline under Minn. Stat. 14.045, subd. 3.

Without factual or legal authority, the Board is at risk of acting in an arbitrary and capricious manner by enforcing the rules against Mr. Marohn here. As we have argued in our earlier submissions, the Board has demonstrated its ability in other cases to recognize conduct that was based on an innocent and human mistake, and not impose findings and sanctions based on misrepresentation. We ask no less here.

Again, if the Board is willing to reconsider and close the matter with no action taken, that would be our sincere request. If that is not possible, then in the spirit of trying to resolve the matter now, Mr. Marohn would be willing to consent to a stipulation and order that was modified as follows:

- Under Part 2. Facts:
    - Add the following text to the end of the current sentence at subpart c: "without objection from the Board."
    - Delete current subpart d and replace with the following text: "On July 24, 2020, the Board sent notification of the complaint to the Respondent."
    - Add the following text as subpart e: "On July 28, 2020, the Respondent responded to the Board, acknowledging an inadvertent lapse in licensing, providing evidence that the lapse was addressed and corrected the same day when discovered, and testifying that, beyond referencing licensure in his biography, Respondent has not engaged in the practice of engineering during the lapsed period."
- Part 3. Violations: Delete current paragraph and replace with the following text: "Respondent admits that the facts specified above demonstrate that he used the terms "professional engineer" and "PE" without a current license, in violation of Minn. Stat. 326.02, subds. 1 and 3 (2020)."
- Part 4: Delete subpart c (requiring two ethics hours)

If the Board will make these changes, Mr. Marohn will sign the stipulation.

If the Board will not agree to these terms, then we request your direction for next steps. We are not clear from the Board's materials whether we would first need to appear before a closed session of the full Board to request relief, or proceed directly to a contested case hearing before the ALJ as outlined in the Board's overview of the complaint process. "Should the Respondent refuse to agree to the Proposed Order itself and/or to the enforcement actions proposed by the Complaint Committee, * * * the matter may proceed to a contested case hearing initiated under the Administrative Procedures Act. The hearing is held before an Administrative Law Judge (ALJ) and involves the presentation of testimony and submission of exhibits in a manner similar to a civil trial."

As we have noted earlier, we would prefer not to have to challenge the Board's authority and its handling of this matter, but we are prepared to do so if necessary. Mr. Marohn will not consent to any document that says he was untruthful, misrepresented himself or the facts, made false statements, or is in need of ethics training.

I make this one last plea for the Board to reconsider its response to this case so that we can put this matter to rest without a contested case hearing. Thank you for your consideration.

Very truly yours,

Kristine A. Kubes

cc: Charles Marohn (email only)

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

Kristine A. Kubes
Kubes Law Office, PLLC
275 Market Street, Suite 566
Minneapolis, MN 55405

RECEIVED
APR 22 2021
BY:

April 20, 2021
CONFIDENTIAL

**RE: Charles L. Marohn Jr., Professional Engineer No. 40142**
**File No. 2020-0043**

Dear Ms. Kubes:

Thank you and Mr. Marohn for the counteroffer received by the Board on March 23, 2021. The Complaint Committee carefully reviewed your correspondence and proposed revisions to the proposed Stipulation and Order.

The Committee believes the previously revised proposed Stipulation and Order, sent to you after the conference, represents a fair and reasonable resolution of this matter. Accordingly, the Committee has declined to close the file or incorporate your requested changes into the proposed Stipulation and Order.

Enclosed you will find a copy of the previously proposed Stipulation and Order. Please advise your client that this enclosure is the final settlement offer of the Complaint Committee.

If the proposed Stipulation and Order is acceptable to your client, please return the entire original document bearing his signature, to the Board on or before **May 11, 2021**. The Committee will recommend that the Board accept and issue the Stipulation and Order at its first available Board meeting. When this matter comes before the Board, it does have the option of rejecting the Stipulation and Order; however, doing so would be rather unusual. If the Board accepts the Stipulation and Order, the Board Chair will sign the document and we will send you a copy of the fully executed Stipulation and Order for your client's files.

Should your client choose that the proposed Stipulation and Order is still not agreeable, please let me know as soon as possible, and no later than May 11, 2021. The Committee has authorized this matter to proceed to a contested case proceeding with the Office of Administrative Hearings, should a resolution not be reached.



Complaint Exhibit 11

Thank you for your client's attention in this matter. If you have any questions, please contact me at 651-757-1517.

Sincerely,

D. Johnson

Doreen Johnson
Executive Director

Enclosures: Tennessen Warning
Proposed Stipulation and Order

Minnesota Board of Architecture, Engineering, Land Surveying,
Landscape Architecture, Geoscience, and Interior Design

# TENNESSEN WARNING

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design (the "Board") is seeking information from you that may be considered private or confidential under the Minnesota Government Data Practices Act. Minnesota Statutes section 13.04 (2) requires the Board to notify you of the following matters before you are asked to supply any private or confidential information about yourself.

1. This information is being collected as part of an investigation into your conduct, and the information you supply to the Board may be used to determine whether you have violated any statutes or rules enforced or administered by the Board.

2. If you hold a valid license or certificate issued by the Board, or are an applicant for a license or certificate, you are required to respond to Board communications, appear before the Board and to cooperate with the investigations of the Board according to Minnesota Rules 1800.0100 and 1800.0110. However, if you choose to not voluntarily cooperate, the Board may subpoena you to obtain the information it is seeking. You are advised that you are not required to incriminate yourself in any possible criminal investigation and you may exercise your constitutional right to refuse to supply any information on grounds that you might incriminate yourself.

3. If you supply the information requested and it shows a violation of any of the statutes or rules enforced by the Board, then you may be subject to legal action by the Board.

4. If you choose to not supply the Board with any requested information, whether or not that choice is based on your constitutional right to refuse to supply the Board with the requested information, then the Board has the right to base its decision whether to pursue action against you based on the other information which is available to the Board.

5. You are advised that the information that you supply will be accessible to staff of the Board and the Office of the Attorney General. It may be released to other persons and/or governmental entities who have statutory authority to review the information, investigate specific conduct and/or take appropriate legal action, including but not limited to law enforcement agencies, courts and other regulatory agencies. If the Board institutes a formal disciplinary action against you, then your name and the information you supply could become public.

# STATE OF MINNESOTA
## BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE AND INTERIOR DESIGN

**In the matter of**
**Charles L. Marohn, Jr.**
**Professional Engineer Number 40142**

**STIPULATION AND ORDER**
**Board File No. 2020-0043**

TO: Charles L. Marohn, Jr.
616 W 4th Street
Brainerd, MN 56401

The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design ("Board") is authorized pursuant to Minnesota Stat. §§ 214.10 and 326.111 (2020) to review complaints against architects, professional engineers, land surveyors, landscape architects, geoscientists, and certified interior designers, and to take disciplinary action whenever appropriate.

The Board received information concerning Charles L. Marohn ("Respondent"). The Board's Complaint Committee ("Committee") reviewed the information. The parties have agreed that these matters may now be resolved by this Stipulation and Order.

**STIPULATION**

It is hereby stipulated and agreed by Respondent and the Committee that without trial or adjudication of any issue of fact or law and without any evidence or admission by any party with respect to any such issue:

1. <u>Jurisdiction.</u> Respondent was first issued a Professional Engineer license by the Board on February 8, 2000. Respondent is subject to the jurisdiction of the Board with respect to the matters referred to in this Stipulation.

2. Facts. This Stipulation is based upon the following facts:

a. On June 30, 2018, Respondent's Minnesota Professional Engineer license in the State of Minnesota expired.

b. On March 5, 2020, the Board received notice that the Respondent had been using the term Professional Engineer and the initials "P.E." or "PE" on his website, in publications, and in biographies for speaking engagements, during the June 30, 2018 to March 5, 2020 timeframe.

c. On June 17, 2020, Respondent renewed his license.

d. On his renewal forms, Respondent stated that he had not represented himself as a professional engineer without proper licensure, either verbally or on any printed matter in the State of Minnesota.

3. Violations. Respondent admits that the facts specified above constitute practicing professional engineering by holding himself out as a professional engineer without a valid license in violation of Minn. Stat. § 326.02, subds. 1, 3 (2020), constitutes making an untruthful statement on his license-renewal application in violation of Minn. R. 1805.0200, subps. 1(B) and 2 (2019), and constitutes engaging in conduct involving misrepresentation by claiming to be a licensed professional engineer while his license was expired and making a false statement on his license-renewal application, in violation of Minn. R. 1805.0200, subp. 4(C) (misrepresentation) (2019). Respondent agrees these violations are sufficient grounds for the action specified below.

4. Enforcement Action. Respondent and the Committee agree that the Board should issue an Order in accordance with the following terms:

a. Reprimand. Respondent is reprimanded.

b. Civil Penalty. Respondent shall pay to the Board a civil penalty of Five Hundred Dollars ($500). Respondent shall submit a civil penalty of $500 by check to the Board within sixty (60) days of the Board's approval of this Stipulation and Order.

c. Respondent shall complete two (2) ethics hours in addition to the regularly required ethics requirement under Minn. Stat. § 326.107 subd. 1 (c). These hours shall not count towards the hours required for Respondent's license renewal.

5. Waiver of Respondent's Rights. For the purpose of this Stipulation, Respondent waives all procedures and proceedings before the Board to which Respondent may be entitled under the Minnesota and United States constitutions, statutes, or the rules of the Board, including the right to dispute the allegations against Respondent, to dispute the appropriateness of discipline in a contested-case proceeding pursuant to Minn. Stat. ch. 14 (2020), and to dispute the civil penalty imposed by this Agreement. Respondent agrees that upon the application of the Committee without notice to or an appearance by Respondent, the Board may issue an Order containing the enforcement action specified in paragraph 4 herein. Respondent waives the right to any judicial review of the Order by appeal, writ of certiorari, or otherwise.

6. Collection. Pursuant to Minn. Stat. § 16D.17 (2020), ninety days after the Board's approval of this Stipulation and Order, the Board may file and enforce any unpaid portion of the civil penalty imposed by this Order as a judgment against the Respondent in district court without further notice or additional proceedings. Pursuant to Minn. Stat. § 16D.13 (2020), ninety days after the Board's approval of this Stipulation and Order, interest will begin to accrue on the

penalty in accordance with that section.

7. Board Rejection of Stipulation and Order. In the event the Board in its discretion does not approve this Stipulation and Order or a lesser remedy than specified herein, this Stipulation and Order shall be null and void and shall not be used for any purpose by either party hereto. If this Stipulation is not approved and a contested-case proceeding is initiated pursuant to Minn. Stat. ch. 14 (2020), Respondent agrees not to object to the Board's initiation of the proceedings and hearing the case on the basis that the Board has become disqualified due to its review and consideration of this Stipulation and the record.

8. Unrelated Violations. This settlement shall not in any way or manner limit or affect the authority of the Board to proceed against Respondent by initiating a contested-case hearing or by other appropriate means on the basis of any act, conduct, or admission of Respondent justifying disciplinary action which occurred before or after the date of this Stipulation and Order and which is not directly related to the specific facts and circumstances set forth herein.

9. Record. The Stipulation, related investigative reports and other documents shall constitute the entire record of the proceedings herein upon which the Order is based. The investigative reports, other documents, or summaries thereof may be filed with the Board with this Stipulation.

10. Data Classification. Upon issuance by the Board, this Stipulation and Order is classified as public data. Minn. Stat. §13.41, subd. 5 (2020). All other documents in the record shall maintain the data classification to which they are entitled under Minn. Stat. ch. 13 (2020). Documents shall not, become public merely because they are referenced herein. The Board will post a copy of this order on its website. The Board will also send a summary to the national

discipline data bank pertaining to the practice of professional engineering.

11. Entire Agreement. Respondent has read, understood, and agreed to this Stipulation and is freely and voluntarily signing it. The Stipulation contains the entire agreement between the parties hereto relating to the allegations referenced herein. Respondent is not relying on any other agreement or representations of any kind, verbal or otherwise.

12. Counsel. Respondent is aware that Respondent may choose to be represented by legal counsel in this matter. Respondent has either had the opportunity to consult with counsel or hereby knowingly waives legal representation.

13. Service. If approved by the Board, a copy of this Stipulation and Order shall be served personally or by first class mail on Respondent. The Order shall be effective and deemed issued when it is signed by the Chair of the Board.

**RESPONDENT**

______________________________
Charles L. Marohn, Jr., PE

Dated: ______________, 2021

SUBSCRIBED and sworn to before me on
this the _____ day of _______________, 2021.

______________________________ My Commission Expires:
(Notary Public)

______________________________

**COMPLAINT COMMITTEE**

_______________________________ Dated: __________________, 2021

Keith Rapp, PG
Committee Chair

**ORDER**

Upon consideration of the foregoing Stipulation and Order and based upon all the files, records, and proceedings herein, all terms of the Stipulation and Order are approved and adopted and the enforcement action therein is issued as an Order of this Board this the ______ day of _______________, 2021.

MINNESOTA BOARD OF
ARCHITECTURE, ENGINEERING,
LAND SURVEYING, LANDSCAPE ARCHITECTURE,
GEOSCIENCE AND INTERIOR DESIGN

By: _____________________________

Board Chair

OAH Docket Number: 60-1006-37594

**STATE OF MINNESOTA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
**FOR BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE, AND INTERIOR DESIGN**

---

In the Matter of Professional Engineer License of Charles Marohn

**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiff Charles L. Marohn, Jr. ("Marohn") is a Minnesota licensed professional engineer. In 2009, Marohn founded Strong Towns, a Minnesota non-profit corporation dedicated to educating the public regarding local government decisions on land use, capital investment, and community development and how those decisions can result in insolvency or fiscal pressure on local government. Marohn ceased practicing as an engineer 2012. Since 2012, Marohn has exclusively engaged in political speech advocating local governments spend less tax monies on engineering projects—political advocacy which is directly contrary to the economic interests of professional engineers. Not surprisingly, Marohn's work with Strong Towns has not made him popular with many professional engineering businesses and related trade associations.

Despite no working as an engineer, Marohn continued to maintain his biennial license as a professional engineer under Minn. Stat. §326.02 with the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design ("Board"). In 2016, Marohn moved to a new address and did not receive the biennial notice from the Board to renew his license prior to the July 1, 2016 deadline. As a result, Marohn did not renew his biennial registration by July 1, 2018. Nonetheless, Marohn continued to attend and



Complaint Exhibit 12

pay for 24 hours of continuing education classes required under Minn. Stat. §326.107 from July 1, 2016 through June 30, 2018 in order to maintain his now lapsed license. When Marohn learned his license had lapsed on June 9, 2020, Marohn immediately submitted his registration materials online to the Board to reinstate his license pursuant to the Board's rules. The Board reinstated Marohn's professional engineering license on June 19, 2020.

One month after reinstating Marohn's license, the Board notified Marohn that a complaint had been filed against him by a professional engineer from South Dakota. The complaint claimed that while Marohn was engaged in politically advocating that local governments reduce their expenditures on engineering projects, Marohn had referred to himself as a "professional engineer" on the Strong Towns website, during speaking engagements and in Strong Town publications. Minn. Stat. §326.02, subd. 3 had been amended in 2014 to provide it was unlawful for anyone other than a currently licensed professional engineer to describe themselves as "professional engineer" under any circumstances. Despite the fact the Board admitted Marohn had not engaged in providing any engineering services to anyone during the period in which his license had lapsed, the Board threatened to sanction Marohn unless Marohn stipulated he had violated Minnesota law and had engaged in dishonesty by describing himself as a professional engineer even though the Board admitted Marohn had not engaged in any engineering practice during those two years. In fact, the Board members who authorized the commencement of this contested case specifically stated that the reason for doing so was based on Marohn describing himself as a "professional engineer" while engaged in political advocacy.

The Board claims Marohn committed two violations in this contested case:

(i) Marohn said he was a "professional engineer" during the period his license lapsed in violation of Minn. Stat. §326.02 subd. 3(b); and

(ii) Marohn falsely answered a preprinted certification on his renewal application that he had not represented himself as a "professional engineer" without a license in



Complaint Exhibit 12

> violation of Minn. Rule §1800.0200 subps. 1(B), 2, and 4(C) which prohibit licensees from being "[un]truthful in all professional documents;" making "a false statement … in connection with an application for … renewal;" or "engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Marohn moves to dismiss this contested case because the Board's claims violate Marohn's rights under the First Amendment of the U.S. Constitution and Article I, §3 of the Minnesota Constitution. More specifically, §326.02 subd. 3(b)'s prohibition on referring to oneself as "professional engineer" applies in all circumstances – including social gatherings and most egregiously in this case, political advocacy. In *Nat'l Inst. of Family Life Advocates v. Becerra* ("*NIFLA*"), 138 S.Ct. 2361, 2371 (2018), the Supreme Court unequivocally held that professional regulations banning speech are subject to strict scrutiny. Simply put, the Board cannot establish a "compelling state interest" to in banning individuals from stating they are a "professional engineer" when the individual is not engaged in professional engineering work. The Board's Complaint must be dismissed.

## MATERIAL FACTS NOT IN DISPUTE

### A. Background.

1. Marohn is a Minnesota licensed professional engineer, an urbanist, a land-use planner, an author, and a public speaker. *Marohn Declaration,* ¶*3.* Marohn earned a bachelor's degree in civil engineering from the University of Minnesota in 1995 and a Masters of Urban and Regional Planning in 2004 from the University of Minnesota. *Marohn Dec.,* ¶*4.* Marohn obtained his Minnesota professional engineering license on February 8, 2000. *Marohn Dec.,* ¶*5.*

2. Shortly after licensure in 2000, Marohn started his own professional planning and engineering firm, Community Growth Institute, LLC. Community Growth Institute, LLC engaged in both professional planning and engineering working exclusively on behalf of local governments. *Marohn Dec.,* ¶*6.* During the next ten years, Marohn found that local

governments were spending monies on infrastructure projects that were a waste of money and were making the communities those local governments represented poorer. *Marohn Dec.*, ¶*6.* As a result, in 2009, after experiencing frustration with the amount of taxpayer monies local governments wasted on engineering projects, Marohn founded Strong Towns, a nonprofit corporation based in Minnesota that advocates for, among other reforms, local governments to spend less taxpayer dollars on engineering projects. *Marohn Dec.*, ¶*7.* Marohn phased out his private practice and closed Community Growth Institute, LLC in 2012. *Id.*

3. Strong Towns advocates an approach to urbanism that avoids construction of unnecessary infrastructure and the costs of building and maintaining unnecessary infrastructure. *Marohn Dec.*, ¶*8.* Strong Towns provides education and information to the public nationwide to assist taxpayers in being better advocates for appropriate infrastructure projects in their localities. *Marohn Dec.*, ¶*9.* Strong Towns maintains a website containing information on urbanism, urban planning, land-use planning, and infrastructure projects. *Marohn Dec.*, ¶*10.* Marohn is also the author of *Strong Towns: A Bottom-Up Revolution to Rebuild American Prosperity* and *Confessions of a Recovering Engineer: A Strong Towns Approach to Transportation*. *Marohn Dec.*, ¶¶*11-12.* Marohn is well known and broadly respected in the fields of urbanism, planning, and engineering and his work is broadly cited. In 2017, Marohn was voted one of the ten "most influential urbanists of all time" by the urbanist website Planetizen. *Marohn Dec.*, ¶*13.*

4. Marohn has not been a practicing engineer since 2012. *Marohn Dec.*, ¶*14.* Since 2012, Marohn has not signed any engineering documents, prepared any plans or specifications requiring licensure, overseen anyone who practices engineering, worked on any engineering projects, or undertaken any professional action that created any threat to the health, safety, and

welfare of the public. *Id.* Since 2012, Marohn has neither applied for any work as an engineer nor used his credentials to seek work as a professional engineer. Simply put, since 2012, Marohn has not engaged in any acts requiring a professional engineering license. *Id.*

**B. Marohn's Minnesota Professional Engineering License Expires in 2018; When Marohn Becomes Aware of This, He Renews His License.**

5. Professional-engineering licenses are issued for a two year period expiring on June 30 in each even year. Minn. Stat. §326.10. By June 30 of each even year, licensed professional engineers must submit a renewal application and a $120 renewal fee to the Board. *Marohn Dec.,* ¶*15.* During this two-year period, the licensed professional engineer must complete 24 hours of certified continuing education classes including at least two hours in ethics in order to renew the professional engineering license. *Id; see also* Minn. Stat. §326.107.

6. Before June 30, 2016, Marohn applied for renewal of his professional-engineering license, and the Board issued Marohn a two-year professional-engineering license effective July 1, 2016. *Marohn Dec.,* ¶*16.* Because Marohn did not receive the Board's notice reminding Marohn to renew his license before June 30, 2018, coupled with Marohn no longer practicing as a professional engineer, Marohn did not remember to renew his professional-engineering license on June 30, 2018. *Marohn Dec.,* ¶*17.* As a result, unbeknownst to Marohn, Marohn's professional-engineering license expired on July 1, 2018. *Id.*

7. Presumably because licensed professional engineers frequently fail to renew their professional-engineering licenses in a timely manner, the Minnesota State Legislature enacted a specific statutory provision providing for professional engineers to reinstate their licenses:

> A licensee or certificate holder whose license or certificate has expired may reinstate the expired license or certificate by satisfying all prior continuing education requirements to a maximum of 48 professional development hours, by paying all of the renewal fees due for all prior renewal periods that the license or certificate was expired and the current renewal period, and paying a delayed renewal fee in the amount set by the board.



Complaint Exhibit 12

Minn. Stat. §326.10, subd. 9; *see also Marohn Dec.*, ¶*19.* Marohn did not become aware that his professional-engineering license had lapsed until June 9, 2020 when another employee of Strong Towns, Michelle Erfurt, alerted Marohn that the Board's website indicated that Marohn's license had expired. *Marohn Dec.*, ¶*18.* On that day, Marohn submitted an application to reinstate his license along with the required fees. *Id.* Because Marohn believed he was still a licensed professional engineer from July, 2018-July, 2020, Marohn had completed all of the 24 continuing professional development hours during that time in order to maintain and renew his license. *Marohn Dec.*, ¶*20.* In addition, because Marohn would have to renew his professional-engineering license for 2020-2022 by June 30, 2020, Marohn simultaneously submitted his renewal application for the years 2020-2022. *Id.* As a result, the Board reinstated Marohn's professional-engineering license for 2018-2020 and issued a renewal license for 2020-2022 on or about June 19, 2020. *Id.*

8. From July 1, 2018 to today, Marohn has not worked or solicited work as a professional engineer, has not overseen anyone working as a professional engineer, has not signed any documents or been involved in any project requiring licensure and has not represented himself as a professional engineer in order to gain employment or practice engineering. *Marohn Dec.*, ¶*21.*

**C. A South Dakota Engineer Files a Complaint Against Marohn with the Board.**

9. On March 5, 2020, David D. Dixon filed a complaint with the Board against Marohn based exclusively on Marohn not having a license from July 1, 2018 through March 5, 2020. *Marohn Dec.*, ¶*22.* Dixon is an engineer living in Box Elder, South Dakota. *Id.* Marohn has given talks in South Dakota on behalf of Strong Towns making arguments some professional engineers may perceive as against engineers' economic interests. *Id.*

10. Despite the Board receiving notification of Dixon's complaint on March 5, 2020, the Board did not notify Marohn of the complaint until July 24, 2020 – more than one month after the Board had renewed Marohn's professional-engineering license. *Marohn Dec., ¶24 and a copy of David Dixon's complaint with the accompanying documents attached as Exhibit 2.* Dixon's complaint specifically states that it was submitted as retaliation for Marohn's political advocacy—and thus for protected First Amendment activity:

a. Dixon explained that he became interested in Marohn's licensure history as a result of reading an article Marohn authored and posted on Strong Towns website entitled "Four Ways Traffic Engineers Thwart Public Will";

b. Dixon states Marohn asserted that his professional engineering license had been challenged because of Marohn's political advocacy;

c. Dixon states he was "curious" about Marohn's assertion and, as a result, undertook an investigation of Marohn's licensure history on the Board's website;

d. Dixon states that "Marohn talks about being a policy expert, the type that reads law and ordinances," and that Marohn must thus have known that describing himself as a professional engineer was illegal; and

e. Dixon concludes by asking the Board "to send a clear message that frauds of this sort will not be tolerated."

11. Dixon's sole focus was that Marohn had identified himself as a "professional engineer" on Strong Towns website, in publications and at speaking engagements. *Marohn Dec., ¶25.*

**D. Marohn Attempts to Resolve the Complaint with the Board.**

12. Pursuant to Minn. Stat. §326.111, the Board's complaint committee investigates complaints made to the Board ("Complaint Committee"). *Marohn Dec., ¶26.* In their July 24, 2020 letter, the Complaint Committee requested Marohn: (i) produce documents showing positions Marohn held in Minnesota from July 1, 2018 to June 17, 2020; (ii) list all Minnesota projects Marohn worked on, along with the total hours worked, from July 1, 2018 to June 17, 2020; (iii) list all plans Marohn signed as a Minnesota professional engineer from July 1, 2018 to

June 17, 2020; and (iv) state all steps Marohn took to "rectify the matter" once he became aware that his license had expired. *Id.* The Complaint Committee's letter thus properly focused where it should - whether Marohn engaged in professional-engineering services while unlicensed.

13. Marohn responded to the Complaint Committee's letter in a July 28, 2020 letter. *Marohn Dec., ¶27 and Marohn's July 28, 2020 letter attached as Exhibit 3.* In his July 28, 2020 response, Marohn responded to the Complaint Committee's requests and confirmed Marohn did engage in any engineering work from July 1, 2018 to June 17, 2020. *Marohn Dec., ¶28.*

14. The Complaint Committee responded in a November 3, 2020 letter along with a proposed stipulation and order. *Marohn Dec., ¶29 and the Complaint Committee's November 3, 2020 letter attached as Exhibit 4.* In its November 3, 2020 letter and stipulation, the Complaint Committee had now shifted its focus from any professional-engineering work Marohn had performed to simply whether Marohn had referred to himself as a professional engineer in any circumstances. *Marohn Dec., ¶30.* The Complaint Committee asserted that it had "determined" Marohn violated Minn. Stat. §326.02, subds. 1 and 3 and Minnesota Rules 1805.0200, subps. 1(B), 2, and 4(C) and the Complaint Committee would recommend disciplinary action by the Board. *Id.* Minn. Stat. §326.02, subd. 1 and 3 prohibit a person from providing professional-engineering services in Minnesota without a professional-engineering license. *Id.* Minn. Stat. §326.02, subd. 3, which was amended in 2014 to add subd. 3(b), states:

> (b) No person other than one licensed under sections 326.02 to 326.15 as a professional engineer may:
>
> (1) use the term "professional engineer";
>
> (2) use any other abbreviation or term, including the initials "P.E." or "PE" by signature, verbal claim, sign, advertisement, letterhead, card, or similar means that would lead the public to believe that the person was a professional engineer; or

> (3) use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer.

15. In its November 3, 2020 letter, the Complaint Committee interpreted these provisions as prohibiting a person from referring to himself as a professional engineer to the public in any circumstances – even those unrelated to professional engineering. In other words, according to the Complaint Committee, a person would violate subdivision 3(b) if a person referred to himself as a professional engineer at a public gathering completely unrelated to providing any engineering services. *Id.* Moreover, Minnesota Rule §1800.0200 subps. 1(B), 2, and 4(C) prohibit licensees from being "[un]truthful in all professional documents;" making "a false statement or fail to disclose a material fact requested in connection with an application for certification, licensure, or renewal in this state or any other state;" or "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." As explained in the November 3, 2020 letter, the Complaint Committee proposed that Marohn sign - and agree to - the proposed stipulation and order as an alternative to the Board issuing an Order against Marohn. *Marohn Dec.*, ¶*31.*

16. In its proposed stipulation, the Complaint Committee demanded that Marohn agree that he violated Minn. Stat. §326.02, subds. 1 and 3 solely by "using the title professional engineer on his website, in publications, and in biographies for speaking engagements." *Marohn Dec.,* ¶*32.* Furthermore, the Complaint Committee demanded that Marohn stipulate that he violated Minnesota Rules 1805.0200, subps. 1(B), 2, and 4(C) by "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation" when Marohn completed his reinstatement and renewal applications. *Id.* These applications required Marohn to certify:

> I have not represented myself as an architect, professional engineer, land surveyor, landscape architect, professional geologist, professional soil scientist, or certified interior designer, without proper licensure or certification, either verbally or on any printed



Complaint Exhibit 12

> matter, in the State of Minnesota, nor will I do so until such time as my license or certificate has been issued by the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design.

*Id.*

17. Marohn interpreted this certification to mean that Marohn had not represented himself as a professional engineer in connection with providing, or offering to provide, professional-engineering services in Minnesota as opposed to engaging in public advocacy speech. *Marohn Dec., ¶33.* However, the Complaint Committee asserted that this certification encompasses references as a professional engineer *anywhere* including on the website of the non-profit corporation Marohn founded, Strong Towns. *Id.*

18. Finally, the stipulation specifically provided Marohn would agree that he had made a false statement of fact on the renewal application and Marohn would agree to a reprimand and censure, pay a $1,500 civil penalty, and agree to take two hours of ethics classes. *Marohn Dec., ¶34.*

19. Marohn responded to the Complaint Committee in a November 17, 2020 letter. *Marohn Dec., ¶35 and Marohn's November 17, 2020 letter attached as Exhibit 5.* In his November 17, 2020, Marohn again acknowledged that his professional engineering license had lapsed. *Id.* However, Marohn would not agree to any stipulation finding he engaged in any type of fraud, dishonesty, or misrepresentation based on Marohn stating that he was a professional engineer in situations that did not involve providing or offering to provide professional-engineering services. *Id.* Marohn proposed modifications to the findings of fact to show that Marohn renewed his lapsed license before being made aware of Dixon's complaint. *Id.*

20. The Complaint Committee responded to Marohn's November 17, 2020 letter by a December 17, 2020 letter. *Marohn Dec., ¶36 and the Complaint Committee's December 17,*

*2020 letter attached as Exhibit 6.* Along with the December 17, 2020 letter, the Complaint Committee enclosed a revised stipulation in which the Complaint Committee increased the sanctions on Marohn by now demanding Marohn stipulate that he engaged in "conduct involving dishonesty or misrepresentation by claiming to be a licensed professional engineer while his license was expired." *Id.* Once again, the Complaint Committee demanded that Marohn agree to a reprimand and censure and a $1,500 civil penalty. *Id.*

21. At this point, Marohn hired an attorney, Kristine Kubes, to represent him. *Marohn Dec.,* ¶*37.* Ms. Kubes sent a December 31, 2020 letter to the Complaint Committee requesting until January 19, 2021 to respond to the Complaint Committee's December 17, 2020 letter. *Id.* On January 19, 2021, Ms. Kubes sent the Complaint Committee a January 19, 2021 letter responding to the Complaint Committee's December 17, 2020 letter. *Id. and Ms. Kubes January 19, 2021 letter attached as Exhibit 7.* In her letter, Ms. Kubes analyzes the issues and explains to that under Minnesota law, Marohn did not commit any type of "fraud" or "dishonesty" because there was no intent – i.e.. Marohn did not intend to engage in the fraud or dishonesty. *Id.* Ms. Kubes's letter further cited other disciplinary actions that the Board has taken when professionals fail to timely renewal their license applications. *Id.* In those instances, the Board did not demand that the professionals stipulate that they engaged in fraud, even though those professionals were practicing in their licensed profession and their actions did potentially threaten the public health safety and welfare. *Id.*

22. In response to Ms. Kubes's January 19, 2021 letter, the Complaint Committee sent Ms. Kubes a February 17, 2021 letter inviting Marohn and Ms. Kubes to attend a conference before the Complaint Committee on March 10, 2021 via a remote video due to Covid. *Marohn Dec.* ¶*38 and the Board's February 17, 2021 attached as Exhibit 8.* During this conference:

a. The Complaint Committee chair, Keith Rapp, stated he was concerned over Marohn referring to his engineering credentials during Marohn's public speaking appearances at "Tedx, "The American Conservative", and "Talks on Google."

b. Paul Vogel, a member of the Complaint Committee, stated his concern that people listening to Marohn speak during his public advocacy listeners may rely more on what Marohn is advocating based on Marohn stating he is a professional engineer.

c. Eric Friske, a member of the Complaint Committee, questioned Marohn about how credentials are represented in a spoken podcast format.

*Id.*

23. At this remote conference, there were no representations or allegations of Marohn engaged in any engineering work or offered to engage in any engineering work during the period Marohn's professional-engineering license had lapsed. *Marohn Dec., ¶39.* After the conference, the Complaint Committee sent Ms. Kubes a March 17, 2021 letter with another draft stipulation. *Marohn Dec., ¶40 and the Complaint Committee's March 17, 2021 letter attached as Exhibit 9.* The updated stipulated order contained findings that omitted key facts in a way that is prejudicial to Marohn and maintains assertions that Marohn made an "untruthful statement," a "false statement," and engaged in "conduct involving misrepresentation." *Id.*

24. Ms. Kubes responded to the Complaint Committee in a March 23, 2021 letter. *Marohn Dec., ¶41 and Ms. Kubes' March 23, 2021 letter attached as Exhibit 10.* Ms. Kubes once again reiterated that Marohn would not agree to any stipulation stating that Marohn engaged in any type of dishonesty or misrepresentation. *Id.* Ms. Kubes stated Marohn will sign a stipulated order acknowledging the use of the term "professional engineer" in Marohn's biography during the lapse in licensure and agree to a reprimand and a $500 civil penalty if the Board will remove assertions that Marohn made an "untruthful statement," a "false statement," and engaged in "conduct involving misrepresentation" and if the Board will update the findings of fact to

indicate that Marohn applied for and received renewal of his professional-engineering license prior to being notified of the complaint from Dixon. *Id.*

25. The Complaint Committee responded in an April 20, 2021 letter. *Marohn Dec., ¶42 and the Complaint Committee's April 20, 2021 letter attached as Exhibit 11.* In the April 20, 2021 letter, the Complaint Committee rejected all of Marohn's requested changes. *Id.* The letter also threatened the further action against Marohn if he did not agree to sign the stipulated order. *Id.*

## ARGUMENT

### A. Minn. Stat. §326.02, Subd. 3(b)'s Prohibition on Using the Term "Professional Engineer" Is a Content-Based Speech Restriction Subject to Strict Scrutiny.

Content-based speech regulations—laws that "'target speech based on its communicative content'"—are subject to strict scrutiny. *NIFLA*, 138 S.Ct. 2361, 2371 (2018) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). A speech regulation is content-based if the "law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Laws that are subject to strict scrutiny are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*. Narrow tailoring is a demanding standard:

> A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative).

*281 Care Committee v. Arneson*, 766 F.3d 774, 787 (8th Cir. 2014) (quoting *Republican Party of Minnesota v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc)).

In *NIFLA*, the Supreme Court held that "professional speech" is not an exception to the First Amendment free speech guarantee. 138 S.Ct. at 2371-75. The Court affirmed that "[s]peech



Complaint Exhibit 12

is not unprotected merely because it is uttered by 'professionals'" and explained why professional speech is not an exception to the rule subjecting content-based restrictions to strict scrutiny. *Id*. at 2371-72.

Before *NIFLA*, two courts had struck down under the First Amendment state restrictions on the use of professional titles. *Serafine v. Branaman*, 810 F.3d 354, 357-62 (5th Cir. 2016) (holding unconstitutional, as applied, a provision of a psychologist-licensing scheme that restricted the use of the title "psychologist" by unlicensed persons); *Järlström v. Aldridge*, 366 F.Supp.3d 1205 (D. Ore. 2018) (holding unconstitutionally overbroad and thus facially unconstitutional a provision of an engineer-licensing scheme that restricted the use of the title "engineer" by unlicensed persons).

The only interest the State of Minnesota has in licensing engineers is to ensure persons practicing engineering are competent and ethical while performing or offering to perform engineering services – what other interest could the State have? Minnesota does not have an important interest - or even a legitimate interest and certainly not a compelling one - in controlling the speech of professional engineers when those engineers are not engaged in performing or offering to perform engineering services.

The Board is seeking to sanction Marohn for saying he was a "professional engineer" outside of practicing engineering or soliciting work as an engineer. *Marohn Dec.* ¶ *29.* In fact, Maohn identified himself as a professional engineer while engaged in public advocacy - he made them in the course of political speech. Moreover, the statements were themselves speech—specifically, fully protected political speech—and not conduct. This type of speech lies at the core of First Amendment protection:

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect

> the free discussion of governmental affairs.

*Mills v. State of Ala.*, 384 U.S. 214, 218, 86 S. Ct. 1434, 1437 (1966).

To understand just how strongly protected speech by licensed professionals is after *NIFLA* requires examining the pre- *NIFLA* state of First Amendment caselaw. In an influential concurrence in *Lowe v. S.E.C.*, 472 U.S. 181, 232 (1985), Justice Byron White urged a distinction between speech that a licensed professional utters as a professional, i.e., in the course of providing client-tailored advice, and the licensed professional's other speech, such as political advocacy. According to Justice White's approach, the former received little or no First Amendment protection, whereas the latter was as fully protected as a non-professional's speech:

> Where the personal nexus between the professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with those circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment's command that "Congress shall make no law … abridging the freedom of speech, or of the press."

*Id*.

Based on Justice White's concurrence, several circuit courts developed the "professional speech doctrine" holding that states could not regulate the speech of professionals, except when the professional is engaged in professional conduct. *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1310 (11th Cir. 2017) (*en banc*); *King v. Governor of New Jersey*, 767 F.3d 216, 232 (3d Cir. 2014) ("when a professional is speaking to the public at large or offering her personal opinion to a client, her speech remains entitled to the full scope of protection afforded by the First Amendment"); *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014) ("where a professional is engaged in a public dialogue, First Amendment protection is at its greatest"); *Moore–King v. County of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013) ("the relevant inquiry to determine whether to apply the professional speech doctrine is whether the speaker is

providing personalized advice in a private setting to a paying client or instead engages in public discussion and commentary").

In *NIFLA*, the Supreme Court rejected the "professional speech" doctrine and abrogated these circuit-court cases on the ground that they wrongly applied ***diminished*** protection to a professional's speech *within the professional-client relationship*. 138 S.Ct. at 2371-75. In other words, *NIFLA* held that a professional's speech was entitled to full First Amendment protection even when the professional was engaged in professional conduct and subjected any content-based restriction, such as those contained in Minn. Stat. §326.02 subd. 3(b), to strict scrutiny.

The Board's interest in regulating the titles that state licensees use is thus patently unconstitutional as applied to Marohn. First, the alleged existence of that interest is, strictly speaking, nonsensical here because the Board's contention is that Marohn used the title "professional engineer" *when he was not licensed or even working as an engineer*. More importantly, although the state has an important interest in regulating the use of professional titles in attempts to solicit business or in actually practicing a regulated profession, the state does not have an important interest—or even a legitimate interest—in controlling the use of titles in other contexts.

**B. The Board's Claim Based on Marohn "Lied" on his Reinstatement Application is Prohibited Under *United States v. Alvarez*, 567 U.S. 709, 716-22, 724 (2012).**

Even if the Board cannot regulate professional engineers identifying themselves as professional engineers when not engaged in providing or offering to provide engineering services, the Board nonetheless claims that Marohn engaged in professional misconduct because Marohn signed an online certification as part of Marohn's reinstatement application certifying that Marohn had not "represented" himself "as a professional engineer" when he was unlicensed. However, as set forth above, the Board's claim is not based on Marohn making such

representations while engaged in providing or offering to provide engineering services. Rather, the Board's claim is based on exclusively on Marohn identifying himself as a professional engineer while engaged exclusively in political advocacy. Similarly to the Board's efforts to regulate Marohn's use of the term "professional engineer," the Board get around this First Amendment problem by compelling engineers such as Marohn to make certifications regarding identifying themselves as professional engineers when not engaged in providing or offering to provide engineering services. For all of the reasons set forth in the First Amendment arguments above, the Board's claim that Marohn's certification was false is likewise unconstitutional because if is an attempt to regulate Marohn's speech when not engaged in providing or offering to provide engineering services.

Nonetheless, even if the Board attempts to argue that false speech, misrepresentations and lies are not covered by the First Amendment, the Supreme Court in 2021 held they are protected and, identically to the First Amendment analysis set forth above, the Board's claim in subject to strict scrutiny. The Board must provide a compelling state interest why persons filing a reinstatement application to renew a professional engineering license must state they did not identify themselves as professional engineers even when not engaged in providing or offering to provide engineering services.

In *United States v. Alvarez,* 567 U.S. 709 (2012), the Supreme Court held that false speech—even knowingly false speech—is generally protected and subject to strict scrutiny outside narrow exceptions such as defamation and commercial fraud. In *Alvarez*, the Supreme Court struck down the Stolen Valor Act, a law prohibiting falsely claiming to have won a military decoration. *Id*. at 716, 730. The person challenging the law, a candidate for public office, had been convicted of falsely claiming during a political campaign to have won the

Congressional Medal of Honor. *Id*. at 713-14. The defendant did not deny that he flat-out lied about having won the medal. *Id*. at 714, 715. Nonetheless, the Court reversed his conviction and struck down the law as a content-based speech restriction. *See id*. at 716-18, 722, 729-30. *Alvarez* refused to recognize a new exception to the application of strict scrutiny and affirmed that, outside of narrow exceptions such as fraud and defamation, a prohibition on speech because of its falsity is just another content-based speech restriction subject to strict scrutiny:

> Absent from those few categories where the law allows content-based regulation of speech is any general exception to the First Amendment for false statements. This comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee.

*Id*. at 718. The Eight Circuit, relying on *Alvarez,* held that strict scrutiny applies to prohibitions on false *political* speech. *281 Care Comm*., 766 F.3d at 784.

As set forth above, before *NIFLA,* circuit courts had held that professional licensing boards may only regulate a professional's speech when the professional is engaged in offering to provide or providing the professional services the licensing board seeks to regulate. *King v. Governor of New Jersey*, 767 F.3d 216, 232 (3d Cir. 2014); *Moore–King v. County of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013); *Wollschlaeger v. Governor, Florida*, 848 F.3d 1293 (11th Cir. 2017).

If the representation on the reinstatement application had asked whether Marohn had described himself as a "professional engineer" while engaging or offering to engage in providing engineering services while unlicensed (as Marohn quite reasonably interpreted it), the Board may have an argument that it has an important or compelling state interest in sanctioning Marohn for that false statement. However, if the Board has no interest in prohibiting individuals from using the term "professional engineer" to describe themselves when not engaging or offering to engage

in providing engineering services while unlicensed, the Board likewise does not have an interest in compelling Marohn to represent in a reinstatement application that he did not describe himself as a professional engineer in circumstances outside engaging or offering to engage in providing engineering services while unlicensed.

As explained above, Marohn signed the representation because he believed – correctly – that the Board could only regulate his speech when Marohn was engaged in providing or offering to provide engineering services while unlicensed. As a result, the Board's efforts to discipline Marohn based on his representation fails under *NIFLA* and *Alvarez.*

**C. The Board Will Presumably Argue Marohn's Speech Was "Commercial" and Therefore Not Entitled to First Amendment Protection.**

The Supreme Court has made an exception to strict scrutiny for content-based restrictions on commercial speech, but the exception is narrow: for purposes of the exception, what "defines commercial speech"—and thus distinguishes it from fully protected speech—is speech that "*proposes* a commercial transaction." *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482 (1989) (citing *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976)). Presumably, the Board will argue that Marohn's speech here was commercial in order to avoid subjecting its content based claims to strict scrutiny analysis.

As explained above, the commercial speech doctrine applies to only "'speech proposing a commercial transaction.'" *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562 (1980) (quoting *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455-56 (1978)). The Supreme Court might not have limited the doctrine to "concrete offers" that constitute an offer in the law-school offer-and-acceptance sense, but the Court has limited the doctrine to speech advertising or marketing a good or service. *E.g.*, *Fox*, 492 U.S. at 482; *Cent.*

*Hudson*, 447 U.S. at 562. Indeed, the term "commercial speech" is something of a misnomer: the doctrine is really an advertising-speech or marketing-speech doctrine. *See, e.g.*, *Fox*, 492 U.S. at 482; *Cent. Hudson*, 447 U.S. at 562; *Seabolt v. Texas Bd. of Chiropractic Examiners*, 30 F. Supp. 2d 965, 967 (S.D. Tex. 1998) (characterizing *Central Hudson* as "announc[ing] a four-part framework for analyzing *advertising restrictions* under the First Amendment" (emphasis added)).

Marohn suspects the Board will rely on *Friedman v. Rogers*, 440 U.S. 1 (1979) for the proposition that a state may regulate the use of a tradename. However, *Friedman* involved the use of a tradename to promote an optometry practice (and thus a business), not the use of a professional title in political speech. 440 U.S. at 3-6, 8, 11, n.10. Indeed, the *Friedman* Court itself used the proposes-a-business-transaction test to determine that use of a tradename was commercial speech and thus entitled to reduced First Amendment protection: "the trade name is used as part of a proposal of a commercial transaction." *Id*. at 11; *see also id*. at 11 n.10 (distinguishing an advertisement that "'did more than simply propose a commercial transaction'" (quoting *Bigelow v. Virginia*, 421 U.S. 809, 822 (1975)), from "the mere solicitation of patronage implicit in a trade name"). Any reliance by the Board on *Friedman* without acknowledgment of the test that *Friedman* actually used is, to put things mildly, less than entirely forthright.

Instead of *Friedman*, this Court should rely on *Serafine*. In *Serafine*, the plaintiff had been a candidate for office who "described herself as a 'psychologist' on her campaign website." 810 F.3d at 357. The Texas State Board of Examiners of Psychologists ordered to her to stop describing herself as a "psychologist" and to stop "offering or providing psychological services" because she was not a licensed psychologist. *Id*. The plaintiff sued in federal court to challenge

the provisions that she was ordered to comply with. *Id*. The Fifth Circuit held that the prohibition on using the title "psychologist" without being licensed was unconstitutional as applied to the plaintiff because she used it in political speech, not commercial speech. *Id*. at 360-62. Minnesota's restriction on the use of the title "professional engineer" is, for the same reason, unconstitutional as applied to Marohn.

Outside of advertising or marketing, the commercial-speech doctrine does not control—*Alvarez* controls, allowing people to tell big whopping lies about their credentials. And because the false speech in *Alvarez* was protected, Marohn's speech is protected a fortiori. Unlike the defendant in *Alvarez*, Marohn did not knowingly misrepresent his credentials, but was just honestly mistaken. Marohn had been licensed as a professional engineer and did not realize that his license had lapsed because of a failure to renew it. This honest mistake was a far cry from lying about having won the Medal of Honor in *Alvarez*, and even that lie was protected.

The Board does not even assert that Marohn characterized himself as a "professional engineer" in an attempt to market his services as a professional engineer, or, indeed, to market *anything*. The Board thus fails to present even a colorable argument that Marohn's speech was commercial.

Minnesota Statutes §326.02, subd. 3(b), the provision that Marohn is accused of violating, is a content-based speech restriction because, on its face, it limits what a person is allowed to say; indeed, the paragraph explicitly limits what words a person may use to describe themselves:

> (b) *No person other than one licensed under sections 326.02 to 326.15 as a professional engineer may*:
>
> (1) *use the term "professional engineer"*;
>
> (2) *use any other abbreviation or term, including the initials "P.E." or "PE"* by signature, verbal claim, sign, advertisement, letterhead, card, or similar means

> *that would lead the public to believe that the person was a professional engineer*; or
>
> (3) use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer.

Minn. Stat. §326.02, subd. 3(b) (emphasis added). Courts have already recognized that restrictions on the use of professional titles are content-based speech restrictions. *See, e.g.*, *Serafine*, 810 F.3d at 357-60 (Texas's prohibition on the unlicensed use of the title "psychologist" was, as applied to political speech, subject to strict scrutiny); *Järlström*, 366 F.Supp.3d at 1217-18 (provisions of Oregon law restricting the use of the titles "engineer," "professional engineer," and "registered professional engineer" were content-based speech restrictions under *Reed*, 576 U.S. at 163). In fact, the engineering title laws that were stuck down as unconstitutionally overbroad in *Järlström* were virtually identical to Minn. Stat. §326.02, subd. 3(b). 366 F.Supp.3d at 1215.

When Marohn made the statements characterizing himself as a professional engineer, he did so outside of any effort to market or perform his engineering services—indeed, he made them in the course of political advocacy. The statements were thus fully protected. *See, e.g.*, *Serafine*, 810 F.3d at 360 (use of a professional title in political speech is fully protected by the First Amendment); *281 Care Comm.*, 766 F.3d at 784 (false political speech is fully protected). As applied to Marohn's speech, therefore, §326.02, subd. 3(b) is subject to strict scrutiny and is unconstitutional.

### D. Minn. Stat. §326.02, Subd. 3(b)'s Prohibition on Using the Term "Professional Engineer" Either (i) Fails Strict Scrutiny for Lack of a Compelling State Interest if Applied to Political Speech, or (ii) Is Facially Overbroad Because it Would Prohibit Persons From Referring to Themselves as a Professional Engineer in Social Settings.

The Board is on the horns of a dilemma in this case. On the one hand, the Board is seeking to apply Minn. Stat. §326.02, subd. 3(b) to political speech for which the Board cannot

assert a compelling state interest. On the other hand, if the Board asserts that Minn. Stat. §326.02, subd. 3(b) applies in all circumstances – which by its terms it plainly does – the provision is facially overbroad. The only purpose to the prohibition the Board could identify is to prevent deceiving the public about one's qualifications. But that can only be a compelling purpose where the title is used to solicit business as an engineer. Outside of commercial speech, a person may, under *Alvarez*, lie through one's teeth about one's qualifications. Furthermore, the restriction is not narrowly tailored because it is not limited to attempts to solicit business as an engineer.

In fact, Minn. Stat. §326.02, subd. 3(b) is facially overbroad:

> In the First Amendment context, however, we have recognized "a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States* v. *Stevens*, 559 U. S. 460, 473 (2010) (internal quotation marks omitted).

*Americans for Prosperity Found. Bonta Thomas More Law Ctr. v. Bonta*, No. 19-251, 2021 WL 2690268, at *11 (U.S. July 1, 2021). "An ordinance prohibiting a broad range of protected expression may be facially challenged as overbroad." *Ways v. City of Lincoln, Neb.*, 274 F.3d 514, 518 (8th Cir. 2001). One Court has applied the overbreadth doctrine to a regulation prohibiting the use of the term "engineer." *Järlström*, 366 F. Supp. 3d at 1222.

Minn. Stat. §326.02, subd. 3(b) is unconstitutionally overbroad. It prohibits anyone in Minnesota from describing themselves as a professional engineer at all times and in all places – including social settings and political speech unconnected to engaging the practice of engineering. In fact, here, the Board is attempting to prohibit a person from describing himself as a professional engineer when engaged in political advocacy. As a result, Minn. Stat. §326.02, subd. 3(b) is facially overbroad and "patently unconstitutional."

## CONCLUSION

Marohn's Motion for Summary Judgment should be granted.

DATED: January 21, 2022

MOHRMAN, KAARDAL & ERICKSON, P.A.

*s/William F. Mohrman*

William F. Mohrman, 168816
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
(612) 341-1074
mohrman@mklaw.com

ATTORNEYS FOR RESPONDENT

MINNESOTA
OFFICE OF ADMINISTRATIVE HEARINGS

PO Box 64620
Saint Paul, MN 55164-0620
mn.gov/oah
PH (651) 361-7900

May 31, 2022

**VIA EFILING ONLY**
Doreen B. Johnson
Executive Director
Minnesota Board of Architecture,
Engineering, Land Surveying, Landscape
Architecture, Geoscience and Interior
Design
85 East Seventh Place Ste 160
Saint Paul, MN 55101
doreen.johnson@state.mn.us

**Re:** ***In the Matter of the Professional Engineer License of Charles Marohn***
**OAH 60-1006-37594**

Dear Executive Director Johnson:

Enclosed and served upon you is the Administrative Law Judge's **RECOMMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY DISPOSITION** in the above-entitled matter. The official record, along with a copy of the recording of the oral argument, is also enclosed. The Office of Administrative Hearings' file in this matter is now closed.

If you have any questions, please contact me at (651) 361-7874, michelle.severson@state.mn.us, or via facsimile at (651) 539-0310.

Sincerely,

Michelle Severson

MICHELLE SEVERSON
Legal Assistant

Enclosure

cc: Docket Coordinator
Allen C. Barr
James R. Magnuson

Complaint Exhibit 13

OAH 60-1006-37594

STATE OF MINNESOTA
OFFICE OF ADMINISTRATIVE HEARINGS

FOR THE BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE AND INTERIOR DESIGN

In the Matter of the Professional Engineer License of Charles Marohn

**RECOMMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY DISPOSITION**

This matter is pending before Administrative Law Judge James E. LaFave.

Allan Cook Barr, Asistant Attorney General, represents the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design (Board) Complaint Committee (Complaint Committee). William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., represents Charles Marohn (Respondent).

On January 21, 2022, each party filed a Motion for Summary Disposition (Motions). The parties responded to the Motions on February 4, 2022, and both parties submitted reply memoranda on February 25, 2022.

A hearing on the Motions was held on March 2, 2022, via Microsoft Teams, and the record closed that day at the conclusion of the hearing.

Based on the submissions of counsel and the hearing record,

**IT IS HEREBY RECOMMENDED THAT:**

1. Respondent's Motion for Summary Disposition be **DENIED**.

2. The Complaint Committee's Motion for Summary disposition be **GRANTED**.

Dated: May 31, 2022

JAMES E. LAFAVE
Administrative Law Judge

Complaint Exhibit 13

## NOTICE

This Report is a recommendation, **not** a final decision. The Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design (Board) will make the final decision after a review of the record. Under Minn. Stat. § 14.61 (2020), the Board shall not make a final decision until this Report has been made available to the parties for at least ten calendar days. The parties may file exceptions to this Report and the Board must consider the exceptions in making a final decision. Parties should contact the Executive Director of the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design, Suite 160, 85 East Seventh Place, St. Paul, MN 55101, telephone (651) 296-2388, to learn the procedure for filing exceptions or presenting argument.

The record closes upon the filing of exceptions to the Report and the presentation of argument to the Board, or upon the expiration of the deadline for doing so. The Board must notify the parties and Administrative Law Judge of the date the record closes. If the Board fails to issue a final decision within 90 days of the close of the record, this Report will constitute the final agency decision under Minn. Stat. § 14.62, subd. 2a (2020). In order to comply with this statute, the Board must then return the record to the Administrative Law Judge within ten working days to allow the Judge to determine the discipline to be imposed.

Under Minn. Stat. § 14.62, subd. 1 (2020), the Board is required to serve its final decision upon each party and the Administrative Law Judge by first class mail or as otherwise provided by law.

## MEMORANDUM

The facts in this case are largely undisputed. The Board licensed Respondent as a professional engineer (PE). In 2012, Respondent ceased practicing as an engineer and dedicated himself to assisting the public to better understand public infrastructure projects in their communities via his nonprofit. This advocacy is related to engineering but does not involve the practice of engineering. A few years later, he allowed his license to expire. While unlicensed, Respondent called himself a "professional engineer" and "PE" on the internet and while giving book talks related to his nonprofit work. In 2020, in an application to renew his engineering license, Respondent affirmed to the Board that he had not represented himself as a professional engineer without proper licensure.

The Board maintains that, by these actions, Respondent violated Minnesota's engineer licensure statutes and regulations. Respondent argues that these actions are protected under the First Amendment to the United States Constitution and Article I, section 3, of the Minnesota Constitution.

## I. The Factual Background

### A. Respondent's Licensure Status

In 2000, the Board licensed Respondent as a professional engineer.[1] Professional engineering licenses must be renewed every two years, and Respondent duly renewed his license for each two-year period through 2016 to 2018.[2]

But, on July 1, 2018, Respondent's license expired because he had failed to renew it.[3] Respondent acknowledges that he forgot to renew his license for the period beginning in 2018, in part because he did not receive the Board's renewal notice. It is likely Respondent did not receive the renewal notice because he failed to update his address with the Board as required by rule.[4]

Respondent learned his license expired on June 9, 2020.[5] He then submitted material both to reinstate his expired license and to renew his license for the upcoming 2020 to 2022 licensure period.[6]

On June 17, 2020, the Board received Respondent's renewal applications for both the 2018 to 2020, and 2020 to 2022 periods.[7] On June 23, 2020, the Board renewed Respondent's license.[8]

It is undisputed that Respondent was not licensed as a professional engineer from July 1, 2018, through June 22, 2020.

### B. Respondent's Work History

Respondent worked as a professional engineer at his own firm from 2000 to 2012.[9] In 2009, while Respondent was still practicing as a professional engineer, he founded the nonprofit Strong Towns.

In Respondent's words, Strong Towns "advocates an approach to urbanism that avoids the construction of unnecessary infrastructure and hence the costs of building and maintaining unnecessary infrastructure."[10] Moreover, Strong Towns "provides education and information to the public, both in and out of Minnesota, in an effort to assist the public in being better advocates for appropriate infrastructure projects in their localities," and "maintains a website that provides news and commentary related to

---

[1] Declaration (Decl.) of Dillon Lang ¶ 2.
[2] Decl. of Charles Marohn ¶ 16.
[3] Lang Decl. ¶ 5.
[4] Minn. R. 1800.0120, subp. 1(A) (2021) ("Each … licensee … must notify the board in writing of any change of address within30 days of the change.").
[5] Marohn Decl. ¶ 18.
[6] *Id.* at ¶ 20.
[7] Lang Decl. ¶ 2.
[8] *Id.* The renewal meant that Respondent's license became reactivated before the July 1, 2020, biannual changeover date, but the renewal was not retroactive to the entire 2018 to 2020 period.
[9] Marohn Decl. ¶¶ 6-7.
[10] *Id.* at ¶¶ 8-10.

urbanism, urban planning, land-use planning, and infrastructure projects."[11] Respondent and Strong Towns are influential and respected contributors in the field of urban planning.[12]

In 2012, Respondent closed his professional engineer firm and stopped practicing as an engineer; he has since focused solely on his advocacy work.[13] He has not "signed any engineering documents, prepared any plans or specifications requiring licensure, overseen anyone who practices engineering, worked on any engineering projects, or undertaken any professional action that created any threat to the health, safety, and welfare of the public" since 2012.[14] Further, Respondent affirms that, since 2012, he has not "applied for any work as an engineer nor used [his] credentials to seek work as a professional engineer," and that the work he engages in "does not require any type of licensure including a professional engineering license."[15]

### C. Respondent's Representations During His Unlicensed Period

It is undisputed that, during the period in which he was not licensed, Respondent used the terms "professional engineer" and "PE" to describe his credentials. During this period:

- Respondent's LinkedIn profile stated that Respondent was a "Professional Engineer (PE) licensed in the State of Minnesota."[16]

- In separate places, the Strong Towns website described Respondent as a "Professional Engineer (PE) licensed in the State of Minnesota" and as a "professional engineer."[17]

- Respondent's 2019 book *Strong Towns*, published during the period when he was unlicensed, states that Respondent is a "certified Professional Engineer (PE)" in the dust jacket author profile, and states that Respondent is a "professional engineer licensed in the State of Minnesota" in its "about the author" section.[18]

- In spring 2020, Respondent gave at least three presentations in which he stated that he was a "PE."[19]

- When Respondent renewed his license in 2020, on both submissions, he checked "Yes" on the "Affidavit" portion to the statement: "I have not represented myself as . . . [a] professional engineer . . . without proper licensure or certification, either

---

[11] Marohn Decl. ¶¶ 8-10.
[12] *See Id.* at. ¶ 13.
[13] *Id.* at ¶¶ 7, 14.
[14] *Id.* at ¶ 14.
[15] *Id.*
[16] Lang Decl. Ex. 1A at 1.
[17] *Id.* at Ex. 1B at 1, 7.
[18] *Id.* at Ex. 1C at 2-3.
[19] *Id.* at Exs. 2B, 2C, 2E.

verbally or on any printed matter, in the State of Minnesota, nor will I do so until such time as my license or certificate has been issued by the Minnesota Board of . . . Engineering."[20]

### D. The Board's Investigation and this Contested Case Proceeding

On March 5, 2020, the Board received a complaint from an engineer in South Dakota alleging that Respondent had represented himself as a professional engineer without holding the requisite licensure.[21] On July 24, 2020, the Board sent a letter to Respondent informing him of the complaint and the Board's investigation via a duly impaneled Complaint Committee.[22] Although the South Dakota engineer's complaint was filed before Respondent sent his renewal papers to the Board, Respondent did not learn of the complaint until after filing those papers.[23]

Respondent replied to the Board's letter, stating that he did not engage in any professional engineer work during the period in which he was unlicensed.[24] In his letter, Respondent stated: "When I represented myself as being licensed in the state of Minnesota, I believed I was."[25]

On November 3, 2020, the Complaint Committee sent Respondent a letter and proposed stipulation and order.[26] The letter informed Respondent that the Complaint Committee had determined him to be in violation of Minn. Stat. § 326.02, subds. 1 and 3 (2020), and Minn. R. 1805.0020, subps. 1(B), 2, and 4(C) (2021), and that the Complaint Committee would recommend that the Board impose disciplinary action.[27] The stipulated order would have required Respondent to acknowledge violating those measures and making a false statement on his renewal papers, and would have imposed a $1,500 civil penalty, in addition to a requirement to take two hours of ethics classes.[28]

On November 17, 2020, Respondent replied to the Complaint Committee's letter and proposed stipulation.[29] Between that date and April 20, 2021, Respondent and the Board exchanged several proposals to resolve this matter, but the parties could not agree on stipulated language,[30] and the Board initiated this contested case proceeding.[31]

---

[20] *Id.* at Exs. 3A, 3B.
[21] Marohn Decl. Ex. 2.
[22] *Id.*
[23] *Id.* at ¶¶ 22-23.
[24] *Id.* at ¶¶ 27-28, Ex. 3.
[25] *Id.* at Ex. 3.
[26] *Id.* at ¶ 29, Ex. 4.
[27] *Id.* at Ex. 4.
[28] *Id.*
[29] *Id.* at Ex. 5.
[30] *See Id.* at Exs. 5-11.
[31] *See* Notice and Order for Prehearing Conference (June 3, 2021).

## II. Summary Disposition Standard

Summary disposition is the administrative law equivalent of summary judgment.[32] A motion for summary disposition shall be granted when there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law.[33] The Office of Administrative Hearings follows the summary judgment standards developed in the state district courts when considering motions for summary disposition in contested case matters.

The function of the Administrative Law Judge on a motion for summary disposition, like a trial court's function on a motion for summary judgment, is not to decide issues of fact, but to determine whether genuine, material factual issues exist.[34] The Administrative Law Judge does not weigh the evidence; instead, the judge views the facts and evidence in a light most favorable to the non-moving party.[35]

The moving party has the initial burden to show the absence of any genuine issue regarding any material fact.[36] A fact is material if its resolution will affect the outcome of the case.[37] If the moving party meets the initial burden, the burden shifts to the non-moving party to prove the existence of any genuine issue of any material fact.[38] A genuine issue is not a "sham or frivolous" one, and it cannot rely on mere allegations or denials.[39] Instead, a genuine issue requires presentation of specific facts demonstrating a need for resolution in a hearing or trial.[40]

Summary disposition cannot be used as a substitute for a hearing or trial on the facts of a case.[41] Thus, summary disposition is only proper when no fact issues need to be resolved.[42]

## III. Legal Analysis

### A. The Use of Terms "Professional Engineer" and "PE"

The Complaint Committee alleges that Respondent violated Minn. Stat. § 326.02, subds. 1 and 3, by representing himself as a professional engineer during the time his license was expired.[43]

---

[32] *Pietsch v. Minnesota Bd. of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn. 2004); *see also* Minn. R. 1400.5500(K) (2021).
[33] *Sauter v. Sauter*, 70 N.W.2d 351, 353 (Minn. 1955); *Louwagie v. Witco Chemical Corp*., 378 N.W.2d 63, 66 (Minn. Ct. App. 1985).
[34] *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997).
[35] *Ostendorf v. Kenyon*, 347 N.W.2d 834, 836 (Minn. Ct. App. 1984).
[36] *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988).
[37] *O'Malley v. Ulland Bros*., 549 N.W.2d 889, 892 (Minn. 1996) (citing *Zappa v. Fahey*, 245 N.W.2d 258, 259-260 (Minn. 1976)).
[38] *Thiele,* 425 N.W.2d at 583.
[39] *Highland Chateau, Inc. v. Minnesota Dep't of Pub. Welfare*, 356 N.W.2d 804, 808 (Minn. Ct. App. 1984) (citing *A & J Builders, Inc. v. Harms*, 179 N.W.2d 98, 103 (Minn. 1970)).
[40] *See* Minn. R. Civ. P. 56.05.
[41] *Sauter*, 70 N.W.2d at 353.
[42] *See id*.

Minn. Stat. § 326.02, subd. 1 provides:

> It shall be unlawful for any person to practice, or to offer to practice, in this state, . . . professional engineering, . . . or to solicit or to contract to furnish work within the terms of sections 326.02 to 326.15, or to use in connection with a person's name, ***or to otherwise assume, use or advertise any title description tending to convey the impression that the person is [a] . . . professional engineer*** (hereinafter called engineer) . . . unless such person is qualified by licensure or certification under sections 325.02 to 326.15.[44]

Minn. Stat. § 326.02, subd. 3(a) states:

> Any person shall be deemed to be practicing professional engineering within the meaning of sections 326.02 to 326.15 ***who holds out as being able to perform*** or who does perform any technical professional service, such as planning, design or observation of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private structures, buildings, utilities, machines, equipment, processes, works, or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of mathematics and the physical and applied engineering sciences, acquired by education or training, and by experience.[45]

Under Minn. Stat. § 326.02, subd. 3(b), no one other than a licensed professional engineer may "use the term 'professional engineer'," use any abbreviation of "professional engineer" in a way "that would lead the public to believe that the person was a professional engineer," or "use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer."

In social media posts, in a book, and in multiple public presentations Respondent stated he was a professional engineer. It is undisputed that Respondent repeatedly held himself out as a professional engineer during the time his license had lapsed in violation of the statue.

### B. False Information on the License Renewal

Respondent affirmed on his reapplication papers that he had "not represented [him]self as . . . [a] professional engineer . . . without proper licensure or certification, either verbally or on any printed matter, in the State of Minnesota."[46] As detailed above,

---

[43] Notice and Order for Prehearing Conference (Notice) (Jun. 3, 2021).
[44] (Emphasis added.)
[45] *Id.*
[46] Lang Decl. Exs. 3A, 3B.

Respondent, on numerous occasions, represented himself to be a professional engineer.

The Complaint Committee asserts that, in so doing, Respondent violated three state regulations:

1. Minn. R. 1805.0020, subp. 1(B), "[a] licensee or certificate holder shall be objective and truthful in all professional documents, including but not limited to plans, reports, statements, or testimony."

2. Minn. R. 1805.0020, subp. 2, "[a] licensee or certificate holder shall not make a false statement or fail to disclose a material fact requested in connection with an application for certification, licensure, or renewal in this state or any other state."

3. Minn. R. 1805.0020, subp. 4(C), a licensee may not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**C. Respondent's Arguments**

Respondent assets the Complaint Committee is mistaken in its reading of the cited statues and rules. Respondent reasons that because he was engaged in public advocacy and was not providing professional engineering services, he did not improperly hold himself out as a professional engineer. Moreover, during the period Respondent's license was expired, he was unaware of that fact, so when he represented himself as a professional engineer, he believed that to be true. For all these reasons, Respondent feels he did not provide false information on his license renewal. Respondent further moves for summary disposition in his favor on the grounds that his statements are protected by the First Amendment. These arguments will be addressed below.

**i. Respondent violated the statutes and rules**

Respondent's argument, that because he was engaged in public advocacy and was not providing actual professional engineering services, he did not improperly hold himself out as a professional engineer, ignores the plain language of the law. Minn. Stat. § 326.02, subd. 1, prohibits the use of a description that would "convey" the impression a person is a professional engineer. Minn. Stat. § 326.02, subd. 3(a), defines a professional engineer, not only as one who performs engineering services but also one "who holds out being able to perform" engineering services.

It does not matter that Respondent was engaged in public advocacy or that he had stopped providing engineering services in 2012. By stating he was a professional engineer and using the initials "PE", Respondent was holding himself out as one who could perform engineering services. And therefore, because his license had expired and because he was not a licensed engineer, Respondent violated the statue.

A similar analysis applies to the Complaint Committee's claim that Respondent provided false information on his license renewal. Respondent states he answered



Complaint Exhibit 13

truthfully in the license renewal, because he interpreted the certification to mean he had not represented himself as a professional engineer in connection with providing or offering to provide professional engineering services in Minnesota as opposed to engaging in public advocacy. Respondent's interpretation is unreasonable under the plain language of the renewal.

There is a difference between providing or offering to provide professional engineering services and holding oneself out as a professional engineer. There is no dispute that Respondent, on multiple occasions while he was unlicensed, claimed he was a professional engineer. The facts conclusively prove, contrary to his representations to the Board, that Respondent held himself out as professional engineer without proper licensure in the State of Minnesota in violation of the rules.

### ii. The Constitutional Claims

Respondent moves to dismiss the Complaint Committee's claims on the grounds they violate his rights under the First Amendment to the Unites States Constitution and Article I, § 3 of the Minnesota Constitution.[47] Specifically, Respondent argues Minn. Stat. § 326.02, subd. 3(b), is facially overbroad and patently unconstitutional.[48]

Respondent seeks to have statues declared unconstitutional. Administrative law judges, unlike Article VI judges in the state court system, have no power to declare a statute unconstitutional. These are powers accorded to judges in the judicial branch alone.[49] The Administrative Law Judge, therefore declines to address Respondent's constitutional claims.[50]

## IV. Conclusion

Based on a careful review of the record, the Administrative Law Judge concludes the Complaint Committee established it is entitled to summary disposition as a matter of law because Respondent violated Minn. Stat. § 326.02, subd. 1 and 3 by representing himself as a professional engineer while his license was expired. And that Respondent violated:

- Minn. R. 1805.0200, subp. 1(B), by failing to be truthful in all professional documents.

- Minn. R. 1805.0200, subp. 2, by making a false statement on an application for renewal; and

[47] Respondent Charles Marohn's Motion for Summary Judgement at 3 (Jan. 21, 2022).
[48] *Id.* at 23.
[49] *See, e.g., In re Rochester Ambulance Service,* 500 N.W.2d 495, 499-500 (Minn. Ct. App. 1993); *Neeland v. Clearwater Mem'l Hosp.,* 257 N.W.2d 366, 368 (Minn. 1977).
[50] Respondent will have the opportunity to raise the constitutional issues on an appeal from an administrative tribunal at the first opportunity in a forum possessing subject matter jurisdiction. (*See Neeland,* 257 N.W.2d at 68).

- Minn. R. 1805.0200, subp. 4(C), by engaging in conduct involving misrepresentation.

Consequently, the Administrative Law Judge respectfully recommends that Respondent's Motion for Summary Disposition be denied, and the Board's Motion for Summary Disposition be granted.

**J. E. L.**

MINNESOTA BOARD OF
ARCHITECTURE ▪ ENGINEERING ▪ LAND SURVEYING
LANDSCAPE ARCHITECTURE ▪ GEOSCIENCE ▪ INTERIOR DESIGN

July 12, 2022

William F. Mohrman
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, MN. 55402

Allen Barr
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101

**Re: In the Matter of the Professional Engineer License of Charles Marohn; OAH 60-1006-37594**

Dear Parties:

I enclose and serve upon you the Board's Order Granting Summary Disposition in the above referenced matter, which was signed by the Board on July 12, 2022.

I note that judicial review is available to Mr. Marohn pursuant to Minn. Stat. §§ 14.63-.69 (2020).

If you have any questions, please contact me at 651-757-1523.

Sincerely,

Kay Weiss
Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design

Enclosure

File No. 2020-0043 OAH Docket No. 60-1006-37594

STATE OF MINNESOTA
BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE AND INTERIOR DESIGN

In the Matter of the Professional Engineer License of Charles Marohn

**ORDER GRANTING SUMMARY DISPOSITION**

On May 31, 2022, Administrative Law Judge James LaFave recommended granting the Board's Complaint Committee's motion for summary disposition, and thereby imposing discipline on Respondent Charles Marohn. On June 14, the Board notified the parties of their right to file argument and exceptions with the Board pursuant to Minn. Stat. § 14.61, subd. 1 (2020). On June 27, 2022, the parties both filed arguments and exceptions with the Board. The record closed as of June 27, 2022.[1]

Based on all the facts, records, and proceedings herein, the Board makes the following:

## FINDINGS OF FACT

1. Based on its independent review of the record, the Board adopts as its own factual findings the "Factual Background" contained in the ALJ's memorandum, with the following exceptions.

2. The last sentence of the last paragraph on page 5 of the memorandum is amended to strike the two instances of the work "Board" and replace them with "Complaint Committee."

[1] The Board notes that it has received numerous letters and emails from the public relating to this matter. These correspondences were not part of the record before the ALJ. The Board therefore has not considered these correspondences.



Complaint Exhibit 14

3. In the first sentence immediately under section heading C on page 4, the statement "it is undisputed that," is stricken as Responded disputes that some of these representations occurred while Marohn is unlicensed.

4. Any conclusions of law from the Administrative Law Judge that should properly be termed findings of fact are hereby adopted as such.

## CONCLUSIONS OF LAW

1. The Board adopts in its entirety and incorporates as its own the ALJ's conclusions of law contained in sections II, III, and IV of the ALJ's memorandum, with the following exceptions.

2. In the last sentence of the memorandum is amended to strike the word "Board's" and replace it with "Complaint Committee's"

3. Any conclusion of law herein, which should more properly be deemed a finding of fact, is hereby adopted as such.

4. This order is in the public interest.

## ORDER

IT IS HEREBY ORDERED that the Committee's motion for summary disposition is granted.

IT IS FURTHER ORDERED that Marohn is censured and reprimanded.

IT IS FURTHER ORDERED that Marohn shall pay a $1,500 civil penalty. Pursuant to Minn. Stat. § 16D.17(1) (2018), Marohn is notified that this shall become a final civil penalty within 30 days. Pursuant to Minn. Stat. § 16D.17(2), Marohn is further notified that when the civil penalty order becomes final, the Board may file and enforce the civil penalty in the same manner as a district court judgment against him without further notice or additional proceedings.

MINNESOTA BOARD OF ARCHITECTURE,
ENGINEERING, LAND SURVEYING,
LANDSCAPE ARCHITECTURE, GEOSCIENCE
AND INTERIOR DESIGN

Dated: July 12, 2022

MELISA RODRIGUEZ, PE
Acting Chairperson

Minnesota Board of Architecture, Engineering,
Land Surveying, Landscape Architecture,
Geoscience and Interior Design

## MEMORANDUM

Summary disposition is the administrative law equivalent of summary judgment. *Pietsch v. Minnesota Bd. of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn. 2004); *see also* Minn. R. 1400.5500(K) (2021). A motion for summary disposition shall be granted when there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Sauter v. Sauter*, 70 N.W.2d 351, 353 (Minn. 1955); *Louwagie v. Witco Chemical Corp.*, 378 N.W.2d 63, 66 (Minn. Ct. App. 1985). Summary disposition is only proper when no fact issues need to be resolved. *Id.*

Here, the ALJ found that Marohn held himself out as a professional engineer while he was not licensed in violation of Minn. Stat. § 326.02, subds. 1 and 3 and then falsely represented on his reapplication for licensure that he had not done so in violation of Minn. R. 1805.0020, subps. 1(B), 2, and 4(C). The ALJ also addressed each of Respondent's arguments and explained why they were not persuasive. The Board finds the ALJ's opinion well-reasoned and persuasive.

### I. RESPONDENT HELD HIMSELF OUT AS A PROFESSIONAL ENGINEER WHEN HE WAS NOT LICENSED.

No one other than a licensed professional engineer may "use the term 'professional engineer'," use any abbreviation of "professional engineer" in a way "that would lead the public to believe that the person was a professional engineer," or "use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer." Minn. Stat. § 326.02, subd. 3(b). As the ALJ correctly found, it is undisputed that Marohn stated he was a professional engineer and held himself out as a professional engineer repeatedly while his licensed was expired. This is a violation of the statute and warrants disciplinary action.

Marohn argues that because he was engaged in public advocacy, and was not actively providing technical services, he did not violate the statute. The distinction Marohn seeks to draw is not found in the statute. As the ALJ correctly concluded, Marohn's argument ignores the plain language of the statute. The statute applies to anyone who holds themselves out as being able to perform engineering services in addition to those who perform those services. Minn. Stat. § 326.02, subd. 3(b).

### II. RESPONDENT FALSELY REPRESENTED TO THE BOARD, ON HIS RENEWAL APPLICATION, THAT HE HAD NOT HELD HIMSELF OUT AS A PROFESSIONAL ENGINEER WHILE HE WAS NOT LICENSED.

An applicant for licensure may not provide false information or misrepresentations to the Board in their application. Several Board rules compel this conclusion. Minn. R. 1805.0200, subp. 1(B) ("[a] licensee or certificate holder shall be objective and truthful in all professional documents, including but not limited to plans, reports, statements, or testimony."); Minn. R. 1805.0200, subp. 2 ("[a] licensee or certificate holder shall not make a false statement or fail to disclose a material fact requested in connection with an application for certification, licensure, or renewal in this state or any other state."); Minn. R. 1805.0200, subp. 4(C) (a licensee may not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.").

Marohn's 2020 renewal application contains an affidavit portion. In that portion one of the statements is "I have not represented myself as [a] professional engineer…without proper licensure or certification, either verbally or on any printed matter…." Marohn affirmed that statement by checking the "yes" box. The Committee argues that Marohn violated Minn. R. 1805.0200, subps. 1(B), 2, and 4(C), because that affirmation was false. Marohn reiterates the arguments made above; namely, that the Rules do not apply because Marohn was not providing or offering to provide engineering services when he made the false statements representing himself as a professional engineer.

The ALJ concluded that Marohn's argument in this regard fails for the same reason as the previous argument. The ALJ also concluded that Marohn held himself out as a professional engineer while not licensed and his affirmation on his license application was therefore false. The Board agrees with the ALJ in these regards and in his conclusion that Marohn's interpretation is unreasonable under the plain language of the statute. Marohn therefore violated Minn. R. 1805.0200, subps. 1(B), 2, and 4(C), when he misrepresented to the Board on his renewal application that he had not held himself out as a professional engineer while not licensed.

## III. Marohn's Constitutional Claims

The ALJ correctly concluded that constitutional challenges to statutes are not within the purview of the ALJ. The Board, like the ALJ, does not have the authority to declare statutes unconstitutional. *In re Rochester Ambulance Service,* 500 N.W.2d 495, 499-500 (Minn. Ct. App. 1993); *Neeland v. Clearwater Mem'l Hosp.,* 257 N.W.2d 366, 368 (Minn. 1977).

Marohn, in his arguments and exceptions letter to the Board, argues that the ALJ misconstrued his argument. Marohn now argues that he is only challenging the constitutionality of the statute "as applied" to this case. This is not consistent with the argument presented to the ALJ. Marohn's motion for summary disposition specifically alleges that section 326.02, subd. 3(b) fails strict scrutiny or is facially overbroad. Either argument asks the ALJ, and now this Board to declare the statute unconstitutional. As noted above, that is beyond the purview of this Board.

## IV. The Appropriate Discipline in This Case is a Censure and Reprimand and a $1,500 Civil Penalty.

The Board has the authority to impose a civil penalty up to $10,000 per violation. Minn. Stat. § 326.111, subd. 6. The factors the Board must consider in assessing fines are set forth in Minn. Stat. § 14.045, subd. 3 (2018): (1) the willfulness of the violation; (2) the gravity of the violation, including damage to humans, animals, and the natural resources of the state; (3) the history of past violations; (4) the number of violations; (5) the economic benefit gained by the person by allowing or committing the violation; and (6) other factors that justice may require.

The Committee recommends that the Board censure and reprimand Marohn and impose a $1,500 civil penalty. Marohn recommends that, if the Board finds a violation, no penalty be imposed. The Committee highlighted factors 1, 4, and 5, to support its recommendation. The factual record does not show any harm to persons, animals, or the natural resources of the state. It is undisputed that Marohn does not have a history of violations.



Complaint Exhibit 14

The Committee argues that Marohn's violations were willful because he intentionally referred to himself as a professional engineer and intentionally affirmed that he has not represented himself as a professional engineer. Marohn counters that there is no evidence that his violations were willful. Marohn affirmed that he has not represented that he was a professional engineer while not licensed. The ALJ also concluded that Mahron's argument is not a reasonable interpretation of the statute. The Board agrees with the ALJ's reasoning. The Board concludes that this factor, especially with regard to Marohn's renewal applications, weighs in favor of a censure and reprimand and a civil penalty.

The Committee contends that there are ten violations: eight where Marohn falsely claimed to be a professional engineer and two instances where he provided false information on his renewal application. Marohn argues that there is only one instance of false representation on his application and that Marohn never referred to himself as a professional engineer while performing engineering services. Marohn's argument is another variation of the argument above, which is similarly rejected for the reasons above. The Board finds that there were at least eight violations where Marohn falsely claimed to be a professional engineer, as found by the ALJ. Recommended Order at 4. The Board only counts the website as one violation and the book as one violation. The Board also agrees with the ALJ's finding that Marohn made one misrepresentation on each submission he made to the Board for his license renewal, for two violations. Even with only eight violations, the maximum allowed penalty would be $80,000. This mitigates in favor of a censure and reprimand and a civil penalty.

The Committee also argues that Marohn benefited economically from holding himself out as an engineer while not licensed. The Board agrees that Marohn claimed to be a professional engineer in his book, on course sales pages, and in presentations. The Committee posits that the reason for this is because the professional engineer title confers prestige on the declarant, making people more likely to buy books, take courses, and engage Marohn as a speaker. Marohn counters that his professional reputation is based on his years of practice as a professional engineer and not related to whether he is currently licensed as an engineer. Marohn also notes that there is no evidence that any individual purchased Marohn's books or attending his conferences because he represented that he was licensed. The Board agrees that there is no evidence in the record of any specific economic benefit conferred on Marohn. However, it appears likely that the usage of the professional engineer moniker did confer some prestige and therefore likely economic benefit. In either event, this factor slightly favors imposing discipline, but does not weight heavily in the Board's consideration.

## CONCLUSION

Given the number of violations and that they were intentional – especially the false information provided to the Board in his renewal application – a civil penalty is warranted in addition to a censure and reprimand. The Board has determined that a $1,500 civil penalty, which is 1.875% of the $80,000 maximum penalty, is warranted in this matter based on the analysis above and the Board's consideration of the entire record in this matter.

**STATE OF MINNESOTA**
**Minnesota Board of Architecture, Engineering, Land Surveying,**
**Landscape Architecture, Geoscience and Interior Design**
**85 East 7th Place, Suite 160**
**St. Paul, MN 55101**

**CERTIFICATE OF SERVICE BY U.S. MAIL**

**Case Title: In the Matter of the Professional Engineer License of Charles Marohn**
**OAH 60-1006-37594**

I, Kay Weiss, verify by oath or affirmation that on the 12th day of July, 2022, at the City of Saint Paul, in the county of Ramsey, in the State of Minnesota, served the Finding of Facts, Conclusions of Law, and Order by depositing a true and correct copy in the United States mail, properly enveloped, with first class postage prepaid and addressed to the following named individual(s) or entities at the address indicated below.

William F. Mohrman
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, MN. 55402

Allen Barr
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1400,
Saint Paul, MN 55101

Kay Weiss

OAH 60-1006-37594

STATE OF MINNESOTA
OFFICE OF ADMINISTRATIVE HEARINGS

FOR THE BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE AND INTERIOR DESIGN

In the Matter of the Professional Engineer License of Charles Marohn

**RECOMMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY DISPOSITION**

This matter is pending before Administrative Law Judge James E. LaFave.

Allan Cook Barr, Asistant Attorney General, represents the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design (Board) Complaint Committee (Complaint Committee). William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., represents Charles Marohn (Respondent).

On January 21, 2022, each party filed a Motion for Summary Disposition (Motions). The parties responded to the Motions on February 4, 2022, and both parties submitted reply memoranda on February 25, 2022.

A hearing on the Motions was held on March 2, 2022, via Microsoft Teams, and the record closed that day at the conclusion of the hearing.

Based on the submissions of counsel and the hearing record,

**IT IS HEREBY RECOMMENDED THAT:**

1. Respondent's Motion for Summary Disposition be **DENIED**.

2. The Complaint Committee's Motion for Summary disposition be **GRANTED**.

Dated: May 31, 2022

JAMES E. LAFAVE
Administrative Law Judge

## NOTICE

This Report is a recommendation, **not** a final decision. The Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design (Board) will make the final decision after a review of the record. Under Minn. Stat. § 14.61 (2020), the Board shall not make a final decision until this Report has been made available to the parties for at least ten calendar days. The parties may file exceptions to this Report and the Board must consider the exceptions in making a final decision. Parties should contact the Executive Director of the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design, Suite 160, 85 East Seventh Place, St. Paul, MN 55101, telephone (651) 296-2388, to learn the procedure for filing exceptions or presenting argument.

The record closes upon the filing of exceptions to the Report and the presentation of argument to the Board, or upon the expiration of the deadline for doing so. The Board must notify the parties and Administrative Law Judge of the date the record closes. If the Board fails to issue a final decision within 90 days of the close of the record, this Report will constitute the final agency decision under Minn. Stat. § 14.62, subd. 2a (2020). In order to comply with this statute, the Board must then return the record to the Administrative Law Judge within ten working days to allow the Judge to determine the discipline to be imposed.

Under Minn. Stat. § 14.62, subd. 1 (2020), the Board is required to serve its final decision upon each party and the Administrative Law Judge by first class mail or as otherwise provided by law.

## MEMORANDUM

The facts in this case are largely undisputed. The Board licensed Respondent as a professional engineer (PE). In 2012, Respondent ceased practicing as an engineer and dedicated himself to assisting the public to better understand public infrastructure projects in their communities via his nonprofit. This advocacy is related to engineering but does not involve the practice of engineering. A few years later, he allowed his license to expire. While unlicensed, Respondent called himself a "professional engineer" and "PE" on the internet and while giving book talks related to his nonprofit work. In 2020, in an application to renew his engineering license, Respondent affirmed to the Board that he had not represented himself as a professional engineer without proper licensure.

The Board maintains that, by these actions, Respondent violated Minnesota's engineer licensure statutes and regulations. Respondent argues that these actions are protected under the First Amendment to the United States Constitution and Article I, section 3, of the Minnesota Constitution.

## I. The Factual Background

### A. Respondent's Licensure Status

In 2000, the Board licensed Respondent as a professional engineer.[1] Professional engineering licenses must be renewed every two years, and Respondent duly renewed his license for each two-year period through 2016 to 2018.[2]

But, on July 1, 2018, Respondent's license expired because he had failed to renew it.[3] Respondent acknowledges that he forgot to renew his license for the period beginning in 2018, in part because he did not receive the Board's renewal notice. It is likely Respondent did not receive the renewal notice because he failed to update his address with the Board as required by rule.[4]

Respondent learned his license expired on June 9, 2020.[5] He then submitted material both to reinstate his expired license and to renew his license for the upcoming 2020 to 2022 licensure period.[6]

On June 17, 2020, the Board received Respondent's renewal applications for both the 2018 to 2020, and 2020 to 2022 periods.[7] On June 23, 2020, the Board renewed Respondent's license.[8]

It is undisputed that Respondent was not licensed as a professional engineer from July 1, 2018, through June 22, 2020.

### B. Respondent's Work History

Respondent worked as a professional engineer at his own firm from 2000 to 2012.[9] In 2009, while Respondent was still practicing as a professional engineer, he founded the nonprofit Strong Towns.

In Respondent's words, Strong Towns "advocates an approach to urbanism that avoids the construction of unnecessary infrastructure and hence the costs of building and maintaining unnecessary infrastructure."[10] Moreover, Strong Towns "provides education and information to the public, both in and out of Minnesota, in an effort to assist the public in being better advocates for appropriate infrastructure projects in their localities," and "maintains a website that provides news and commentary related to

---

[1] Declaration (Decl.) of Dillon Lang ¶ 2.
[2] Decl. of Charles Marohn ¶ 16.
[3] Lang Decl. ¶ 5.
[4] Minn. R. 1800.0120, subp. 1(A) (2021) ("Each ... licensee ... must notify the board in writing of any change of address within30 days of the change.").
[5] Marohn Decl. ¶ 18.
[6] *Id.* at ¶ 20.
[7] Lang Decl. ¶ 2.
[8] *Id.* The renewal meant that Respondent's license became reactivated before the July 1, 2020, biannual changeover date, but the renewal was not retroactive to the entire 2018 to 2020 period.
[9] Marohn Decl. ¶¶ 6-7.
[10] *Id.* at ¶¶ 8-10.

urbanism, urban planning, land-use planning, and infrastructure projects."[11] Respondent and Strong Towns are influential and respected contributors in the field of urban planning.[12]

In 2012, Respondent closed his professional engineer firm and stopped practicing as an engineer; he has since focused solely on his advocacy work.[13] He has not "signed any engineering documents, prepared any plans or specifications requiring licensure, overseen anyone who practices engineering, worked on any engineering projects, or undertaken any professional action that created any threat to the health, safety, and welfare of the public" since 2012.[14] Further, Respondent affirms that, since 2012, he has not "applied for any work as an engineer nor used [his] credentials to seek work as a professional engineer," and that the work he engages in "does not require any type of licensure including a professional engineering license."[15]

### C. Respondent's Representations During His Unlicensed Period

It is undisputed that, during the period in which he was not licensed, Respondent used the terms "professional engineer" and "PE" to describe his credentials. During this period:

- Respondent's LinkedIn profile stated that Respondent was a "Professional Engineer (PE) licensed in the State of Minnesota."[16]

- In separate places, the Strong Towns website described Respondent as a "Professional Engineer (PE) licensed in the State of Minnesota" and as a "professional engineer."[17]

- Respondent's 2019 book *Strong Towns*, published during the period when he was unlicensed, states that Respondent is a "certified Professional Engineer (PE)" in the dust jacket author profile, and states that Respondent is a "professional engineer licensed in the State of Minnesota" in its "about the author" section.[18]

- In spring 2020, Respondent gave at least three presentations in which he stated that he was a "PE."[19]

- When Respondent renewed his license in 2020, on both submissions, he checked "Yes" on the "Affidavit" portion to the statement: "I have not represented myself as . . . [a] professional engineer . . . without proper licensure or certification, either

---

[11] Marohn Decl. ¶¶ 8-10.
[12] *See Id.* at. ¶ 13.
[13] *Id.* at ¶¶ 7, 14.
[14] *Id.* at ¶ 14.
[15] *Id.*
[16] Lang Decl. Ex. 1A at 1.
[17] *Id.* at Ex. 1B at 1, 7.
[18] *Id.* at Ex. 1C at 2-3.
[19] *Id.* at Exs. 2B, 2C, 2E.

verbally or on any printed matter, in the State of Minnesota, nor will I do so until such time as my license or certificate has been issued by the Minnesota Board of . . . Engineering."[20]

### D. The Board's Investigation and this Contested Case Proceeding

On March 5, 2020, the Board received a complaint from an engineer in South Dakota alleging that Respondent had represented himself as a professional engineer without holding the requisite licensure.[21] On July 24, 2020, the Board sent a letter to Respondent informing him of the complaint and the Board's investigation via a duly impaneled Complaint Committee.[22] Although the South Dakota engineer's complaint was filed before Respondent sent his renewal papers to the Board, Respondent did not learn of the complaint until after filing those papers.[23]

Respondent replied to the Board's letter, stating that he did not engage in any professional engineer work during the period in which he was unlicensed.[24] In his letter, Respondent stated: "When I represented myself as being licensed in the state of Minnesota, I believed I was."[25]

On November 3, 2020, the Complaint Committee sent Respondent a letter and proposed stipulation and order.[26] The letter informed Respondent that the Complaint Committee had determined him to be in violation of Minn. Stat. § 326.02, subds. 1 and 3 (2020), and Minn. R. 1805.0020, subps. 1(B), 2, and 4(C) (2021), and that the Complaint Committee would recommend that the Board impose disciplinary action.[27] The stipulated order would have required Respondent to acknowledge violating those measures and making a false statement on his renewal papers, and would have imposed a $1,500 civil penalty, in addition to a requirement to take two hours of ethics classes.[28]

On November 17, 2020, Respondent replied to the Complaint Committee's letter and proposed stipulation.[29] Between that date and April 20, 2021, Respondent and the Board exchanged several proposals to resolve this matter, but the parties could not agree on stipulated language,[30] and the Board initiated this contested case proceeding.[31]

---

[20] *Id.* at Exs. 3A, 3B.
[21] Marohn Decl. Ex. 2.
[22] *Id.*
[23] *Id.* at ¶¶ 22-23.
[24] *Id.* at ¶¶ 27-28, Ex. 3.
[25] *Id.* at Ex. 3.
[26] *Id.* at ¶ 29, Ex. 4.
[27] *Id.* at Ex. 4.
[28] *Id.*
[29] *Id.* at Ex. 5.
[30] *See Id.* at Exs. 5-11.
[31] *See* Notice and Order for Prehearing Conference (June 3, 2021).

## II. Summary Disposition Standard

Summary disposition is the administrative law equivalent of summary judgment.[32] A motion for summary disposition shall be granted when there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law.[33] The Office of Administrative Hearings follows the summary judgment standards developed in the state district courts when considering motions for summary disposition in contested case matters.

The function of the Administrative Law Judge on a motion for summary disposition, like a trial court's function on a motion for summary judgment, is not to decide issues of fact, but to determine whether genuine, material factual issues exist.[34] The Administrative Law Judge does not weigh the evidence; instead, the judge views the facts and evidence in a light most favorable to the non-moving party.[35]

The moving party has the initial burden to show the absence of any genuine issue regarding any material fact.[36] A fact is material if its resolution will affect the outcome of the case.[37] If the moving party meets the initial burden, the burden shifts to the non-moving party to prove the existence of any genuine issue of any material fact.[38] A genuine issue is not a "sham or frivolous" one, and it cannot rely on mere allegations or denials.[39] Instead, a genuine issue requires presentation of specific facts demonstrating a need for resolution in a hearing or trial.[40]

Summary disposition cannot be used as a substitute for a hearing or trial on the facts of a case.[41] Thus, summary disposition is only proper when no fact issues need to be resolved.[42]

## III. Legal Analysis

### A. The Use of Terms "Professional Engineer" and "PE"

The Complaint Committee alleges that Respondent violated Minn. Stat. § 326.02, subds. 1 and 3, by representing himself as a professional engineer during the time his license was expired.[43]

---

[32] *Pietsch v. Minnesota Bd. of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn. 2004); *see also* Minn. R. 1400.5500(K) (2021).
[33] *Sauter v. Sauter*, 70 N.W.2d 351, 353 (Minn. 1955); *Louwagie v. Witco Chemical Corp.*, 378 N.W.2d 63, 66 (Minn. Ct. App. 1985).
[34] *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997).
[35] *Ostendorf v. Kenyon*, 347 N.W.2d 834, 836 (Minn. Ct. App. 1984).
[36] *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988).
[37] *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996) (citing *Zappa v. Fahey*, 245 N.W.2d 258, 259-260 (Minn. 1976)).
[38] *Thiele,* 425 N.W.2d at 583.
[39] *Highland Chateau, Inc. v. Minnesota Dep't of Pub. Welfare*, 356 N.W.2d 804, 808 (Minn. Ct. App. 1984) (citing *A & J Builders, Inc. v. Harms*, 179 N.W.2d 98, 103 (Minn. 1970)).
[40] *See* Minn. R. Civ. P. 56.05.
[41] *Sauter*, 70 N.W.2d at 353.
[42] *See id.*

Minn. Stat. § 326.02, subd. 1 provides:

> It shall be unlawful for any person to practice, or to offer to practice, in this state, . . . professional engineering, . . . or to solicit or to contract to furnish work within the terms of sections 326.02 to 326.15, or to use in connection with a person's name, ***or to otherwise assume, use or advertise any title description tending to convey the impression that the person is [a] . . . professional engineer*** (hereinafter called engineer) . . . unless such person is qualified by licensure or certification under sections 325.02 to 326.15.[44]

Minn. Stat. § 326.02, subd. 3(a) states:

> Any person shall be deemed to be practicing professional engineering within the meaning of sections 326.02 to 326.15 ***who holds out as being able to perform*** or who does perform any technical professional service, such as planning, design or observation of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private structures, buildings, utilities, machines, equipment, processes, works, or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of mathematics and the physical and applied engineering sciences, acquired by education or training, and by experience.[45]

Under Minn. Stat. § 326.02, subd. 3(b), no one other than a licensed professional engineer may "use the term 'professional engineer'," use any abbreviation of "professional engineer" in a way "that would lead the public to believe that the person was a professional engineer," or "use any means or in any other way make a representation that would lead the public to believe that the person was a professional engineer."

In social media posts, in a book, and in multiple public presentations Respondent stated he was a professional engineer. It is undisputed that Respondent repeatedly held himself out as a professional engineer during the time his license had lapsed in violation of the statue.

### B. False Information on the License Renewal

Respondent affirmed on his reapplication papers that he had "not represented [him]self as . . . [a] professional engineer . . . without proper licensure or certification, either verbally or on any printed matter, in the State of Minnesota."[46] As detailed above,

---

[43] Notice and Order for Prehearing Conference (Notice) (Jun. 3, 2021).
[44] (Emphasis added.)
[45] *Id.*
[46] Lang Decl. Exs. 3A, 3B.

Respondent, on numerous occasions, represented himself to be a professional engineer.

The Complaint Committee asserts that, in so doing, Respondent violated three state regulations:

1. Minn. R. 1805.0020, subp. 1(B), "[a] licensee or certificate holder shall be objective and truthful in all professional documents, including but not limited to plans, reports, statements, or testimony."

2. Minn. R. 1805.0020, subp. 2, "[a] licensee or certificate holder shall not make a false statement or fail to disclose a material fact requested in connection with an application for certification, licensure, or renewal in this state or any other state."

3. Minn. R. 1805.0020, subp. 4(C), a licensee may not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**C. Respondent's Arguments**

Respondent assets the Complaint Committee is mistaken in its reading of the cited statues and rules. Respondent reasons that because he was engaged in public advocacy and was not providing professional engineering services, he did not improperly hold himself out as a professional engineer. Moreover, during the period Respondent's license was expired, he was unaware of that fact, so when he represented himself as a professional engineer, he believed that to be true. For all these reasons, Respondent feels he did not provide false information on his license renewal. Respondent further moves for summary disposition in his favor on the grounds that his statements are protected by the First Amendment. These arguments will be addressed below.

**i. Respondent violated the statutes and rules**

Respondent's argument, that because he was engaged in public advocacy and was not providing actual professional engineering services, he did not improperly hold himself out as a professional engineer, ignores the plain language of the law. Minn. Stat. § 326.02, subd. 1, prohibits the use of a description that would "convey" the impression a person is a professional engineer. Minn. Stat. § 326.02, subd. 3(a), defines a professional engineer, not only as one who performs engineering services but also one "who holds out being able to perform" engineering services.

It does not matter that Respondent was engaged in public advocacy or that he had stopped providing engineering services in 2012. By stating he was a professional engineer and using the initials "PE", Respondent was holding himself out as one who could perform engineering services. And therefore, because his license had expired and because he was not a licensed engineer, Respondent violated the statue.

A similar analysis applies to the Complaint Committee's claim that Respondent provided false information on his license renewal. Respondent states he answered

truthfully in the license renewal, because he interpreted the certification to mean he had not represented himself as a professional engineer in connection with providing or offering to provide professional engineering services in Minnesota as opposed to engaging in public advocacy. Respondent's interpretation is unreasonable under the plain language of the renewal.

There is a difference between providing or offering to provide professional engineering services and holding oneself out as a professional engineer. There is no dispute that Respondent, on multiple occasions while he was unlicensed, claimed he was a professional engineer. The facts conclusively prove, contrary to his representations to the Board, that Respondent held himself out as professional engineer without proper licensure in the State of Minnesota in violation of the rules.

### ii. The Constitutional Claims

Respondent moves to dismiss the Complaint Committee's claims on the grounds they violate his rights under the First Amendment to the Unites States Constitution and Article I, § 3 of the Minnesota Constitution.[47] Specifically, Respondent argues Minn. Stat. § 326.02, subd. 3(b), is facially overbroad and patently unconstitutional.[48]

Respondent seeks to have statues declared unconstitutional. Administrative law judges, unlike Article VI judges in the state court system, have no power to declare a statute unconstitutional. These are powers accorded to judges in the judicial branch alone.[49] The Administrative Law Judge, therefore declines to address Respondent's constitutional claims.[50]

## IV. Conclusion

Based on a careful review of the record, the Administrative Law Judge concludes the Complaint Committee established it is entitled to summary disposition as a matter of law because Respondent violated Minn. Stat. § 326.02, subd. 1 and 3 by representing himself as a professional engineer while his license was expired. And that Respondent violated:

- Minn. R. 1805.0200, subp. 1(B), by failing to be truthful in all professional documents.

- Minn. R. 1805.0200, subp. 2, by making a false statement on an application for renewal; and

---

[47] Respondent Charles Marohn's Motion for Summary Judgement at 3 (Jan. 21, 2022).
[48] *Id.* at 23.
[49] *See, e.g., In re Rochester Ambulance Service,* 500 N.W.2d 495, 499-500 (Minn. Ct. App. 1993); *Neeland v. Clearwater Mem'l Hosp.*, 257 N.W.2d 366, 368 (Minn. 1977).
[50] Respondent will have the opportunity to raise the constitutional issues on an appeal from an administrative tribunal at the first opportunity in a forum possessing subject matter jurisdiction. (*See Neeland,* 257 N.W.2d at 68).

- Minn. R. 1805.0200, subp. 4(C), by engaging in conduct involving misrepresentation.

Consequently, the Administrative Law Judge respectfully recommends that Respondent's Motion for Summary Disposition be denied, and the Board's Motion for Summary Disposition be granted.

**J. E. L.**

**STATE OF MINNESOTA**
**Minnesota Board of Architecture, Engineering, Land Surveying,**
**Landscape Architecture, Geoscience and Interior Design**
**85 East 7th Place, Suite 160**
**St. Paul, MN 55101**

**CERTIFICATE OF SERVICE BY U.S. MAIL**

**Case Title: In the Matter of the Professional Engineer License of Charles Marohn; OAH 60-1006-37594**

I, Kay Weiss, verify by oath or affirmation that on the 12th day of July, 2022, at the City of Saint Paul, in the county of Ramsey, in the State of Minnesota, served the Order Granting Summary Disposition by depositing a true and correct copy in the United States mail, properly enveloped, with first class postage prepaid and addressed to the following named individual(s) or entities at the address indicated below.

William F. Mohrman
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, MN. 55402

Allen Barr
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1400,
Saint Paul, MN 55101

Kay Weiss

*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1099**

In the Matter of the Professional Engineer License of
Charles Marohn.

**Filed April 10, 2023**
**Affirmed**
**Wheelock, Judge**

Minnesota Board of Architecture, Engineering, Land Surveying,
Landscape Architecture, Geoscience and Interior Design
File No. 2020-0043

William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for relator Charles Marohn)

Keith Ellison, Attorney General, Allen Cook Barr, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design)

Considered and decided by Ross, Presiding Judge; Gaïtas, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Relator challenges the constitutionality of respondent professional board's order disciplining him for inaccurately holding himself out to the public as a professional engineer and for failing to truthfully answer questions on two separate licensing

Complaint Exhibit 15

applications.[1] Because relator's false information on his licensing applications to the board is not speech that the First Amendment protects, we affirm.

**FACTS**

The facts underlying this appeal are largely undisputed. Relator Charles Marohn received a professional engineering license from respondent Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design (the board) in 2000. After receiving his license, Marohn formed his own engineering firm and provided professional engineering services for 12 years. In 2009, Marohn founded Strong Towns, a nonprofit organization that encourages local governments to invest less money in infrastructure projects. In 2012, Marohn closed his engineering firm to focus on Strong Towns and related advocacy. Between 2012 and 2016, Marohn renewed his professional engineering license despite no longer providing or promoting professional engineering services.

In June 2018, Marohn failed to renew his engineering license, possibly because he did not receive a renewal notice at a new address. Marohn was therefore not licensed as a professional engineer between July 2018 and June 2020. In June 2020, a colleague advised Marohn that his license was expired. Marohn immediately took steps to become licensed again.

On June 17, 2020, Marohn applied to the board to have his license reinstated for the 2018-2020 licensing period and to renew his license for the 2020-2022 licensing period.

---

[1] Relator also makes a statutory-interpretation argument that, for reasons explained herein, we decline to address.



Complaint Exhibit 15

The application form included an affidavit section that asked Marohn to verify that he had "not represented himself as . . . [a] professional engineer . . . without proper licensure or certification, either verbally or on any printed matter, in the State of Minnesota." Marohn verified that he had not done so on the two separate licensing applications for the 2018-2020 and 2020-2022 licensing periods. The board reinstated Marohn's license for 2020-2022 later that month.

In March 2020, before Marohn became aware that he was unlicensed, another engineer complained to the board about Marohn's lack of an active license. The complaint asserted that, during the period in which Marohn's license was expired, Marohn had referred to himself as a professional engineer on multiple occasions and that Marohn had benefited financially from this false designation. In July 2020, the board informed Marohn of the complaint.

The board's complaint committee investigated and concluded that Marohn had violated Minn. Stat. § 326.02, subds. 1, 3 (2022),[2] by holding himself out as a professional engineer while unlicensed. The committee also determined that Marohn had violated Minn. R. 1805.0200, subps. 1(B), 2, 4(C) (2021), when he represented on his license applications that he had not referred to himself as a professional engineer during the period he was unlicensed. After Marohn and the board unsuccessfully negotiated for stipulated

[2] We cite the most recent version of Minn. Stat. § 326.02 because it has not been amended substantively as to the issues in this case. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case"). For the same reason, we also cite the current versions of other statutes and rules in this opinion.

discipline, the matter continued on to a contested-case proceeding before an administrative-law judge (ALJ).

The ALJ heard arguments from both parties on their motions for summary disposition. Marohn argued to the ALJ that the relevant statutes and regulations prevented him from referring to himself as a professional engineer only while promoting or providing engineering services. He also asserted that his conduct was protected by the First Amendment. The complaint committee's position was that Marohn had violated applicable statutes and regulations by representing himself as a professional engineer during the time his license was expired and by providing false information on his license applications. The ALJ rejected Marohn's statutory- and regulatory-interpretation arguments, declined to consider Marohn's constitutional arguments, and found that Marohn had violated Minn. Stat. § 326.02, subds. 1, 3, by representing himself as a professional engineer while unlicensed and Minn. R. 1805.0200, subps. 1(B), 2, 4(C), based on his statements in his license applications. The ALJ therefore recommended summary disposition in favor of the complaint committee.

The board adopted the ALJ's findings of fact and conclusions of law, and it granted summary disposition in favor of the complaint committee. The board found that Marohn had committed ten violations: eight violations of Minn. Stat. § 326.02, subds. 1, 3, for referring to himself as a professional engineer while unlicensed and two violations of Minn. R. 1805.0200, subps. 1(B), 2, 4(C), for making false statements to the board in his license applications.

The board ordered that Marohn be censured, reprimanded, and fined $1,500. In determining the fine, the board considered the factors outlined in Minn. Stat. § 14.045, subd. 3 (2022). The board considered the intentionality of Marohn's violations and concluded that "this factor, especially with regard to Marohn's renewal applications, weighs in favor of a censure and reprimand and a civil penalty." The board also considered the number of violations, which it concluded also weighed in favor of censure, reprimand, and a fine. Finally, the board considered whether Marohn received an economic benefit from the violations and concluded that there was no evidence of any specific economic benefit, but the violations likely conferred an economic benefit from prestige. Thus, it found the economic-benefit factor "slightly favors imposing discipline but does not weigh heavily in the board's consideration." The board concluded: "Given the number of violations and that they were intentional—especially the false information provided to the board in [Marohn's] renewal application—a civil penalty is warranted in addition to censure and reprimand."

Marohn appeals by writ of certiorari.

**DECISION**

The board's decision following a contested-case hearing is subject to review under the Minnesota Administrative Procedure Act (MAPA), Minn. Stat. §§ 14.001-.69 (2022). Minn. Stat. § 14.63; *Eneh v. Minn. Dep't of Health*, 906 N.W.2d 611, 613 (Minn. App. 2019). This court may affirm the decision of the agency, remand the case for further proceedings, or reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the administrative findings, inferences, conclusions, or

decisions are, among other things, in violation of constitutional provisions. Minn. Stat. § 14.69.

Marohn argues that the board's decision violates his First Amendment speech rights in two ways. First, he argues that the board violated his First Amendment rights by imposing discipline under Minn. Stat. § 326.02, subd. 3(b), based on his referring to himself as a professional engineer while engaged in political advocacy. Second, he asserts that the board violated his First Amendment rights by imposing discipline under Minn. R. 1805.0200, subps. 1(B), 2, and 4(c), based on his making false statements to the board in his license applications.

Generally, we avoid ruling on a constitutional issue if we can decide the appeal on an alternative basis. *State v. Bourke*, 718 N.W.2d 922, 926 (Minn. 2006). Here, Marohn makes two constitutional arguments. We decline to address Marohn's first constitutional argument because we can affirm the board's decision and imposition of discipline by addressing only his second constitutional argument. We affirm the board's order based solely on our conclusion that the board did not violate Marohn's First Amendment rights by disciplining him for his two violations of Minn. R. 1805.0200, subp. 2.

The United States and Minnesota Constitutions guarantee the right to free speech. U.S. Const. amend. I; Minn. Const. art. I, § 3. Under the First Amendment, a government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quotation omitted); *see also State v. Casillas*, 952 N.W.2d 629, 636 n.3 (Minn. 2020) (stating that the Minnesota Constitution's free-speech provisions provide "protections co-extensive with those under



Complaint Exhibit 15

the United States Constitution" (quotation omitted)). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*

Only limited categories of speech are excluded from First Amendment protection. *See United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (Kennedy, J., plurality opinion) (collecting cases). Even false speech is protected in most circumstances. *Id.* at 718. This comports with the free-speech principle that the "erroneous statement is inevitable in free debate." *New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964). However, the United States Supreme Court has acknowledged that statutes may permissibly restrict one's ability to utter false speech, including by punishing (1) the dissemination of false information to a government official or agency, (2) the false representation that one is speaking with the authority of the government, and (3) the provision of perjurious testimony. *Alvarez*, 567 U.S. at 720-21. The Court reasoned that "testimony under oath has the formality and gravity necessary to remind the [speaker] that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." *Id.* at 721.

Implicit in the Supreme Court's reasoning is that the government has a compelling interest in receiving accurate and truthful information in relation to official governmental functions. Because the board's license-application process aids the board in ensuring the

safe practice of engineering in the state, the board has a compelling interest in receiving truthful and accurate information regarding the statements its applicants make to the public regarding their licensure status. *See In re Application of Hansen*, 275 N.W.2d 790, 792-93 (Minn. 1978) (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("[T]he States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.")).

Marohn made statements in his 2018-2020 and 2020-2022 license applications that the board determined were false. It is not disputed that Marohn referred to himself as a professional engineer during the period when he was unlicensed. Each application, under a section marked "Affidavit," asked Marohn to verify that he had not "represented [himself] as [a] . . . professional engineer . . . without proper licensure." Marohn confirmed on each application that he had not. The application form required Marohn to verify his answers with a signature and "swear/affirm that [he] read the foregoing renewal application[s] and that the statements [were] true and correct." This verification, akin to taking an oath to provide truthful testimony at trial, implicates the *Alvarez* Court's reasoning that speech given under oath should indicate to the speaker that their speech will form the basis for government action. We therefore conclude that Marohn's false statements on his applications fall within a narrow category of false speech that is not accorded First Amendment protection.

Marohn contends that he should be excused for having made these false statements because he made them while holding an honest and good-faith belief that he was answering the question truthfully based on his subjective interpretation of the relevant statutes and rules. But the question that he answered falsely on both applications was straightforward and did not call for interpretation based on any statutes or rules. It asked simply whether Marohn had represented himself as a professional engineer during a specific period. Marohn swore that he had not, even though he had. The applications' instructions informed Marohn that he could supplement his answers with an explanation. Marohn therefore had two ways to answer accurately. First, he could have disclosed that he had represented himself as a professional engineer within the specified period and offered no further explanation. Or second, he could have stated that he had not so represented himself but then supplemented this answer by explaining that he was responding based on his understanding of the statutes and rules or his assertion of his constitutional rights. Instead, Marohn chose to make false statements.

Marohn's false statements that he had not represented himself as a professional engineer without proper licensure or certification, sworn by him to be truthful, are not protected by the First Amendment because they were made to an official government agency that would rely on them as "the basis for official governmental action." *Alvarez*, 567 U.S. at 721. Therefore, we conclude that the board did not violate the First Amendment by disciplining Marohn for his violations of Minnesota Rule 1805.0200.

And we further conclude that these violations are sufficient, by themselves, to support the discipline the board imposed. The board has the authority to, among other

available actions, impose a fine of up to $10,000 per violation upon any person who violates a statute or rule that the board has issued or is empowered to enforce. Minn. Stat. § 326.111, subds. 4(a), 6(a) (2022). The record supports the board's finding that Marohn committed two violations of Minnesota Rule 1805.0200 by providing false information to the board in two different applications. Marohn faced a fine of up to $20,000 for these two violations. In determining the appropriate discipline, the board emphasized the intentionality of Marohn's violation, "especially with regard to Marohn's renewal applications." And the board indicated that any economic gain Marohn derived from the eight other violations played a lesser role in its consideration. At oral argument, counsel for the board agreed that the $1,500 penalty imposed would be appropriate for Marohn's two violations of Minn. R. 1805.0200. We add that Marohn does not challenge the particular discipline imposed by the board, instead arguing that he should have been subject to no discipline at all. On this record, we conclude that Marohn's two violations of Minn. R. 1805.0200 amply supported the discipline the board imposed. We therefore do not reach Marohn's arguments challenging the board's order as to the eight violations of Minn. Stat. § 326.02(b).

**Affirmed.**



Complaint Exhibit 15