**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CHARLES L. MAROHN,

Plaintiff,

v.

THE MINNESOTA BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE, AND INTERIOR DESIGN, ET AL.,

Defendants.

Case No. 23-CV-3717 (NEB/LIB)

ORDER ON MOTION TO DISMISS

Plaintiff Charles Marohn, a retired engineer, wants to call himself a "professional engineer." Minnesota law makes it unlawful for him to do so unless he is licensed. *See* Minn. Stat. 326.02, subdiv. 3(b)(1). Marohn filed this lawsuit, arguing that the law violates his First Amendment right to free speech. Defendants move to dismiss. For the reasons below, the motion (ECF No. 12) is granted in part and denied in part.

## BACKGROUND

Marohn's engineering career began in 2000, working on projects for local governments. (ECF No. 1 ("Compl.") ¶¶ 14–15.) Over time, he started to believe that public infrastructure projects "were a waste of money and were making the communities those local governments represented poorer." (*Id.* ¶ 16.) So in 2009, he founded a non-

profit organization that advocates for "local governments to spend less taxpayer dollars on construction and infrastructure projects." (*Id.* ¶ 17.) By 2012, Marohn had shifted all his attention to his nonprofit organization and political advocacy. (*Id.* ¶ 24.) Since then, he has done no engineering work. (*Id.*)

In 2018, Marohn's engineering license expired *(id.* ¶ 25); *see* Minn. Stat. § 326.10, subdiv. 8, though he did not realize it until 2020. (Compl. ¶¶ 26, 28–29.) At that time, he immediately applied for a license. (*Id.* ¶ 26.) From July 2018 to June 2020, Marohn did not have a license.

In March 2020, an engineer who had attended one of Marohn's seminars filed a complaint against him with the Board[1], alleging that Marohn did not have a license. (*Id.* ¶ 30; *see* ECF No. 1-1 (8–12).) The Board notified Marohn of the complaint in July 2020. (ECF No. 1-1 at 3–7.) In the meantime, the Board reinstated Marohn's license. (Compl. ¶ 28.) The Board's Complaint Committee then determined that Marohn had violated Minnesota's professional licensure law, *see* Minn. Stat. § 326.02, subdivs. 1, 3, and recommended that he be disciplined by the Board.

After attempting to settle the matter, Marohn sued the Board in federal court, seeking an injunction against discipline and arguing that the law violated his First Amendment rights. *Marohn v. Minn. Bd. of Architecture, Eng'g, Land Surveying, Landscape*

[1] The Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design. (Compl. ¶ 11.)

*Architecture, Geoscience and Interior Design*, No. 21-CV-1241, 2021 WL 5868194 (D. Minn. Dec. 10, 2021) (*Marohn I*). The court dismissed the suit on *Younger* abstention grounds because of the ongoing state administrative proceedings. *Id.* at *1.

After the federal case was dismissed, the Board filed an administrative complaint against Marohn. (Compl. ¶ 51.) In the administrative proceeding, the parties submitted cross-motions for summary disposition. (*Id.* ¶ 52.) Marohn argued that the professional licensure law violated his First Amendment rights. (*Id.* ¶ 53; ECF No. 1-1 at 84–107.) The ALJ and the Board ultimately determined that Marohn violated the professional licensure law, refusing to address his constitutional claim. (Compl. ¶¶ 54–59.) Marohn appealed the Board's decision to the Minnesota Court of Appeals, which affirmed the decision without addressing his constitutional argument. (*Id.* ¶ 60; ECF No. 1-1 at 138–147.)

After his appeal was denied, Marohn brought this second federal action, arguing that the professional licensure law violated his First Amendment rights and that the Board's disciplinary action was retaliatory. He asks the Court to declare the law unconstitutional as applied to him and enjoin the Board from enforcing it. Defendants now move to dismiss. (ECF No. 12.)

**ANALYSIS**

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, the Court is not limited to the allegations in the complaint but may also consider "materials that are part of the public record." *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955 (8th Cir. 2020) (citation omitted). Defendants have submitted court documents filed in state and federal court proceedings. (*See* ECF No. 15-1.) Because these documents are part of the public record, the Court may consider them under Rule 12(b)(6) without converting the motion to dismiss into a motion for summary judgment. *Hester v. Redwood Cty.*, 885 F. Supp. 2d 934, 942 (D. Minn. 2012) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)).

## I. Preclusion

Defendants argue that Marohn's claims are precluded by his prior state-court and federal-court proceedings. Under preclusion law, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). On a motion to dismiss, preclusion may be raised as an affirmative defense if it "is apparent on the face of the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012) (citation omitted). A federal court must give the same preclusive effect to a state court judgment that it would receive in the courts of the state from which the judgment emerged. *Brown v. Kansas City Live, LLC*, 931 F.3d 712, 714 (8th

Cir. 2019); 28 U.S.C. § 1738. The Court therefore applies the law from the forum state that rendered the first judgment, here, Minnesota. *See Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) ("The law of the forum that rendered the first judgment controls the res judicata analysis." (citation omitted)).

### *A. Collateral Estoppel: Retaliation Claim*

Defendants contend that collateral estoppel bars Marohn's retaliation claim because another federal court already decided the issue of whether the Board retaliated against him.[2] Collateral estoppel prevents relitigating issues "already decided in a different cause of action." *Kvalvog v. Park Christian Sch., Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023) (citation omitted). In Minnesota, collateral estoppel applies when: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Id.* (citing *Ill. Farmers Ins. v. Reed*, 662 N.W.2d 529, 531 (Minn. 2003)).

[2] The Board does not argue that collateral estoppel bars Marohn's First Amendment claim. Nor could it: neither the Minnesota Court of Appeals nor this Court addressed whether Minnesota's professional licensure law violates Marohn's First Amendment rights. *Kvalvog*, 66 F.4th at 1152 (collateral estoppel bars relitigating issues "already decided").

In the prior federal action, the issue before the court was whether *Younger* abstention was warranted because of Marohn's ongoing state administrative proceedings. *Marohn I*, 2021 WL 5868194, at *1. Under *Younger*, a federal court may abstain from adjudicating a case when there are ongoing state-court or administrative proceedings. To avoid abstention, Marohn argued that an exception applied because the administrative action "was brought in retaliation for the exercise of a constitutional right." *Id.* at *4-5. The court rejected that argument: Marohn "pled no facts that indicated that the Board . . . retaliated against him." *Id.* at *5.

The retaliation issues raised in the prior federal action and this action are the same. (*Compare* Compl. ¶¶ 36, 46, *with Marohn I*, Compl. ¶¶ 36, 46.) And the retaliation issue was actually decided, and rejected, in the prior federal action. Marohn was also a party to the prior action and had the opportunity to be heard on the issue. And he pleads no additional facts here that make this case different from *Marohn I.* Thus, Marohn's prior federal case collaterally estops the retaliation claim.

### *B. Res Judicata: First Amendment Claim*

Defendants argue that Marohn's First Amendment claim is barred under the doctrine of res judicata. Under Minnesota law, res judicata bars a subsequent claim where "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." *St. Paul Fire*

*& Marine Ins. v. Compaq Comput. Corp.*, 539 F.3d 809, 821 (8th Cir. 2008) (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). The doctrine applies to claims actually litigated in the earlier action, and also to claims that could have been litigated in the earlier action. *Id.*

Marohn raised the First Amendment matter, challenging the constitutionality of the professional licensure law in proceedings before the ALJ, the Board, and the Minnesota Court of Appeals. (*See* ECF No. 18 at 23–24.) He now asserts the same claim here. (Compl. ¶¶ 65–69.) Thus, both claims arise under the same set of factual circumstances because the "same evidence"—Marohn calling himself a professional engineer when he is not licensed—underlies both actions. *Hauschildt*, 686 N.W.2d at 840–41. Both actions also involved the same parties (Marohn and the Board), and the Minnesota Court of Appeals issued a final judgment on the merits.

The law question is whether Marohn had a full and fair opportunity to litigate the matter in the prior action. "Apart from compulsory counterclaim rules, [] the traditional conclusion has been that purely defensive use of a theory does not preclude a later action for affirmative recovery on the same theory." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 441 (3d ed.). That is the case here: Marohn was not compelled to assert his First Amendment counterclaim in the first action. Indeed, he could not assert *any* counterclaim because the Board's jurisdiction was limited to determining whether he should be disciplined. Because Marohn sought only to defeat

recovery by the Board without demanding any affirmative relief, he should be permitted to raise the First Amendment claim. Thus, res judicata does not bar Marohn from asserting his First Amendment claim here.[3]

## II. First Amendment

Defendants argue that even if Marohn's First Amendment claim is not precluded, the claim fails on the merits because his speech was unprotected.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." Although the Supreme Court has recognized certain categories of unprotected speech, false statements are generally not one such category. *United States v. Alvarez*, 567 U.S. 709, 717–18 (2012) (plurality opinion); *see New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) ("Th[e] erroneous statement is inevitable in free debate."). Defendants maintain that Marohn's speech falls under three more narrow exceptions: false statements about professional qualifications, false statements made for material gain, and false commercial speech. The Court considers each category in turn.

[3] Marohn's First Amendment claim is also not barred under the doctrine of res judicata by the prior federal court action. The federal court dismissed Marohn's action without prejudice under the *Younger* abstention doctrine. *Marohn I*, 2021 WL 5868194, at *4; *see Satanic Temple v. City of Belle Plaine, Minnesota*, 80 F.4th 864, 870 (8th Cir. 2023) (recognizing that dismissal without prejudice is not a judgment on the merits); *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 148 (8th Cir. 1981) (explaining why dismissal without prejudice is not an adjudication on the merits).

### A. *False Statements about Professional Qualifications*

Defendants argue that the challenged law follows a long tradition of proscription of false licensure claims. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 (2011) (recognizing government can constitutionally proscribe speech when "persuasive evidence" shows a long tradition of doing so). The first case Defendants cite as evidence of this tradition is *Dent v. W. Virginia*, 129 U.S. 114 (1889). There, the Supreme Court rejected a constitutional challenge brought by a criminal defendant convicted under a statute that made it unlawful to add "M. D." to an individual's name unless the individual was licensed to practice medicine. John A. Warth, *Code of West Virginia*, ch. 150, § 13 (2d ed. 1887). But the Supreme Court did not address the constitutionality of that portion of the statute because the defendant in *Dent* had actually practiced medicine by "publicly professing to be a physician" and "prescribing for the sick." *Dent*, 129 U.S. at 118.

The same is true in *Texas State Board of Public Accountancy v. Fulcher*, a state-court decision upholding the constitutionality of a Texas statute that made it unlawful to hold oneself out as a "public accountant" unless the individual was certified or permitted to practice public accountancy. 515 S.W.2d 950, 954-55 (Tex. Civ. App. 1974). The defendant in that case "was engaged as an accountant in the practice of public accounting" by "offering and furnishing accounting services for pay to the general public." *Id.* at 956. Thus, neither decision addressed the core issue here: whether laws proscribing false

statements about professional qualifications are constitutional as applied to individuals not engaged in the professional service.

Without "persuasive evidence" that this professional licensure law is part of a long tradition of proscription, the Court cannot conclude that it falls under a historically unprotected category of speech. *Brown*, 564 U.S. at 792.

### *B. False Statements Made for Material Gain*

Defendants next argue that Marohn's speech was unprotected because it was for a material gain—to sell more books and courses. *See Alvarez*, 567 U.S. at 723 (recognizing that false speech made for material gain has historically been unprotected).

From the start, the parties dispute whether this category of unprotected speech requires a finding that the speech accompany some legally cognizable harm. *Alvarez* suggests that it does. The Supreme Court noted that false speech is not protected in cases involving "defamation, fraud, or *some other legally cognizable harm* associated with a false statement, such as an invasion of privacy or the costs of vexatious litigation." *Id.* at 719 (emphasis added); *see id.* at 734 (Breyer, J., concurring) (noting fraud statutes "typically require proof of a misrepresentation that is material, upon which the victim relied, and which caused actual injury"). Defendants fail to show how Marohn's speech has misled or caused any other legally cognizable harm to members of his audience.

In any event, the Court concludes that Marohn's speech was not for a material gain. Defendants point to Marohn's allegations that if he is prohibited from calling

himself a professional engineer, it "will reduce his creditability with his audience"—that is, individuals who bought his books or paid to watch his seminars. (Compl. ¶¶ 62–63, ECF No. 1-1 at 125.) So, Defendants contend, Marohn "believes more people will pay him if he falsely claims to be a professional engineer." (ECF No. 14 at 17.) But presumably, individuals are drawn to his lectures because of his experience as an engineer and his public advocacy work—not because they believe he has an active license to practice as an engineer. Thus, at this stage of the case, the Court cannot conclude that Marohn's statements were for a material gain.

### *C. False Commercial Speech*

Lastly, Defendants maintain that Marohn's speech is unprotected because it is false commercial speech. They rely on a line of cases upholding restrictions on the use of professional titles. *E.g.*, *Maceluch v. Wysong*, 680 F.2d 1062, 1068–70 (5th Cir. 1982) (upholding Texas licensing law preventing doctors of osteopathy from using "M.D." in connection with their medical practice).

To be sure, states may constitutionally limit the use of professional titles or trade names to protect the public from misleading advertising. *See Friedman v. Rogers*, 440 U.S. 1, 15-16 (1979). The problem for Defendants is that each of these cases involved the use of a professional title or trade name for a business purpose. Marohn seeks to call himself a professional engineer for a political purpose—to advocate for less publicly funded construction and infrastructure projects. (Compl. ¶ 17.) That distinction matters.

Marohn's speech was political speech—"speech at the core of the First Amendment"—and therefore highly protected. *Republican Party of Minnesota v. White*, 416 F.3d 738, 749 (8th Cir. 2005); *see Serafine v. Branaman*, 810 F.3d 354, 360–62 (5th Cir. 2016) (holding professional licensure law unconstitutional because it restricted political speech of unlicensed psychologist). Thus, Marohn's identification as a "professional engineer" during his public advocacy work was not commercial speech.

Defendants also cite *Friedman v. Rogers* for the proposition that the mere use of a professional title, outside the context of providing that professional service, is unprotected speech. 440 U.S. 1 (1979). They rely on the Supreme Court's observation that "[o]nce a trade name has been in use for some time, it may serve to identify an optometrical practice and also to convey information about the type, price, and quality of services offered for sale in that practice." *Id.* at 11. But they fail to include the next sentence: "In each role, the trade name is used as part of a *proposal* of a commercial transaction." *Id.* (emphasis added). When Marohn stated that he was a professional engineer, he was not attempting to solicit more engineering clients. Thus, *Friedman* does not control this case.

Because Marohn's speech was entitled to constitutional protection, Defendants' motion to dismiss is denied with respect to the First Amendment claim.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss (ECF No. 12) is GRANTED IN PART and DENIED IN PART as follows:
   a. Count I (First Amendment claim) is DENIED; and
   b. Count II (retaliation claim) is GRANTED and the retaliation claim is dismissed without prejudice.

Dated: September 3, 2024

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge