**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CHARLES L. MAROHN, JR.,

Plaintiff,

v.

MINNESOTA BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE, AND INTERIOR DESIGN, et al.,

Defendants.

Case No. 23-CV-3717 (NEB/LIB)

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Charles L. Marohn, Jr. wants to call himself a professional engineer. He retired after practicing as a professional engineer for more than a decade, and he now advocates against engineering projects by local governments, believing many of them to be a waste of taxpayer dollars. In Marohn's eyes, using the "professional engineer" title enhances his credibility among technical and lay audiences alike. But a Minnesota statute prohibits individuals without an active engineering license from using the "professional engineer" title, and Marohn is retired, having given up his license. When the state licensing board sought to enforce the statute against him, Marohn sued to vindicate his First Amendment rights in an as-applied challenge.

Both Marohn and the Board now move for summary judgment. (ECF Nos. 45, 53.) For the reasons below, the Court grants Marohn's motion and denies the Board's.

## BACKGROUND

For the decade that Marohn practiced as a licensed professional engineer, he performed civil engineering work for local governments—zoning, permit processing, and more. (ECF No. 56 ("Marohn Decl.") ¶¶ 5–7; ECF No. 59-1 ("Marohn Dep.") at 25–31.[1]) As time went on, Marohn grew increasingly frustrated; in his experience, local governments wasted taxpayer money on unnecessary infrastructure projects. (Marohn Decl. ¶¶ 6–7, 9.)

He channeled his malcontent into public advocacy. (*Id.* ¶ 7.) Marohn founded a nonprofit corporation, Strong Towns, which disseminates educational materials advocating against wasteful civil infrastructure. (*Id.* ¶¶ 7, 9.) In support of that mission, Marohn also writes books, speaks at conferences, and more. (*Id.* ¶¶ 10, 65.) For example, Marohn authored an article for the Strong Towns website titled "Four Ways Traffic Engineers Thwart Public Will." (*Id.* ¶ 31.) Marohn contends that Strong Towns has a large audience, reaching millions of people each year. (*Id.* ¶ 68.)

Soon enough, Marohn fully phased out of private engineering practice to dedicate his attention to Strong Towns. (*Id.* ¶ 8.) He maintained the license for a few years longer, until he accidentally let it expire. (*Id.* ¶¶ 8, 12–13, 19–20.) Despite not currently holding a license, Marohn wishes to use the "professional engineer" title to augment his public advocacy. (*Id.* ¶ 65.) He would use the title in the contents of his advocacy work—books, articles, speaking engagements, and courses available on the Strong Towns website—as well as about-the-author biographies accompanying those works. (*Id.* ¶ 75; ECF No. 59-4 at 4–5.) Marohn maintains that the title enhances his credibility with both lay and

---

[1] All page citations to the record reference ECF pagination, except for deposition transcripts, which reference native pagination.

technical audiences, an effect not captured by the obvious alternative—calling himself a "retired professional engineer." (Marohn Dep. at 90–91, 121.)

Eventually, another professional engineer reported Marohn to the Board for using the title without a license. (Marohn Decl. ¶¶ 28, 31.) The Board determined that Marohn had violated Minnesota's professional licensure law, Minn. Stat. § 326.02, subdiv. 3, and initiated an administrative proceeding against him. (*Id.* ¶¶ 35, 46.)

Marohn sued to enjoin the Board's enforcement action. (ECF No. 1 ¶¶ 65–69.) Only one claim survived the Board's motion to dismiss: Marohn's as-applied First Amendment challenge to the state licensure law. (ECF No. 29.) Now, both parties move for summary judgment. (ECF Nos. 45, 53.)

## ANALYSIS

### I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the parties' dispute is legal, not factual, the Court must decide which party is entitled to judgment as a matter of law. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (noting that "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts" (citation modified)); *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012) ("[S]ummary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." (citation omitted)). "The party requesting summary judgment is entitled to judgment as a matter of law if the non-movant fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Vaughn v. Wallace*, 496 F.3d 908, 910–11 (8th Cir. 2007) (citation modified).

## II. Discussion

### *A. Protected Speech*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." The Supreme Court has recognized certain categories of unprotected speech, but false statements are generally not one. *See United States v. Alvarez*, 567 U.S. 709, 717–18 (2012) (plurality opinion); *281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014) ("Simply stated, false statements, as a general proposition, are not beyond constitutional protection."). "[E]rroneous statement is inevitable in free debate," and "it must be protected if the freedoms of expression are to have the breathing space that they need to survive." *New York Times Co. v. Sullivan*, 376 U.S. 254, 271–72 (1964) (citation modified).

The parties agree that Marohn's use of the "professional engineer" title is speech. But the Board maintains that it falls under three carveouts for unprotected false speech: (1) false statements about professional qualifications ("false licensure"), (2) false commercial speech, and (3) false statements made for material gain. Assuming Marohn's speech is false or misleading, the Court concludes that it does not fit within any of these categories. Accordingly, his use of the title enjoys First Amendment protection.

#### *1. False Licensure*

The government can constitutionally proscribe speech when "persuasive evidence" shows a long tradition of doing so. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S.

786, 792 (2011). At the motion-to-dismiss stage, the Board argued that so-called "false licensure claims"—when a person claims to have a professional license but does not—fall into this category. (ECF No. 29 at 9.) At that time, the Court rejected the Board's arguments because the Board failed to provide "persuasive evidence" that this proscription extended to individuals *not* engaged in the professional service. (*Id.* at 9–10.) Marohn is not engaged in professional engineering; he instead uses the title in his public advocacy. In its motion for summary judgment, the Board advances two new arguments contending that Marohn's speech is unprotected as false licensure even though he is not a practitioner.[2] Neither persuades the Court.

*First*, the Board emphasizes the dearth of caselaw about those disclaiming an intent to practice, which it interprets as evidence that applying licensure requirements to non-practitioners is consistent with the more traditional application to practitioners. (ECF No. 47 at 17–18.) In other words, if restricting non-practitioners' use of professional titles was truly unconstitutional, one would expect it to come up more. The Board's inferential argument is distinct, of course, from citing caselaw in which regulation of a non-practitioner's use of a professional title was challenged and upheld. Those cases do not exist. In the Board's sample size of one—*Serafine v. Branaman*, 810 F.3d 354 (5th Cir. 2016)—the Fifth Circuit ruled in favor of the non-practitioner, permitting her to use the

[2] The Board also recounts the history of statutes regulating the use of professional titles, dating back as early as 1760. (ECF No. 47 at 16–17 & n.13.) Still, these historical examples revolve around the *practice* of a regulated profession—either after-the-fact malpractice, or before-the-fact advertisement offering professional services.

title "psychologist." *Id.* at 358–59. In this way, the Board improperly equates a regulation's status as historically uncontested with one that is historically constitutional.[3]

*Second*, the Board analogizes professional licensure laws to trademark protections—much like a certification mark, licensure laws protect a professional title's meaning against dilution. (ECF No. 47 at 18–19.) True, trademark protections, despite necessarily requiring content-based distinctions, have always coexisted with the First Amendment. *Vidal v. Elster*, 602 U.S. 286, 295 (2024). But that coexistence reflects a judgment that trademark restrictions are a constitutionally justifiable regulation of otherwise protected speech—not that trademark-infringing speech, in itself, is categorically unprotected to begin with. *See id.* at 292–93, 295. Thus, the trademark analogy does not bear on whether Marohn's speech enjoys First Amendment protection.

2. *False Commercial Speech*

The First Amendment does not protect false or misleading commercial speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64, 566 (1980).

---

[3] > [T]he brute historical fact that the executive or legislature has engaged in a practice, even for an extended period, cannot by itself establish the constitutionality of the practice. This is as it must be in the constitutional scheme of things. Because the judicial branch is passive, it cannot react to an assertion of power by the political branches until third parties present the courts with a concrete case or controversy. Judicial silence simply cannot be construed as judicial acquiescence.

*United States v. Woodley*, 751 F.2d 1008, 1030 (9th Cir. 1985) (en banc) (Norris, J., dissenting).

The Court concludes that Marohn's speech is not commercial; thus, it is still protected by the First Amendment (even if false).

The Board begins by arguing that Marohn's licensure claims make his speech inherently commercial. (ECF No. 47 at 11.) Citing *Ibanez v. Florida Department of Business and Professional Regulation, Board of Accountancy*, 512 U.S. 136, 142 (1994), the Board contends that the use of professional titles categorically renders speech commercial. (ECF No. 47 at 11; ECF No. 68 at 5.) But the Supreme Court's commercial-speech analysis in that case was sparse—Ibanez herself argued that using the Certified Public Accountant title was commercial speech, and the analysis instead turned on whether her speech was false. *Ibanez*, 512 U.S. at 140. In reality, the Court cabined its conclusion, offering no express indication that its reasoning reached all uses of professional designations: "*Ibanez' use* of the CPA and CFP designations was commercial speech." *Id.* at 142 (emphasis added) (citation modified). Ibanez used those titles in her yellow pages listing, her business card, and her stationery—none of which resemble the tight overlap between Marohn's public advocacy and his intended uses of the "professional engineer" title. *Id.* at 138.[4]

[4] Nor is *Abramson v. Gonzalez*, 949 F.2d 1567 (11th Cir. 1992), another case cited by the Board, persuasive on this point. In that case, the Eleventh Circuit postulates that "surely the sole purpose for holding oneself out as a psychologist is to gain commercial advantages," even "at cocktail parties or over private dinners." *Id.* at 1574. Contrary to the Board's representation, *Abramson* does not stand for the broad proposition that all use of professional titles is commercial speech. Rather, the Eleventh Circuit observes that "a kind of expressive or political speech [was] simply not present here." *Id.* at 1575. Thus, the case sheds little light on Marohn's unique circumstances.

Pure commercial speech "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (citation modified). Because Marohn uses the title to augment his public advocacy—a fact which the Board does not dispute—his speech does "more" than propose a commercial transaction. Thus, the Court must engage in a more nuanced commercial speech analysis, accounting for the noncommercial aspects of Marohn's speech.

"To determine whether the speech at issue is commercial speech, a court must evaluate the 'content, form, and context' of the speech 'as revealed by the whole record.'" *Dryer v. Nat'l Football League*, 55 F. Supp. 3d 1181, 1189 (D. Minn. 2014) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)), *aff'd*, 814 F.3d 938 (8th Cir. 2016). To lend some structure to this analysis, courts have identified three factors indicating whether speech is commercial: (a) "whether the communication is an advertisement"; (b) "whether it refers to a specific product or service"; and (c) "whether the speaker has an economic motivation for the speech." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120 (8th Cir. 1999). No factor, standing alone, renders the speech at issue commercial, but the "presence of all three factors provides 'strong support' for the conclusion that the speech in question is commercial." *Id.* (quoting *Bolger*, 463 U.S. at 67).

***Advertisement.*** Perhaps most importantly, Marohn's intended uses of the "professional engineer" title bear little resemblance to advertisements. He plans to refer to himself as a professional engineer (a) within the contents of his written publications, speaking engagements, and online courses; and (b) in about-the-author biographies that accompany those works. (*See, e.g.*, Marohn Decl. ¶ 75; ECF No. 59-4 at 4–5.) None of the exhibits contain price and quantity information, a classic hallmark of commercial speech. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993). Marohn would not use the title in any unsolicited mailings, pamphlets, or other formats designed to reach

consumers. *See, e.g.*, *Bolger*, 463 U.S. at 62; *Dryer*, 55 F. Supp. 3d at 1192 (concluding that film productions that "d[id] not appear in other media as paid 'spots'" were not advertisements). For example, consumers would only see the "professional engineer" designation if they had clicked on the webpage of course offerings. Altogether, Marohn's intended uses of the title in public advocacy and accompanying biographies simply do not "look[] like" advertisements. *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 519 (7th Cir. 2014).

***Reference to a specific product.*** Similarly, it is unclear how Marohn's intended uses of the "professional engineer" title could refer to a specific product. To the extent Marohn identifies himself as a professional engineer on the text of an op-ed or in a scripted speech, that use of the title does not "promote a product separate from the [works] themselves"—the books, the articles, the speeches, *are* the products. *Dryer*, 55 F. Supp. 3d at 1193. As for the short biographies affixed to webpages, some mention Marohn's past works. (*See, e.g.*, ECF Nos. 60-3, 60-6.) At most, these references resemble the "also by the author" page commonly found in a book's front matter. Whatever marginally commercial character the short biographies lend to Marohn's speech, it is not enough to tip the scales.

***Economic motivation.*** At bottom, the Board argues that Marohn's speech is commercial because enhanced credibility leads to a commercial advantage: increased book sales and speaking event attendance. (ECF No. 47 at 11, 13.) But this conflates "speech for a profit" and "speech that *proposes* a commercial transaction, which is what defines commercial speech." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989). Granted, commercial speech "need not originate *solely* from economic motives." *Porous Media Corp.*, 173 F.3d at 1121. Even so, "the nature of the speech taken as a whole" suggests that any commercial elements of Marohn's speech are incidental to his public

advocacy—which falls squarely within the ambit of First Amendment protection. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988). Marohn's anti-waste messaging is consistent throughout—the articles critique specific investments in city infrastructure, the courses provide how-to guides for making the most of limited resources for civil infrastructure, and so on. (ECF Nos. 60-3, 60-6.)

In any event, a coexisting economic motivation for using the "professional engineer" title is not dispositive. The Court has concluded that Marohn's intended uses are not advertisements and the references to other products are negligible; profit motive, on its own, cannot establish that his speech is commercial. *Bolger*, 463 U.S. at 67. "A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) (citing *id.*).

For the reasons above, Marohn calling himself a professional engineer in the contents of his advocacy and in the accompanying biographies is not commercial speech. Even if false, his intended uses of the title enjoy First Amendment protection.

*3. Fraudulent Statements Made for Material Gain*

The Supreme Court has suggested that false speech is not protected in cases involving "defamation, fraud, or some other legally cognizable harm associated with a false statement." *Alvarez*, 567 U.S. at 719; *see also id.* at 734 (Breyer, J., concurring). The Board briefly argues that Marohn's use of the "professional engineer" title is fraudulent, and thus unprotected, because it is false speech made for material gain: Marohn profits when more people buy his books and courses. (ECF No. 47 at 14–15.) Whether Marohn is

using the title to secure a profit dovetails with the Board's arguments that his speech is commercial, which the Court rejected above.

As for the legally cognizable harm, the Board disputes the Court's reasoning at the motion-to-dismiss stage that *Alvarez* requires such a showing. (*Id.* at 14–15; ECF No. 29 at 10.) The Eighth Circuit has reaffirmed that "[t]he better rule in light of *Alvarez* is that intentionally false speech *undertaken to accomplish a legally cognizable harm* may be proscribed without violating the First Amendment." *Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 786 (8th Cir. 2021) (emphasis added). The Board fails to identify any new factual basis that would warrant deviating from the Court's earlier conclusion that Marohn's audience does not suffer a legally cognizable harm. (ECF No. 29 at 10.)

* * *

Because the First Amendment protects Marohn's use of the "professional engineer" title, the Court next considers the constitutionality of the licensing statute.

### *B. Constitutionality of Restriction*

#### *1. Level of Scrutiny*

Treating Marohn's use of the "professional engineer" title as false—but protected—speech, the Court must first resolve the parties' dispute over whether to apply strict or intermediate scrutiny. As an initial matter, content-based laws are presumptively unconstitutional and therefore subject to strict scrutiny.[5] *Reed v. Town of Gilbert*, 576 U.S.

---

[5] And the licensure statute does not fall into any of the "few historic and traditional categories of expression . . . where content-based restrictions on speech will not automatically trigger strict scrutiny—categories that include fraud, defamation, and

155, 163 (2015); *see also id.* at 165 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." (citation modified)). Here, the parties agree that the licensure restriction is content-based. "Facial content-based distinctions are obvious when a statute 'defines regulated speech by particular subject matter,'" as does the statute here. *Mox v. Olson*, 807 F. Supp. 3d 926, 948 (D. Minn. 2025) (quoting *Reed*, 576 U.S. at 163) (citation modified).

Citing to Justice Breyer's concurrence in *Alvarez*—which applied intermediate scrutiny to false claims about military honors—the Board urges that intermediate scrutiny is the appropriate standard for evaluating easily verifiable falsehoods bearing on public safety. (ECF No. 68 at 10–11.) But the Eighth Circuit has expressly cautioned against treating the splintered opinions in *Alvarez* as binding precedent. *Animal Legal Def. Fund*, 8 F.4th at 785 ("Without a single rationale from *Alvarez* that can be identified as a holding in the case, the only binding aspect of the decision is its specific result.")

Rather, Marohn's use of the "professional engineer" title—even if false—is speech of public concern requiring strict scrutiny. In a vacuum, that two-word credential does not pack a public-advocacy punch. The title itself cannot "be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citation omitted). But "deciding whether speech is of public or private concern requires [courts] to examine the content, form, and context of that speech, as revealed by the whole record." *Id.* (citation modified). Put differently, First

---

'fighting words.'" *Chiles v. Salazar*, --- U.S. ---, 146 S. Ct. 1010, 1021 (2026) (quoting *Alvarez*, 567 U.S. at 717).

Amendment analysis does not examine phrases in isolation. *See id.* at 454 (evaluating "the overall thrust and dominant theme" of the speech at issue).

In Marohn's case, the "professional engineer" title is part of the message—not a detachable label. *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994) ("As an early and eminent student of rhetoric observed, the identity of the speaker is an important component of many attempts to persuade."). Having published books like *Confessions of a Recovering Engineer: A Strong Towns Approach to Transportation*, his thesis is an insider critique of the engineering profession. (Marohn Decl. ¶ 10.) Marohn believes his advocacy against wasteful civil infrastructure will be taken more seriously if he can use the title to signal his work experience and expertise. (Marohn Dep. at 90–91, 121; Marohn Decl. ¶ 75.) As discussed above, Marohn's intended uses of the title further evidence the tight overlap between credential and content: He plans to call himself a professional engineer in expressive works and the short biographies directly accompanying those works. Thus, how Marohn presents himself is part and parcel with his advocacy, which is speech of public concern triggering strict scrutiny. *Connick*, 461 U.S. at 145 ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." (citation modified)).

*2. Applying Strict Scrutiny*

Because Marohn pursues an as-applied challenge, the only question is whether the licensure statute can be applied to his speech without violating the Constitution. *People for Ethical Treatment of Animals, Inc. v. Reynolds*, 173 F.4th 959, 966 (8th Cir. 2026); *Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017) ("The caveat that First Amendment issues require a case-by-case analysis of the facts is especially true with regard to as-applied challenges." (citation modified)). Thus, to survive strict scrutiny, the Board must

show that prohibiting Marohn's intended uses of the "professional engineer" title is narrowly tailored to serve compelling state interests. *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 754 (8th Cir. 2019). Under strict scrutiny, it is "rare that a regulation . . . will ever be permissible." *Brown*, 564 U.S. at 799 (citation omitted).

The Board's stated interests are animated by a spirit of general deterrence: (a) preventing the unlicensed practice of engineering and (b) preventing the dilution of the professional engineering title. (ECF No. 47 at 25.) These interests are no doubt compelling in the abstract; Marohn rightly acknowledges that licensure restrictions on professional engineers are essential for public safety. But "[t]he fact that [a law] is capable of valid applications does not necessarily mean that it is valid as applied to [this] litigant[]." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 803 n.22 (1984). Rather, the Court must determine whether barring Marohn's speech "will in fact alleviate these harms in a direct and material way." *Ent. Software Ass'n v. Swanson*, 519 F.3d 768, 771 (8th Cir. 2008) (citation omitted). Because the Board fails to show that doing so furthers either of its stated interests, the licensure statute cannot pass constitutional muster.

***Unlicensed practice.*** Marohn expressly disclaims any intent to practice engineering without a license, a fact the Board tacitly concedes. Again, he solely intends to use the "professional engineer" title—in books, articles, speeches, and the short biographies accompanying those works—to augment his public advocacy against wasteful civil infrastructure. (*See, e.g.*, Marohn Decl. ¶¶ 75.) Prohibiting Marohn from using the title in these specific ways bears little relation to preventing the unlicensed practice of engineering.

The Eighth Circuit's treatment of a comparable as-applied challenge illustrates the point. In *Ness v. City of Bloomington*, 11 F.4th 914 (8th Cir. 2021), a city ordinance proscribed photographing and recording children in city parks without consent. *Id.* at 919. The court held that the ordinance was unconstitutional as applied to the plaintiff, who sought to take photos on matters of public controversy—the overuse of a city park—for dissemination analogous to newsgathering. *Id.* at 923–24. Although "a narrowly tailored ordinance aimed at protecting children from intimidation and exploitation could pass strict scrutiny," that ordinance did not. *Id.* at 924. Because the city failed to provide evidence that Ness's photography posed the harm that the ordinance was enacted to prevent, the ordinance was not narrowly tailored as applied to her proposed conduct and therefore unconstitutional. *Id.* So too here.

The Board objects that a test depending on Marohn's intent to practice is difficult to implement, especially when it comes to stopping unlicensed practice before it occurs. (ECF No. 47 at 7.) But the Court's conclusion does not rest solely on Marohn's say-so. It rests on his pattern of conduct for the last decade, even while he still held an active license: a closed firm, no project plans signed, no specifications prepared, and no engineering employment sought. (Marohn Decl. ¶¶ 8, 12–15.) And it rests on the specific ways in which Marohn has not and does not intend to use the "professional engineer" title, and how he does not: no advertisements, no solicitation of engineering clients, no proposals or bids for engineering work, and no plans, drawings, or specifications bearing the title. (*Id.* ¶¶ 12–15.) Under strict scrutiny, the Board carries the burden of justification, and it "must present more than anecdote and supposition." *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 822 (2000). It has not done so.

And the Court's reasoning leaves the Board's enforcement tools intact. The case-by-case analysis characteristic of all as-applied challenges plays an especially large role

here, where Marohn's unique circumstances present an edge case to an otherwise unremarkable licensure statute. The Board asserts that individuals who falsely claim licensure carry through with practicing, which underscores the need to take enforcement action before unlicensed practice occurs. (ECF No. 68 at 12.) That may well be true as a general matter, but the record and as-applied posture give the Court no occasion to opine on those scenarios.

***Dilution.*** The Board's interest in preventing dilution concerns the public's ability to determine whether an individual using the "professional engineer" title is qualified to perform professional engineering work. (ECF No. 47 at 25.) Put differently, the Board seeks to address a systemic harm: erosion of the title as a public signal of licensure. (ECF No. 60 ¶ 6.) Marohn's use of the "professional engineer" title without an active license, on its own, says little about the public's understanding of the credential. It is the Board's burden to "come forward with empirical support" that restricting Marohn's speech would prevent systemic dilution; it cannot merely suppose. *Ent. Software Ass'n*, 519 F.3d at 772 (citation omitted). The Board points only to the testimony of its executive director: "If anyone could refer to themselves as a professional engineer, then members of the public would have no way of knowing whether someone who was advertising as a professional engineer could actually practice professional engineering." (ECF No. 60 ¶ 6; *see also* ECF No. 60-12 at 24–26.) Courts have rejected similar evidence as insufficient.[6]

---

[6] *See, e.g.*, *Alvarez*, 567 U.S. at 726 (plurality opinion) (reasoning that government's common-sense assertion "that false representations have the tendency to dilute the value and meaning of military awards" did not "support its claim that the public's general perception of military awards is diluted by false claims such as those made by Alvarez"); *Interactive Digit. Software Ass'n v. St. Louis Cnty.*, 329 F.3d 954, 959 (8th Cir. 2003) (rejecting "conclusory comments of county council members"); *Minn. Voters All. v. City of Saint Paul*,

Although the record reflects some isolated confusion about Marohn's licensure status, this too fails to establish that his use of the title would dilute its meaning to the public. Marohn has received sporadic requests to perform work requiring a professional engineering license. (Marohn Dep. at 102–04.) Per his characterization, this typically entailed: "Hey, we need a [professional engineer] in Minnesota to sign something. We're a group from out of state. We've got engineers. We just need a local person to sign. Would you be willing to do that?" (*Id.* at 103.) Over the seventeen years since he started Strong Towns, which overlaps with his period of active licensure, Marohn has received twenty inquiries of that nature. (*Id.* at 102–03.) He declined every time. (*Id.*) These scattered requests for Marohn to perform work requiring a license show that the "professional engineer" title still conveyed licensure—the signal was operating as intended, not eroding.

The Board's dilution interest is in preserving the title's capacity to distinguish licensed from unlicensed practitioners; evidence of individuals drawing exactly that inference does not show that Marohn's use of the title impaired its function. "The remedy for speech that is false is speech that is true." *Alvarez*, 567 U.S. at 727 (plurality opinion). And the Board already offers a licensing database where members of the public can see that Marohn does not hold an active professional engineering license. (ECF No. 65 ¶ 3.)

Altogether, the Court in no way implies that the Board does not have compelling interests in regulating the "professional engineer" title. But because the Board fails to show that prohibiting Marohn from using the title in his public advocacy advances those interests, Marohn is entitled to summary judgment.

---

442 F. Supp. 3d 1109, 1120 (D. Minn. 2020) ("Defendants' bare assertions are insufficient to survive strict scrutiny.").

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment (ECF No. 53) is GRANTED; and

2. Defendants' Motion for Summary Judgment (ECF No. 45) is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 19, 2026

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge